**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Tel: (415) 730-0387
Fax: (650) 618-0478

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M. MOORE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC; PFIZER INC, <br><br> Defendants. | Case No.: 4:20-cv-09077-JSW <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Judge: Hon. Jeffery S. White <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Lisa Moore ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action against Defendants GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("**GSK**") and Pfizer Inc. ("**Pfizer**") (collectively, "**Defendants**"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge:

*CLARKSON LAW FIRM, P.C.*
*9255 Sunset Blvd., Suite 804*
*Los Angeles, CA 90069*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE ACTION

1.   **Synopsis.**  In an effort to increase profits and to gain an unfair advantage over their lawfully acting competitors, Defendants falsely and misleadingly label certain of their ChapStick products with the following claims: "100% Natural," "Natural," "Naturally Sourced Ingredients," and/or "100% Naturally Sourced Ingredients" (hereinafter, "**Natural Representations**" or "**False Advertising**









2

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Claims**").  Contrary to the Products' Natural Representations, as explained in detail below, the Products actually contain numerous non-natural, synthetic, artificial, and/or highly processed ingredients.  Through falsely, misleadingly, and deceptively labeling the Products, Defendants sought to take advantage of consumers' desire for truly natural products.  Yet Defendants have done so at the expense of unwitting consumers, as well as Defendants lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage.

2.    **Products.**  The purported "Natural" ChapStick products at issue are: (1) ChapStick 100% Natural Lip Butter, which comes in four scents[1] (*see* **Exhibit "1"** [Product Images]); (2) ChapStick Total Hydration 100% Natural Lip Balm, which comes in four scents[2] (*see* **Exhibit "2"** [Product Images]);  (3) ChapStick Total Hydration Essential Oils Lip Balm, which comes in five scented-variations[3] (*see* **Exhibit "3"** [Product Images]); (4) ChapStick Total Hydration Moisture + Tint Lip Balm, which comes in eight shades[4] (*see* **Exhibit "4"** [Product Images]); (5) Total Hydration Moisture + Tint SPF 15 Lip Balm, which comes in three scents[5] (*see* **Exhibit "5"** [Product Images]); and (6) ChapStick Total Hydration Natural Lip Scrub, which comes in two scents[6] (*see* **Exhibit "6"** [Product Images]) (collectively, the "Products").

---

[1] The 100% Natural Lip Butter comes in the following scents: (a) Green Tea Mint, (b) Pink Grapefruit, (c) Sweet Papaya, and (d) Cucumber Pear.

[2] The Total Hydration 100% Natural Lip Balm comes in the following scents: (a) Eucalyptus Mint, (b) Fresh Citrus, (c) Honey Blossom, and (d) Soothing Vanilla.

[3] The Total Hydration Essential Oils Lip Balm comes in the following variations: (a) Chill (Hemp Seed), (b) Energy (Grapefruit and Lime), (c) Happy (Orange and Lemon), (d) Peace (Rosemary and Peppermint), and (e) Relax (Lavender and Chamomile).

[4] The Total Hydration Moisture + Tint Lip Balm comes in the following shades: (a) Coral Blush, (b) Flaunt It Fuchsia, (c) Hello Bordeaux, (d) Merlot, (e) Sunset Nude, (f) Rose Petal, (g) Pink Nude, and (h) Warm Nude.

[5] The Total Hydration Moisture and Tint SPF 15 Lip Balm comes in the following shades: (a) Peachy Keen, (b) Pretty in Pink, and (c) Very Berry.

[6] The Total Hydration Lib Scrub comes in the following scents: (a) Fresh Peppermint and (b) Sugar Plum.

3

3.     **Primary Objective.**  As a result, Plaintiff brings this action individually and on behalf of those similarly situated to represent a National Class and a California Class (defined *infra*).  Plaintiff seeks injunctive relief to stop Defendants' unlawful labeling and advertising of the Products as Plaintiff's primary litigation objective is to enjoin Defendants' unlawful labeling practices for the National Class and California Class.

## JURISDICTION

4.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

5.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff purchased the Products in this District, and Defendants have deliberately marketed, advertised, and sold the Products within this District.

## PARTIES

A.   **Plaintiff**

6.     **Plaintiff Moore.** The following is alleged based upon personal knowledge: (1) Plaintiff Lisa Moore ("**Plaintiff**") was previously a resident of San Francisco County, California, before moving to Los Angeles County, California, in approximately February 2020. (2) Plaintiff routinely purchased the ChapStick Total Hydration 100% Natural Lip Balm in the Eucalyptus Mint and Fresh Citrus scents and the Total Hydration Essential Oils Lip Balm in the Happy scent, each for approximately $4 to $5, at CVS and Walgreens stores in or around San Francisco, approximately once per every 2 months, for approximately 2-3 years, until approximately December 2019 -February 2020. (3) In making the purchase, Plaintiff

relied on the Natural Representations stated on the Products' label and packaging. (4) If Plaintiff had known that the Products contained ingredients that are non-natural, synthetic, artificial, and/or highly processed, then Plaintiff would not have purchased the Products. (5) Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Natural Representations were in fact true—i.e., if the Products truthfully did not contain any non-natural, synthetic, artificial, and/or highly processed ingredients. (6) Plaintiff is, and continues to be, unable to rely on the "truth" of the Products' Natural Representations. (7) Plaintiff does not know the meaning or the import of the Products' ingredients—specifically, the non-natural, synthetic, artificial, and highly processed ingredients identified *infra*. Based on information and belief, the labeling of the Products purchased by Plaintiff are typical of the labeling of the Products purchased by members of the class.

7. **Plaintiff's Likely Future Harm.** If the Products' ingredients were actually natural, as labeled and advertised, Plaintiff would purchase the Products in the future. Since Plaintiffs would like to purchase the Products again to obtain lip balm and moisturizing products that, as advertised, are truly natural and therefore do not contain non-natural, synthetic, artificial, and/or highly processed ingredients, Plaintiff would purchase them again in the future—despite the fact that they were once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain non-natural, synthetic, artificial, and/or highly processed ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of cosmetic products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between cosmetic ingredients that are "natural" and those that are "synthetic"— particularly those non-natural ingredients identified *infra.* Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants fixed the formulation of the Products such that Plaintiff may buy them again, believing they were no longer

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Natural Representations.

**B.   Defendants**

8.   **Defendant Pfizer.**   Defendant Pfizer Inc. ("**Pfizer**") is a Delaware corporation with is principal place of business in New York, New York, and has been doing business in the State of California during all relevant times. Directly and through its agents, Pfizer has substantial contacts with, and receives substantial benefits and income from, the State of California. At all relevant times, Pfizer has been one of the owners, manufacturers, and distributors of the Products, and one of the companies that created, approved, authorized, and/or ratified the false, misleading, and deceptive labeling for the Products, including the False Advertising Claims.

9.   **Defendant GSK.**   Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("**GSK**") is a Delaware corporation with its principal place of business in Warren, New Jersey, and has been doing business in the State of California during all relevant times. Directly and through its agents, GSK has substantial contacts with, and receives substantial benefits and income from, the State of California. Since approximately mid-2019, GSK has been one of the owners, manufacturers, and distributors of the Products, and one of the companies that created, approved, authorized, and/or ratified the false, misleading, and deceptive labeling for the Products, including the False Advertising Claims.

10.   **"Defendants."**   The term "**Defendants**," as used herein, relates to each individual Defendant during the time period it was responsible for manufacturing, distributing, advertising, marketing, labeling, and/or selling the Products.

11.   **Joint Venture.**   In or around mid-2019, GSK and Pfizer's consumer healthcare businesses were combined into one joint venture, named GSK Consumer Healthcare, under which Defendants have jointly advertised, marketed, manufactured, and sold the Products.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

12.   **Conspiracy.**  Defendants acted in concert under a common scheme and aided and abetted one another in the decision to manufacture, label, advertise, market, package, and sell the Products in a false, deceptive and misleading manner.

13.   ***Respondeat Superior.***   Defendants and their agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading False Advertising Claims on the Products were prepared, authorized, ratified, and/or approved by Defendants and their agents, and, accordingly, disseminated throughout the State of California and the nation by Defendants and their agents in order to deceive and mislead consumers into purchasing the Products.

## FACTUAL ALLEGATIONS

### A.   Background

14.   In recent years, consumers have poured billions of dollars into the natural cosmetics market. The global market in 2018 for natural cosmetics was estimated to have a revenue of $10.31 billion dollars and increases each year, with an estimated growth to $48.04 billion by 2025.[7] In fact, consumers tend to purchase natural cosmetics more often than not, showing the growing importance of the natural cosmetic market.[8] Consumers value natural products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values. In response to consumers' desire for natural

---

[7] *Natural Cosmetics Market Worth $48.04 Billion by* 2025, BLOOMBERG, June 11, 2019, https://www.bloomberg.com/press-releases/2019-06-11/natural-cosmetics-market-worth-48-04-billion-by-2025-cagr-5-01-grand-view-research-inc (last visited January 15, 2021).

[8] *Global Market Value For Natural and Organic Cosmetics And Personal Care From 2018 To 2027,* STATISTA, Sept. 24, 2020, https://www.statista.com/statistics/673641/global-market-value-for-natural-cosmetics/ (last visited January 15, 2021).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

products, many companies, including Defendants, have scrambled to manufacture, market, and sell purportedly "natural" products in an effort to gain market share. Unfortunately, rather than creating the natural products consumers desire, Defendants have chosen instead to market the Products through deceptive labeling and advertising in order to convince consumers the products are natural when, in reality, they contain synthetic and artificial ingredients.

15. **Governmental Regulatory Agencies' and Standard Dictionary Definitions**:

a. **USDA.** The United States Department of Agriculture ("USDA"), pursuant to 7 U.S.C. § 6502, defines the term "synthetic" for agricultural products as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."

b. **Dictionary.** The Merriam-Webster standard dictionary defines "natural" as "existing in or produced by nature: not artificial," and "not having any extra substances or chemicals added: not containing anything artificial."[9]

c. **FTC.** The Federal Trade Commission ("FTC") has cautioned "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact." Guides for the Use of Environmental Marketing Claims, 75 FR 63552-

---

[9] Natural Definition, *Merriam-Webster.com*, 2011, available at https://www.merriam-webster.com/dictionary/natural (last visited January 15, 2021).

01, 63586 (Oct. 15, 2010).

16.    Accordingly, reasonable consumers, like Plaintiff, interpret the Natural Representations as claims that the Products contain no non-natural, artificial, and/or synthetic ingredients.

## B.    The Products' Misleading and Deceptive Labeling

17.    Defendants manufacture, market, promote, advertise, label, package, and sell a variety of lip moisturizing care Products under the "Chapstick" brand name. In an effort to convince consumers that their products are natural and do not contain any non-natural, non-natural, synthetic, artificial, and/or highly processed ingredients, Defendants prominently and uniformly label the Products with the Natural Representations on the front of the Products, including the following: "100% Natural," "Natural," "Naturally Sourced Ingredients," and/or "100% Naturally Sourced Ingredients."  As set forth in the product images attached hereto as **Exhibits 1-6** and the following exemplars, the Natural Representations are one of a few select claims that Defendants deliberately emphasize on the front labels in order to represent the Products as being all-natural and free of non-natural, synthetic, artificial, and/or highly processed ingredients.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

18. **ChapStick 100% Natural Lip Butter** (Pink Grapefruit) Product Image:



*See also* **Exhibit 1** [Product Images].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

19.   **ChapStick Total Hydration 100% Natural Lip Balm** (Eucalyptus Mint) Product Image:



*See also* **Exhibit 2** [Product Image].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

20.     **ChapStick Total Hydration Essential Oils Lip Balm** (Happy) Product Image:



*See also* **Exhibit 3** [Product Images].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

21.   **ChapStick Total Hydration Moisture + Tint Lip Balm** (Sunset Nude)

Product Image:



*See also* **Exhibit 4** [Product Images].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

22.   **ChapStick Total Hydration Moisture + Tint SPF 15 Lip Balm** (Pretty in Pink) Product Image:



*See also* **Exhibit 5** [Product Images].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

23.     **ChapStick Total Hydration Natural Lip Scrub** (Fresh Peppermint) Product Image:



*See also* **Exhibit 6** [Product Images].

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

24. **Non-Natural Ingredients.** Despite Defendants labeling the Products as natural, the Products actually contain numerous non-natural, synthetic, and/or artificial ingredients, including the following, in varying combinations:

(a) ***Caprylic/capric triglycerides***: an artificial compound manufactured by hydrolyzing coconut oil, removing the free glycerin, and separating the medium chain length (MCL) fatty acids by fractional distillation. The acids are then blended in the proper ratio and re-esterified with glycerin. This compound is classified as a skin and eye irritant;

(b) ***Capryloyl glycerin/sebacic acid copolymer:*** are synthetically produced from capryloyl glycerin and sebacic acid monomers and function as polymers and film-forming agents as well as replacements for silicones in cosmetic formulas;

(c) ***Carmine***: is a dye that is derived from mixing crushed cochineal bugs with an acidic alcohol solution. This dye can cause severe allergic reactions and is no longer classified as a "natural dye";

(d) ***Citric Acid:*** synthetically made by the fermentation of glucose;

(e) ***Flavor:*** flavors are additives designed to mimic the taste of natural ingredients. They are a cheap way for manufacturers to make something taste natural, without using the actual ingredients, e.g., vanilla flavoring instead of natural vanilla;

(f) ***Fragrance:*** synthetic compounds composed of petroleum by-products such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals;

(g) ***Glyceryl stearate***: a synthetic emollient made by reacting glycerin with stearic acid;

(h) ***Hydrogenated soybean oil and partially hydrogenated soybean oil:*** highly-processed forms of soybean oil that have been chemically manufactured through a process called hydrogenation to convert polyunsaturated fatty acids to monounsaturated and saturated fatty acids, resulting in the artificial variety of trans fat;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(i)   ***Iron oxides***: are synthetic chemical compounds composed of iron and oxygen;

(j)   ***Octyldodecanol:*** a long-chain synthetic alcohol chemically produced from natural fats and oils by reducing the fatty acid grouping to the hydroxyl function;

(k)   ***Tocopherols:*** federal regulations classify as synthetic substances, even when extracted from natural oils, which is done through molecular distillation, solvent extraction, or absorption chromatography;

(l)   ***Tocopheryl acetate***: a synthetic, highly processed form of Vitamin E manufactured using acetic acid.

25.   **ChapStick 100% Natural Lip Butter.**  The ChapStick 100% Natural Lip Butter Products contain, in each of the scents, the following non-natural ingredients: (1) glyceryl stearate, (2) octyldodecanol and (3) tocopheryl acetate. Additionally, the Green Tea Mint scent, the Sweet Papaya scent, and the Cucumber Pear scent contains: (4) caprylic/capric triglyceride. Lastly, the pink grapefruit scent and the sweet papaya scent contains: (5) flavor, (6) hydrogenated soybean oil, and (7) tocopherol. *See* **Exhibit 1** [Product Ingredients].

26.   **Chapstick Total Hydration 100% Natural Lip Care.**  The ChapStick Total Hydration 100% Natural Lip Care Products contain, in each of its scents, the following non-natural ingredients: (1) caprylic/capric triglyceride, (2) flavor, (3) octyldodecanol, (4) tocopherol, (5) tocopheryl acetate, and (6) glyceryl stearate. Additionally, the Eucalyptus Mint and the Fresh Citrus scents contain: (7) hydrogenated soybean oil. Lastly, the Soothing Vanilla scent contains: (8) partially hydrogenated soybean oil. *See* **Exhibit 2** [Product Ingredients].

27.   **ChapStick Total Hydration Essential Oils Lip Balm.** The ChapStick Total Hydration Essential Oils Lip Balm Products contain, in each of its scents, the following non-natural ingredients: (1) flavor, (2) glyceryl stearate, (3) hydrogenated soybean oil, (4) tocopherol, and (5) tocopheryl acetate. Additionally the Chill, Happy, and Peace scents contain: (6) caprylic/capric triglyceride. Lastly, the Chill, Energy,

Happy, and Peace scents contain: (7) octyldodecanol. *See* **Exhibit 3** [Product Ingredients].

28.  **ChapStick Total Hydration Moisture + Tint Lip Balm.** The ChapStick Total Hydration Moisture + Ting Lip Balm Products contain, in each of its shades, the following non-natural ingredients: (1) carmine, (2) glyceryl stearate, (3) hydrogenated soybean oil, (4) octyldodecanol, (5) tocopherol, and (6) tocopheryl acetate. Additionally, the Coral Blush, Rose Petal, Pink Nude, Flaunt It Fuchsia, Hello Bordeaux, and the Sunset Nude shades contain: (7) caprylic/capric triglyceride. The Coral Blush, Rose Petal, Pink Nude, Flaunt It Fuchsia, Hello Bordeaux, Merlot, and Sunset Nude shades contain: (8) flavor. Lastly, the Coral Blush, Rose Petal, Pink Nude, Merlot, Sunset Nude, and Warm Nude shades contain: (9) iron oxides. *See* **Exhibit 4** [Product Ingredients].

29.  **ChapStick Total Hydration Moisture + Tint SPF 15 Lip Balm.** The ChapStick Total Hydration Moisture + Tint SPF 15 Products contain, in each of its scents, the following non-natural ingredients: (1) carmine, (2) fragrance, (3) iron oxides, (4) tocopherol, and (5) tocopheryl acetate. *See* **Exhibit 5** [Product Ingredients].

30.  **ChapStick Total Hydration Natural Lip Scrub.** The ChapStick Total Hydration Natural Lip Scrub Products contain, each of its flavors, the following non-natural ingredients: (1) capryloyl glycerin/sebacic acid copolymer, (2) citric acid, and (3) tocopherol.  Additionally, the Sugar Plum flavor contains: (4) caprylic/capric triglyceride, (5) carmine, (6) flavor, and (7) iron oxides.  *See* **Exhibit 6** [Product Ingredients].

31.  **The Natural Representations Are False, Misleading, and Deceptive.** Contrary to the Natural Representations, the Products are not natural because they contain non-natural, synthetic, artificial, and/or highly processed ingredients. No reasonable definition of "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients" includes ingredients that are subjected to

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

extensive, transformative processing before their inclusion in a product, regardless of whether the ingredient may have been, at one time, truly "Natural." Put differently, it is entirely deceptive to label a product as being natural or made of naturally sourced ingredients, if that product—like the Products at issue—was "formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources." *See* 7 U.S.C. § 6502. Indeed, labeling the products with the Natural Representations when they contain **any** non-natural, synthetic, artificial, and/or highly processed ingredients is wholly misleading and deceptive. That is because the Natural Representations causes reasonable consumers, including Plaintiff, to believe the Products do not contain non-natural, synthetic, artificial, and/or highly processed ingredients.

## C.   Defendants Misled Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to Their Detriment

32.   **Material.** The False Advertising Claims were and are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products.

33.   **Reliance.** Plaintiff and reasonable consumers relied and rely on Defendants' False Advertising Claims in making the decision to purchase the Products.

34.   **Consumers Lack Knowledge of Falsity.** At the time Plaintiff and reasonable consumers purchased the Products, they did not know, and had no reason to know, that the Products' False Advertising Claims on the label and packaging were, in fact, false, misleading, deceptive, and unlawful as set forth herein.

35.   **Misrepresentation/Omission.** The Natural Representations materially misrepresented the Products as containing no non-natural, synthetic, artificial, and highly processed ingredients, and Defendants failed to adequately inform reasonable consumers, including Plaintiff, that the Products contained non-natural, synthetic, artificial, and/or highly processed ingredients.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

36.   **Defendants' Knowledge.**  Defendants knew, or should have known, that the Natural Representations were false, misleading, deceptive, and unlawful, at the time that they advertised the Products and intentionally and deliberately placed the Natural Representations on the Products' labeling and packaging.

37.   **Detriment.**   Plaintiff and reasonable consumers would not have purchased the Products, or would have purchased the Products on different terms, if they had known the truth—that the Natural Representations are false and the Products contain non-natural, synthetic, artificial, and/or highly processed ingredients. Accordingly, based on Defendants' material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.   The Products Are Substantially Similar**

38.   As described *supra*, Plaintiff purchased the ChapStick Total Hydration 100% Natural Lip Care (Eucalyptus Mint and Citrus) and ChapStick Total Hydration Essential Oils Lip Balm (Happy) (collectively, the "**Purchased Products**"). The additional products, ChapStick Total Hydration 100% Natural Lip Butter, ChapStick Total Hydration Moisture + Tint Lip Balm, and Total Hydration Moisture + Tint SPF 15 Lip Balm, and ChapStick Total Hydration Natural Lip Scrub ("**Unpurchased Products**"), are substantially similar to the Purchased Products.

    a.  **Defendants.**  All Products are manufactured, sold, marketed, advertised, labeled, and packaged by the Defendants.

    b.  **Brand.**  All Products are sold under the ChapStick brand name.

    c.  **Marketing Demographics.**  All Products are marketed directly to consumers for personal use.

    d.  **Purpose.**  All Products are intended for the primary purpose of moisturizing lips.

    e.  **Application.**  All Products are applied in the same manner—directly onto lips.

    f.  **False Advertising Claims.**  All Products contain the same Natural

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Representations on the Products' labeling and packaging. In addition, all Products prominently display the Natural Representations on the front label in order to focus the consumer's attention on the Natural Representations.

g. **Key Ingredients.**  All Products contain a combination of the same non-natural, artificial, synthetic, and highly processed ingredients.  In particular, the Purchased Products contain non-natural ingredients that are found in the Unpurchased Products.

h. **Misleading Effect.**  The misleading effect of the Products' labels is the same for all Products.

## CLASS ACTION ALLEGATIONS

39. **Class Definition.**  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

> ("Nationwide Class" and "California Subclass," collectively, the "Class").

40. **Class Definition Exclusions.**  Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the

last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

41.   **Reservation of Rights to Amend Class Definition.**  Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

42.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

43.   **Common Question Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

  a.   Whether Defendants' conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

  b.   Whether Defendants used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

  c.   Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

  d.   Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

  e.   Whether Defendants labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

  f.   Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

misleading in violation of Business and Professions Code section 17500, *et seq*.;

g.  Whether Defendants conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

h.  Whether Defendants conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.  Whether Defendants conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.  Whether Defendants conduct constitutes breach of express warranty;

k.  Whether Plaintiff and the Class are entitled to injunctive relief;

l.  Whether Defendants were unjustly enriched by their unlawful conduct.

44.  **Typicality:** Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Product. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

45.  **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

46.  **Superiority and Substantial Benefit**: A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendants unlawful conduct will continue without remedy while Defendants profit from and enjoys their ill-gotten gains;

    c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e. This action presents no difficulty that would impede their management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendants.

47. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

48. **Injunctive/Equitable Relief.**  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49. **Manageability.**  Plaintiff and Plaintiff's counsel are unaware of any

difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE

### Violation of the Unfair Competition Law ("UCL")

### (California Business and Professions Code §§ 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

50.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

51.   This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

52.   Defendants, in their advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, labeling the Products with the Natural Representations despite the Products containing numerous non-natural, synthetic, and/or artificial ingredients. Such claims and omissions appear on the labeling and packaging of the Products, which are sold at retail stores, point-of-purchase displays, as well as ChapStick's official website.

53.   Defendants' labeling and advertising of the Products led and continue to lead reasonable consumers, including Plaintiff, to believe that the Products are natural and/or made with "100% Naturally Sourced Ingredients."

54.   Defendants do not have any reasonable basis for the Products' Natural Representations because the Products contain ingredients that are non-natural, synthetic, and/or artificial. Defendants knew and know that the Products are not natural, yet Defendants intentionally advertise and market the Products to cause reasonable consumers to believe that the Products are natural.

55.   Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and

fraudulent business practices pursuant to California Business & Professions Code sections 17200, *et seq.* (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

56.   In addition, Defendants' use of various forms of media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

57.   Defendants failed to avail themselves of reasonably available, lawful alternatives to further its legitimate business interests.

58.   All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or they are otherwise ordered to do so.

59.   Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentations, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

60.   Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' false representations.

61.   Plaintiff and the California Subclass would not have purchased the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Products but for the Natural Representations.

62.     The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200.

63.     Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### A. "Unfair" Prong

64.     Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal.App.4th 1394, 1403 (2006).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

65. Defendants' action of labeling the Products as natural when they contain ingredients that are non-natural, synthetic, and/or artificial does not confer any benefit to consumers.

66. Defendants' action of labeling the Products as natural when they contain ingredients that are non-natural, synthetic, and/or artificial causes injuries to consumers, who do not receive products commensurate with their reasonable expectations.

67. Defendants' action of labeling the Products as natural when they contain ingredients that are non-natural, synthetic, and/or artificial causes injuries to consumers, who end up overpaying for the Products and receiving Products of lesser standards than what they reasonably expected to receive.

68. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and/or advertising of the Products.

69. Accordingly, the injuries caused by Defendants' deceptive labeling and/or advertising outweigh any benefits.

70. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

71. Here, Defendants' conduct of labeling the Products with the Natural Representations when the Products contain ingredients that are non-natural, synthetic, and/or artificial has no utility and financially harms purchasers. Thus, the utility of Defendants conduct is vastly outweighed by the gravity of harm.

72. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

73. Defendants labeling and advertising of the Products, as alleged herein, is

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

74.   Defendants knew or should have known of their unfair conduct.

75.   As alleged in the preceding paragraphs, the misrepresentations by Defendants, detailed above, constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

76.   There existed reasonably available alternatives to further Defendants legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Natural Representations.

77.   All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

78.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the Natural Representations.

79.   Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that contained ingredients that are non-natural, synthetic, and/or artificial. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B.   "Fraudulent" Prong

80.   California Business and Professions Code sections 17200, *et seq.,* considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267

(1992).

81.  Defendants' conduct of labeling the Products as natural when they contain ingredients that are non-natural, synthetic, and/or artificial is likely to deceive members of the public.

82.  Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

83.  Defendants knew or should have known of their fraudulent conduct.

84.  As alleged herein, the misrepresentations by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

85.  Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Natural Representations.

86.  All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

87.  Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products with the Natural Representations.

88.  Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the California Subclass paid for products that they believed were natural when, in fact, they contained non-natural, synthetic, and/or artificial ingredients. Plaintiff and the California Subclass would not have purchased the Products if they had known that they were not natural. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

### C.   "Unlawful" Prong

89.   California Business and Professions Code sections 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

90.   Here, Defendants' labeling and advertising of the Products, as alleged herein, violates California Civil Code Section 1750, *et seq.* and California Business and Professions Code sections 17500, *et seq.*

91.   Defendants' packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

92.   Defendants knew or should have known of their unlawful conduct.

93.   As alleged herein, the misrepresentations by Defendants constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

94.   Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

95.   Defendants' conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208.

96.   There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. Defendants could have refrained from omitting that the Products contained ingredients that are non-natural, synthetic, and/or artificial.

97.    All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

98.    Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive labeling and advertising of the Products.

99.    Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products are natural, thus creating the false impression that the Products do not contain non-natural, synthetic, and/or artificial ingredients. Products if they had known that they were not natural. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of the False Advertising Law ("FAL")

### (California Business & Professions Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

100.   Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

101.   Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

102.   California Business & Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising[.]"

103.   Defendants violated section 17500 when they represented, through their false and misleading advertising and other express representations, that Defendants'

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Products possessed characteristics and value that they did not actually have.

104. Defendants' deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Products. Defendants' uniform, material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their uniform representations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendants, as alleged herein.

105. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and the California Subclass members.

106. The above acts of Defendants, in disseminating materially misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of section 17500.

107. In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of section 17500.

108. Defendants continue to engage in unlawful, unfair and deceptive practices in violation of section17500.

109. As a direct and proximate result of Defendants' unlawful conduct in violation of section 17500, Plaintiff and members of the California Subclass, pursuant to section 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of their misrepresentations. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair, deceptive, untrue, and misleading practices will

continue to harm Plaintiff and the Class.

110. As a direct and proximate result of Defendants' unlawful conduct in violation of section 17500, Plaintiff and members of the California Subclass were harmed and suffered financial losses in the dollar amount to be proven at the time of trial that Plaintiff and the California Subclass members paid for the purported natural attribute of the Products up to and including the full purchase price of the Products. Plaintiff seeks an award under the FAL of damages, restitution, and/or disgorgement of this dollar amount for Plaintiff and the California Subclass members' purchase of the Products.

111. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

/ / /

/ / /

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## COUNT THREE

### Violation of the Consumers Legal Remedies Act ("CLRA")

### (California Civil Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

112. Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

113. Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

114. Plaintiff brings this action pursuant to California's Consumers Legal Remedies Act ("CLRA"), codified at Cal. Civ. Code §§ 1750, *et seq*.

115. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

116. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

117. Defendants are a "person," as defined by the CLRA in California Civil Code §1761(c).

118. Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

119. Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

120. Defendants violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being natural. Defendants knew that consumers will often pay more for products with this attribute and have unfairly profited from their false and misleading claims.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

121. Similarly, Defendants violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as being natural.

122. In addition, Defendants violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as being natural.

123. Defendants' uniform and material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

124. Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

125. Plaintiff and members of the California Subclass have been directly and proximately injured by Defendants' conduct. Such injury includes, but is not limited to, the purchase price of the Products and/or the portion of the price paid for the purported natural attribute of the Products.

126. Given that Defendants conduct violated section 1770(a), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendants' violations of the CLRA.

127. Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the Products.

128. More than thirty days prior to the filing of this amended complaint, on December 17, 2020, Plaintiff, acting on Plaintiff's behalf and on behalf of members of the Class, served a notice on Defendants regarding their violations of the California

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Consumers Legal Remedies Act, pursuant to California Civil Code section 1782, that was delivered to Defendants on or before December 21, 2020. *See* Stipulation re: Responding and Amending Operative Complaint, filed January 14, 2021 [ECF 13]. The form, content, and delivery of the notice satisfied subsections (1) and (2) of section 1782(a). *See id.*; **Exhibit 7** (CLRA Demand). The notice of violations and demand for remedial action, as of the filing of this amended complaint, did not result in any appropriate correction, repair, replacement, or other remedy by any Defendant, including all remedial action as set forth under section 1782(c).

129. As a direct and proximate result of Defendants' unlawful conduct in violation of section 1750, Plaintiff and members of the California Subclass were harmed and suffered financial losses in the dollar amount to be proven at the time of trial that Plaintiff and the California Subclass members paid for the purported natural attribute of the Products up to and including the full purchase price of the Products. Plaintiff seeks an award under the CLRA of damages, restitution, and/or disgorgement of this dollar amount for Plaintiff and the California Subclass members' purchase of the Products.

130. Plaintiff further requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' False Advertising Claims.

131. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and

deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

132. Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

133. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

134. Defendants made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendants.

135. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products are natural.

136. Despite Defendants' express warranties about the nature of the Products, the Products are not natural, and the Products are, therefore, not what Defendants represented them to be.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

137. Accordingly, Defendants breached express warranties about the Products and their qualities because the Products do not conform to Defendants' affirmations and promises.

138. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of express warranty of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

139. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers. The wrongful conduct constituting malice,

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT FIVE

### Unjust Enrichment

### (*On Behalf of the Nationwide Class and California Subclass*)

140.  Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

141.  Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

142.  By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

143.  Defendants had knowledge of such benefit.

144.  Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

145.  Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions.

146.  Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the expense of Plaintiff and members of the Class. Accordingly, Plaintiff seeks an award pursuant to this cause of action for unjust enrichment of restitution and/or disgorgement of ill-gotten gains in the amount of the purchase price for the Products, as well as injunctive relief to prevent ongoing and future harm that will result from the ongoing False Advertising Claims.

147.  Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendants' misconduct is malicious as

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Defendants acted with the intent to cause Plaintiff and a nation of consumers to pay for Products that they were not, in fact, receiving.   Defendants willfully and knowingly disregarded the rights of Plaintiff and a nation of consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.   Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.   Said misconduct subjected Plaintiff and a nation of consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and a nation of consumers.   The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

a. For an order certifying this action as a class action;

b. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c. For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

d. For an order awarding restitution, compensatory and monetary damages, and/or disgorgement of wrongful profits to Plaintiff and the Class for all causes of action;

e. For an order awarding pre-and post-judgment interest;

f.  For an order awarding attorneys' fees and costs;

g.  For an order awarding punitive damages; and

h.  For such other and further relief as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all causes of action.


Dated: January 26, 2021

Respectfully submitted,

**CLARKSON LAW FIRM**
By:

*/s/ Katherine A. Bruce*
RYAN J. CLARKSON
SHIREEN M. CLARKSON
KATHERINE A. BRUCE

Attorneys for Plaintiff


**MOON LAW APC**
By:

*/s/ Christopher D. Moon*
CHRISTOPHER D. MOON
KEVIN O. MOON

Attorneys for Plaintiff

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT