Jonathan S. Tam (Bar No. 304143)
DECHERT LLP
One Bush Street
San Francisco, CA  94104-4446
Telephone:  415.262.4518
Facsimile:   415.262.4555
jonathan.tam@dechert.com

Christina Guerola Sarchio (*pro hac vice*)
DECHERT LLP
1900 K St NW
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
christina.sarchio@dechert.com

Lincoln Davis Wilson (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Sixth Ave.
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
lincoln.wilson@dechert.com

*Attorney for Defendants*
*GlaxoSmithKline Consumer Healthcare Holdings (US)*
*LLC, and Pfizer Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M. MOORE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC; PFIZER INC.,<br><br>Defendants. | Case No.:  4:20-cv-09077-JSW<br><br>**NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 2, 2021<br>Time: 9:00 am<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5 |

Dechert LLP
Attorneys At Law

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION AND MOTION ..................................................................................... 1

ISSUES TO BE DECIDED ......................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

BACKGROUND .......................................................................................................................... 1

    I.      CHAPSTICK® PRODUCTS .................................................................................. 1

    II.     PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT ................. 3

    III.    FEDERAL REGULATION OF "NATURAL" LABELING ................................. 4

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

    I.      PLAINTIFF CANNOT SUE FOR PRODUCTS SHE DID NOT BUY ............... 6

    II.     PLAINTIFF LACKS INJUNCTIVE STANDING ................................................ 8

    III.    PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY ................ 10

    IV.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ................................. 12

         A.    Plaintiff Fails To Plausibly Allege How "Natural" Is Misleading ............ 12

         B.    Plaintiff Fails To Plausibly Allege How "Naturally Sourced" Is
             Misleading .............................................................................................. 14

    V.     PLAINTIFF'S EXPRESS WARRANTY CLAIMS FAIL ................................. 15

CONCLUSION ........................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011)..................................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................5

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................5

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)..............................................................................................................6

*Bugarin v. All Nippon Airways Co.*,
    2021 WL 175940 (N.D. Cal. 2021)...........................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)....................................................................................................................8

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016) .....................................................................................6

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)................................................................................................9, 10

*Ebeid ex rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010).....................................................................................................5

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016)...................................................................................................12

*Figy v. Frito-Lay N. Am., Inc.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ...................................................................................12

*Grandfield v. NVIDIA Corp.*,
    2012 WL 2847575 (N.D. Cal. 2012).........................................................................................7

*Hairston v. S. Beach Beverage Co.*,
    2012 WL 1893818 (C.D. Cal. 2012)......................................................................................13

*In re Arris Cable Modem Consumer Litig.*,
    2018 WL 288085 (N.D. Cal. 2018)...................................................................................11, 14

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................................................10, 11

*Ivie v. Kraft Foods Global, Inc.*,
   961 F. Supp. 2d 1033 (N.D. Cal. 2013) ...................................................................12

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. 2014)........................................................................13

*Joslin v. Clif Bar & Co.*,
   2019 WL 5690632 (N.D. Cal. 2019)........................................................................8, 9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................................6, 10

*Lusson v. Apple, Inc.*,
   2016 WL 10932723 (N.D. Cal. 2016) ........................................................................11

*Matic v. United States Nutrition, Inc.*,
   2019 WL 3084335 (C.D. Cal. 2019)........................................................................6, 7

*McDonnell Douglas Corp. v. Thiokol Corp.*,
   124 F.3d 1173 (9th Cir. 1997)...................................................................................15

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ..................................................................7, 12

*Oddo v. Arcoaire Air Conditioning & Heating*,
   2017 WL 372975 (C.D. Cal. 2017)............................................................................15

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ..................................................................13, 14

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ..................................................................6, 11

*Prescott v. Nestle USA, Inc.*,
   2020 WL 3035798 (N.D. Cal. 2020)..........................................................................10

*Rahman v. Mott's LLP*,
   2018 WL 4585024 (N.D. Cal. 2018)............................................................................9

*Rugg v. Johnson & Johnson*,
   2018 WL 3023493 (N.D. Cal. 2019)..........................................................................12

*Sciacca v. Apple, Inc.*,
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ......................................................................10

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ....................................................................15

*Sud v. Costco Wholesale Corp.*,
   731 F. App'x 719 (9th Cir. 2018) ................................................................................8

iii

*Tabler v. Panera LLC*,
    2020 WL 3544988 (N.D. Cal. 2020) ..................................................................................11

*U.S. ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...............................................................................10, 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................5, 6, 10, 12

*Williams v. Gerber Prod. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...............................................................................12, 14

*Wilson v. Frito-Lay N. Am., Inc.*,
    2013 WL 1320468 (N.D. Cal. 2013) ...................................................................................6

*Yu v. Dr. Pepper Snapple Grp., Inc.*,
    2019 WL 2515919 (N.D. Cal. 2019) ...............................................................................5, 12

**STATUTES AND RULES**

California Commercial Code § 2313 ...............................................................................15

California Commercial Code § 2607 ...............................................................................15

Unfair Competition Law ...............................................................................3, 4

False Advertising Law ...............................................................................3, 4

Consumers Legal Remedies Act ...............................................................................3, 4, 15

Federal Rule of Civil Procedure 8 ...............................................................................5

Federal Rule of Civil Procedure 9 ........................................................................... passim

**REGULATIONS**

21 C.F.R. § 73.100 ...............................................................................4

21 C.F.R. § 73.2087 ...............................................................................4

21 C.F.R. § 184.1033 ...............................................................................4

21 C.F.R. § 184.1324 ...............................................................................4

21 C.F.R. § 184.1090 ...............................................................................4

21 C.F.R. § 700.3 ...............................................................................4

80 Fed. Reg. 69,905–69,909 ...............................................................................5

1

**NOTICE OF MOTION AND MOTION**

2      NOTICE IS HEREBY GIVEN THAT, on April 2, 2021, at 9:00 AM, before Judge Jeffrey

3  White in Courtroom 5 of the U.S. District Court for the Northern District of California, 1301 Clay

4  Street, Oakland, California, Defendants GlaxoSmithKline Consumer Healthcare Holdings (US)

5  LLC ("GSK") and Pfizer Inc. ("Pfizer") will and do move this Court, pursuant to Federal Rules of

6  Civil Procedure 12(b)(1) and 12(b)(6), for an order granting its Motion to Dismiss.[1]

7      This motion is based on this Notice of Motion, the following Memorandum of Points and

8  Authorities, documents Defendants request the Court take judicial notice of, all pleadings, records

9  and papers on file, and such other matters that may be presented to the Court.

10

**ISSUES TO BE DECIDED**

11      (1)  Does Plaintiff lack Article III standing to sue for the twenty-three ChapStick® products

12  she did not purchase and which differ from the three ChapStick® products she purchased?

13      (2)  Does Plaintiff lack standing to request injunctive relief when her knowledge of alleged

14  misrepresentations prevents her from showing she is likely to suffer a future injury?

15      (3)  Does the Complaint fail to satisfy Rule 9(b) by failing to provide details of the facts and

16  circumstances of Plaintiff's purchase of three ChapStick® products, and failing to allege how the

17  presence of certain ingredients render the natural statements to be false or misleading?

18      (4)  Does the Complaint fail to allege facts to state a claim with respect to "natural" claims

19  because such statements are not likely to deceive reasonable consumers?

20      (5)  Do Plaintiff's express warranty claims fail where she does not allege pre-suit notice or

21  an affirmation of fact that was the basis of the bargain?

22

23

24

---

25  [1] Pfizer is a prior manufacturer of the ChapStick® Products. As Plaintiff's First Amended
Complaint acknowledges (¶¶ 9, 11), on December 19, 2018, GlaxoSmithKline entered into a Stock

26  and Asset Purchase Agreement with Pfizer, pursuant to which GlaxoSmithKline agreed to acquire
Pfizer's consumer healthcare business. The acquisition was completed on July 31,

27  2019. Accordingly, GlaxoSmithKline Consumer Healthcare Holdings (US) LLC now owns the
rights to ChapStick® products. Pfizer joins in this motion but preserves its arguments to separately

28  move for dismissal based on the foregoing agreement if necessary.

1

## SUMMARY OF ARGUMENT

2       Plaintiff's First Amended Class Action Complaint ("FAC") fails in five material respects.

3       **First**, Plaintiff lacks Article III standing to challenge all twenty-six lip products sold under

4   six different product lines when she only purchased three lip products under two product lines.  A

5   plaintiff does not have standing to sue for products she did not purchase, particularly where, as

6   here, the products are substantially different from each other.  *Carrea v. Dreyer's Grand Ice Cream,*

7   *Inc.*, 2011 WL 159380, at *3 (N.D. Cal. 2011) (White, J.), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).

8       **Second**, Plaintiff's own allegations preclude her from establishing standing for the

9   injunctive relief claim.  A plaintiff's "knowledge of the truth" about the product, combined with

10   the product's packaging "disclos[ing] the truth [,] ... forecloses the risk of future harm." *Joslin v.*

11   *Clif Bar & Co.*, 2019 WL 5690632, at *4 (N.D. Cal. 2019) (White, J.).  Plaintiff cannot claim she

12   will be deceived in the future when she can merely review the list of ingredients to determine their

13   continued presence in the product.  In addition, her hypothetical assertion that she would purchase

14   the product again "if" it contained ingredients that were actually natural does not support standing

15   for injunctive relief.  *Prescott v. Nestle USA, Inc.*, 2020 WL 3035798, at *6 (N.D. Cal. 2020).

16       **Third**, Plaintiff fails to satisfy Rule 9(b)'s requirement to plead fraud with particularity.  As

17   each claim rests on allegedly misleading conduct, the claims are "grounded in fraud" and must

18   satisfy Rule 9(b)'s heightened pleading requirements.  Plaintiff's generalized allegations lack

19   critical information about her purchase, including the statements she relied on and why they were

20   deceptive.  *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. 2018);

21       **Fourth**, Plaintiff provides nothing more than conclusory assertions that the statements

22   "100% Natural," "Natural," "Naturally Sourced Ingredients," are false.  Plaintiff also fails to

23   plausibly allege that the statements she challenges would deceive a reasonable consumer, who

24   would understand them to indicate that the ingredients come from natural sources.  *Gasser v. Kiss*

25   *My Face, LLC*, 2017 WL 4773426, at *5 (N.D. Cal. 2017).

26       **Fifth**, Plaintiff's express warranty claim fails because she did not provide pre-suit notice of

27   the breach, or an affirmation of fact that was the basis of the bargain. *Alvarez v. Chevron Corp.*,

28   656 F.3d 925, 932 (9th Cir. 2011).

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2   This is a putative nationwide class action about twenty-six ChapStick® products from six

3   different product lines that Plaintiff Lisa Moore says contain various and different misleading uses

4   of the term "natural" on their packaging. *See* FAC ¶ 2.  She challenges the different statements on

5   packaging for all twenty-six products, even though she only purchased three products from two of

6   six product lines.  Plaintiff challenges a wide variety of labeling statements—"100% Natural,"

7   "Natural," "Naturally Sourced Ingredients," and/or "100% Naturally Sourced Ingredients"—based

8   on her unsupported contention that these products contain some "synthetic" and "artificial"

9   ingredients. *Id.* ¶¶ 1, 6.  She seeks injunctive relief correcting these statements though she no longer

10  claims to be deceived by them and she only intends to purchase them again if they are reformulated

11  to contain only natural ingredients.  And she says she relied on these representations in general but

12  she provides no details about her purchase experience—indeed, many of those representations

13  never appeared on the products she purchased.  Plaintiff does not describe any of the particulars

14  that led to her purchase of the products, nor does she proffer an objective or plausible definition of

15  what "natural" means to a reasonable consumers and how they are misled by the words on the

16  ChapStick® label.  These and other flaws render Plaintiff's claims overbroad and fatally deficient.

17

**BACKGROUND**

18  **I.    CHAPSTICK® PRODUCTS**

19  ChapStick® is a brand of lip care products with several distinct product lines, including lip

20  balms, lip scrubs, lip oils and serums, and lip butters.  Each product line is directed to different

21  consumer needs, including for moisturizing, sun protection (SPF), color, or a combination of the

22  above, each in a variety of unique flavors and scents.  The ChapStick® website cited in Plaintiff's

23  Complaint even offers a "Lip Quiz" to help consumers determine which particular product might

24  be best suited to their particular needs.[2]  At issue here are six product lines: (1) ChapStick® 100%

25  Natural Lip Butter; (2) ChapStick® Total Hydration Conditioning Lip Scrub; ((3) ChapStick®

26  100% Natural Lip Balm, (4) ChapStick® Total Hydration Essential Oils Lip Balm, (5) ChapStick®

27

28  [2] *See* Ex. 1, Discover Your Perfect ChapStick.®  All Exhibits cited herein are attached to the Declaration of Jonathan Tam.

Total Hydration Moisture + Tint Lip Balm, and (6) ChapStick® Total Hydration Moisture + Tint SPF Lip Balm). These six lines consist of twenty-six products that differ in many critical respects, as described below and in the chart set forth in the Declaration of Jonathan Tam.[3]

**Differences for Lip Balm:** The Total Hydration 100% Natural Lip Balm comes in four scents (Soothing Vanilla, Eucalyptus Mint, Fresh Citrus, Honey Blossom). FAC ¶ 2 n.2; *id.* Ex. 2. The package states "100% Naturally Sourced Ingredients" and "Natural Age Defying," and the tube states "100% Natural lip care." *Id.*

The Total Hydration Essential Oils Lip Balm is "infused with essential oils" intended to moisturize.[4] It comes in five different "moods" (Energy, Peace, Relax, Chill, Happy). FAC ¶ 2 n.3; *id.*, Ex. 3. The package, but not the tube, states "100% Naturally Sourced Ingredients."

The Total Hydration Moisture + Tint Lip Balm offers eight different colors for the lip balm product, including Fuchsia, Rose Petal, Merlot, Hello Bordeaux, Coral Blush. FAC ¶ 2 n.4; *id.*, Ex. 4. The package, but not the tube, states "100% Naturally Sourced Ingredients."[5]

The Total Hydration Moisture + Tint SPF 15 Lip Balm adds sun protection in three colors (Peachy Keen, Pretty in Pink, Very Berry). FAC ¶ 2 n.5; *id.*, Ex. 5. The package, but not the tube, states "100% Naturally Sourced Ingredients," and "Natural."[6]

**Differences for Lip Scrubs:** The ChapStick® Total Hydration Conditioning Lip Scrub comes in a jar, rather than a tube, and is used to "[r]emov[e] dead skin from dry lips" as "an important first step" prior to use of lip balm.[7] ChapStick® sells two lip scrubs (Fresh Peppermint, Sugar Plum). *See* FAC ¶ 2 n.6; *id.*, Ex. 6. The packaging, but not the jar, states "Natural Lip Scrub" and "Naturally Sourced Ingredients Contains Vitamin E & Coconut Oil." *Id.*

**Differences for Lip Butter:** The ChapStick® 100% Natural Lip Butter provides moisture in four flavors (Green Tea Mint, Pink Grapefruit, Sweet Papaya, Cucumber Pear). *See* FAC ¶ 2

---

[3] *See* Ex. 2, Chart of Products.
[4] *See* Ex. 3, Essential Oils Energy, Total Hydration; *cf.* FAC Ex. 3.
[5] *See* Ex. 4, Moisture + Tint Coral Blush 1ct, Total Hydration; *cf.* FAC Ex. 4.
[6] *See* Ex. 5, Moisture + Tint SPF 15 Very Berry, Total Hydration; *cf.* FAC Ex. 5.
[7] *See* Ex. 6, Lip Scrub Fresh Peppermint 1ct, Total Hydration; *cf.* FAC Ex. 6.

n.1; *id.*, Ex. 1.  The packaging states "100% Natural Lip Butter," "With 100% naturally sourced oils and butters for softer, healthier looking lips."  *Id.*  The tube states "100% Natural Lip Butter."

**Ingredients**: The ingredients both within a product line and across products also vary greatly.  As set forth in Exhibit 2, which summarizes the ingredient lists of the products at issue in this case, many of these products list 20 or more ingredients, which are often unique to the product line or even the product itself.

## II.   PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff asserts five causes of action—Unfair Competition, False Advertising, Consumers Legal Remedies Act, Breach of Express Warranty, and Unjust Enrichment—on behalf of a nationwide class of "all residents of the United States who, within the applicable statute of limitations periods, purchased the Products," and a California subclass of "all residents of California who, within four years prior … purchased the Products."  FAC ¶ 39.

Plaintiff challenges varying "natural" statements on the packaging of twenty-six ChapStick® products across six different product lines, claiming certain allegedly non-natural ingredients in the products render the statements false and misleading:

| Products Named in Complaint | Varieties | Challenged Statements |
|---|---|---|
| ChapStick® 100% Natural Lip Butter | 4 | "100% Natural" (FAC ¶ 18) |
| ChapStick® Total Hydration 100% Natural Lip Balm | 3 | "100% Natural;" "Natural;" "100% Naturally Sourced Ingredients" (FAC ¶ 19) |
| ChapStick® Total Hydration Essential Oils Lip Balm | 5 | "100% Naturally Sourced Ingredients" (FAC ¶ 20) |
| ChapStick® Total Hydration Moisture + Tint Lip Balm | 9 | "100% Naturally Sourced Ingredients" (FAC ¶ 21) |
| ChapStick® Total Hydration Moisture + Tint SPF 15 Lip Balm | 3 | "100% Naturally Sourced Ingredients" (FAC ¶ 22) |
| ChapStick® Total Hydration Lip Scrub | 2 | "Natural;" "Naturally Sourced Ingredients" (FAC ¶ 23) |

Plaintiff purchased only three products in two out of the six product lines.  Specifically, she purchased the Eucalpytus Mint and Fresh Citrus scents of the ChapStick® Total Hydration 100% Natural Lip Balm line, and the Happy "mood" of the ChapStick® Total Hydration Essential Oils Lip Balm line.  FAC ¶¶ 6, 38.  Plaintiff does not say what led her to pick those three products, where they were in the store, how they were packaged, the dates of purchase, or where she bought

them other than in CVS or Walgreens stores in or around San Francisco. *Id.* ¶ 6. She alleges she "relied" on a catchall category of "Natural Representations stated on the Products' label and packaging." *Id.* She did not purchase these products after February 2020. *Id.*

Plaintiff contends that the presence of thirteen ingredients cause the labeling terms "100% Natural," "Natural," "Naturally Sourced Ingredients," and/or "100% Naturally Sourced Ingredients" to be false.[8] However, no one product contain all thirteen ingredients. For instance, of the three ChapStick® products Plaintiff purchased, *see* FAC ¶¶ 6, 38, none of them contain **six** of the thirteen ingredients she challenges: (1) capryloyl glycerin/sebacic acid copolymer, (2) carmine, (3) citric acid, (4) fragrance, (5) partially hydrogenated soybean oil, or (6) iron oxides. *Id.* ¶¶ 26-27. Moreover, while Plaintiff argues they are "non-natural, synthetic, artificial, and/or highly processed ingredients," FAC ¶ 1, 24, she cites to no authority, either government or scientific, to support her assertion that the presence of these ingredients or the manufacturing process to make the product renders the product unnatural. Nor can she.[9]

## III.   FEDERAL REGULATION OF "NATURAL" LABELING

The FDA, which is responsible for cosmetic labeling, has long recognized that any difference between "natural" and "artificial or synthetic" depends upon an ingredient's or product's *source* rather than its processing methods.[10] In addition, the FDA has made clear that "flavor" and "fragrance"—two ingredients challenged by Plaintiff—may be either natural or synthetic. 21 C.F.R. § 700.3(c)-(d). Although the FDA has not promulgated a definition of the term "natural, it

---

[8] The thirteen ingredients Plaintiff challenges are caprylic/capric triglycerides; caprylol glycerin/sebacic acid copolymer; carmine; citric acid; flavor; fragrance; glyceryl stearate; hydrogenated soybean oil; partially hydrogenated soybean oil; iron oxides; octyldodecanol; tocopherols; and tocopheryl acid. FAC ¶ 24.

[9] For instance, the FDA recognizes citric acid as "a naturally occurring constituent of plant and animal tissues" and it is generally recognized as safe for use in food. 21 C.F.R. § 184.1033(a). Carmine is a natural dye created from dried bodies of the Coccus cacti bug. *See* 21 C.F.R. § 73.100(a). Federal regulations note it "may be safely used in cosmetics generally." 21 C.F.R. § 73.2087(b). The FDA has also recognized Glyceryl stearate as natural. 21 C.F.R. §§ 184.1324(a), 184.1090. The U.S. Department of Health and Human Services describes Octyldodecanol as a long chain fatty alcohol, and notes that it is approved by a leading certification body for natural and organic cosmetics. *See* Ex. 7, US DHHS, NIH, Inxight: Drugs – Octyldodecanol.

[10] Ex. 8, FDA, *Use of the Term Natural on Food Labeling*.

4

1    has opened a pre-rulemaking docket and requested public comments on the use of "natural" in food

2    labeling.  80 Fed. Reg. 69,905–69,909.  In response, the FDA received 7,690 comments, including

3    a number of comments requesting the FDA expand the scope of inquiry to include use of the term

4    "natural" in cosmetic labeling.[11]  More recently, the FDA outlined its priorities and identified the

5    issue of "natural" claims as among the topics receiving particular agency attention.[12]  Defendants

6    reserve their right to move to stay this matter pursuant to the primary jurisdiction doctrine in the

7    event that the FDA promulgates proposed rulemaking on this subject in the current administration.

8    *See, e.g.*, *Yu v. Dr. Pepper Snapple Grp., Inc.*, 2019 WL 2515919, at *5 (N.D. Cal. 2019).

9    **LEGAL STANDARD**

10    Under Rule 8, Plaintiff's Complaint must provide "a short and plain statement of the

11    grounds for the court's jurisdiction," including her standing to sue in federal court, and "of the

12    claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(1)-(2).  "[A] complaint

13    must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

14    on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550

15    U.S. 544, 570 (2007)).  A claim is plausible if the plaintiff alleges enough facts to draw a reasonable

16    inference that the defendant is liable.  *Iqbal*, 556 U.S. at 678.  A complaint must transcend the

17    "speculative" and "conceivable," and provide more than mere legal conclusions.  *Twombly*, 550

18    U.S. at 555, 570.  "Threadbare recitals of the elements of a cause of action, supported by mere

19    conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

20    If a plaintiff's claims sound in fraud, they are subject to Rule 9(b)'s heightened pleading

21    standards, which require pleading with "particularity," including "the who, what, when, where, and

22    how of the misconduct charged."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)

23    (citation omitted).  Fraud does not have to be a "necessary element of a claim"—rather, Rule 9(b)

24    will apply if the plaintiff has "allege[d] a unified course of fraudulent conduct."  *Vess v. Ciba-Geigy*

25    *Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  The claim is then "grounded in fraud" and "must

26

27

28

---

[11] Ex. 9, FDA-2014-N-1207, Docket Folder Summary, *Use of the Term "Natural" in the Labeling of Human Food Products*.

[12] *See* Ex. 10, FDA, Remarks by Dr. Susan Magne at the Public Meeting on Horizontal Approaches to Food Standards of Identity Modernization (Sept. 27, 2019).

1   be stated with particularity." *Id.* at 1103-04.  If each claim relies on "that course of conduct as the

2   basis of [the] claim, then each claim "must satisfy the particularity requirement of Rule 9(b)." *Id.*

3   at 1105; *accord Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Wilson v. Frito-*

4   *Lay N. Am., Inc.*, 2013 WL 1320468, at *4-5 (N.D. Cal. 2013); *Pirozzi v. Apple Inc.*, 913 F. Supp.

5   2d 840, 850 (N.D. Cal. 2012) (citation omitted).

6      Although Defendants do not dispute personal jurisdiction as to Plaintiff Lisa Moore's

7   claims, to the extent that Plaintiff places the claims of non-resident class members at issue by

8   moving to certify a nationwide class at a future date, Defendants specifically do not consent to

9   personal jurisdiction in this Court as to the claims of putative class members who are not California

10  residents.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  Defendants

11  accordingly preserve and will oppose a request for the Court's personal jurisdiction over those

12  individuals should this action proceed to the class certification stage.  *See Bugarin v. All Nippon*

13  *Airways Co.*, 2021 WL 175940, at *8 (N.D. Cal. 2021) (it is "most appropriate" to defer the personal

14  jurisdiction issue until class certification); *Matic v. United States Nutrition, Inc.*, 2019 WL

15  3084335, at *10 (C.D. Cal. 2019) (personal jurisdiction "is better resolved at the class certification

16  stage").  At that time Defendants also intend to raise objections to Plaintiff's Article III standing to

17  assert claims on behalf of non-Californian putative class members whose claims would be governed

18  by the laws of other states. *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal.

19  2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws

20  the class seeks to enforce.").  Nevertheless, because Plaintiff Moore is presently the only plaintiff

21  in this case, Defendants limit their arguments in this motion to her claims only.

22                                   **ARGUMENT**

23  **I.     PLAINTIFF CANNOT SUE FOR PRODUCTS SHE DID NOT BUY**

24     A plaintiff lacks Article III standing to bring claims for products she did not purchase

25  because she has not "suffered any injury or lost money or property with respect to those products."

26  *Carrea*, 2011 WL 159380, at *3 (White, J.).  In *Carrea*, the plaintiff brought a class action suit

27  against an ice cream manufacturer for allegedly misleading labeling on a number of products,

28  including products plaintiff herself did not purchase.  *Id.* at *1.  This Court dismissed claims

DECHERT LLP
ATTORNEYS AT LAW

concerning products the plaintiff did not purchase for lack of standing.  *Id.*  Here, just as in *Carrea*, Plaintiff did not purchase most of the products she challenges.  *See* FAC ¶ 38.  Thus, Plaintiff's "claims relating to products not purchased must be dismissed for lack of standing."  *Grandfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. 2012).

Plaintiff cannot save her standing to sue by contending that the products and alleged misrepresentations are substantially similar.  As other courts have recognized, the fact that the products were manufactured by the same company and part of the same brand is not enough.  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870 (N.D. Cal. 2012).  In *Miller,* it was not sufficient that the products were all made by Ghirardelli and involved purported "chocolate" claims to confer standing because "[t]hey look different, they are labeled differently," and were marketed differently than the products plaintiff purchased.  *Id.*

Here too, Plaintiff only purchased lip balms, yet she brings claims about a variety of products, including lip scrubs and lip butters, that look different, are labeled differently, and serve different functions.  *See supra* at 1-3; *compare* FAC ¶ 6, *with* FAC ¶ 38; *see generally* FAC, Ex. 1-6; FAC ¶ 2.  Plaintiff says the products contain the same key ingredients, FAC ¶ 38, but the webpages she relies on show precisely the opposite.  The Essential Oils Lip Balm contains essential oils, the Lip Butter contains a variety of different oils and butters, the Lip Scrub contains various exfoliants, the Moisture + Tint Lip Balm contains coloring, and the Moisture + Tint SPF contains sun protection.  *See supra* at 1-3.  As set forth in Exhibit 2, the ingredients vary greatly across these products, with some ingredients specific to product lines or even to individual products, including Rosmarinus officinalis (rosemary) leaf oil. Ex. 2, Chart of Products at 4.  Likewise, citric acid appears only in the lip scrub, which Plaintiff did not purchase.  *Id.* at 11-12.

The overbreadth of Plaintiff's claims is particularly apparent from the fact that the products she purchased do not even contain all thirteen ingredients she says are "non-natural."  Six of the ingredients she challenges as non-natural (caprylol glycerin/sebacic acid copolymer, carmine, citric acid, fragrance, and iron oxides) are not listed in any of the three products she purchased.  FAC ¶¶ 26-27.  Other ingredients present in the products Plaintiff purchased, such as

1  octyldodecanol and glyceryl stearate, are only in a subset of the products. *See id.* ¶¶ 25-30.  And

2  as noted above with respect to citric acid, some ingredients are only present in a few products.

3      Finally, the statements that Plaintiff challenges as misleading differ among the products.

4  Some products contain the statements "100% Natural Lip Butter," some say "Natural Age

5  Defying," others say "Naturally Sourced Ingredients," or "100% Naturally Sourced Ingredients."

6  *See* FAC ¶ 1.  These statements might appear on the package and the tube, or just on the package.

7  Moreover, the statements vary in fonts, colors, sizes, and location on the products' labeling.  *See*

8  *id.* ¶¶ 1, 18-23; FAC, Ex. 1-6.[13]

9      This is not a case of identical alleged misrepresentations in the same font size, type, and

10  color, and placement.  It is a case of different products with different functions catering to different

11  needs with different statements presented in different ways in different places.  Plaintiff's overbroad

12  claims for twenty-three products she did not purchase should be dismissed for lack of standing.

13  **II.    PLAINTIFF LACKS INJUNCTIVE STANDING**

14      To satisfy standing requirements for an injunctive relief claim, Plaintiff must allege an intent

15  to purchase in the future the products at issue in the lawsuit—not some different or new version of

16  the products, reformulated to her liking.  Plaintiff lacks standing to sue for an injunction as to the

17  twenty-three products she did not purchase, since she cannot allege she was previously deceived

18  by any representations on those products.  *See Sud v. Costco Wholesale Corp.*, 731 F. App'x 719,

19  721 (9th Cir. 2018).  Even as to the three products she did purchase, she lacks injunctive standing

20  because she cannot allege a "real or immediate threat that [she] will be wronged again," *City of Los*

21  *Angeles v. Lyons*, 461 U.S. 95, 111 (1983), that is more than "conjectural or hypothetical."  *Joslin*

22  *v. Clif Bar & Co.*, 2019 WL 5690632, at *2 (N.D. Cal. 2019) (White, J.) (quoting *Davidson v.*

23  *Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).  Plaintiff cannot allege that future harm

24  here because she claims to now know the truth about the representations on ChapStick® products.

25      The Ninth Circuit has permitted injunctive claims by a consumer who is deceived once and

26  learns the truth about a product in limited circumstances—that is, if she would be required to

27  _____

28  [13] The "naturally sourced" representations appear in black font or in similar colors as the rest of the labels and appear in smaller font than most other messages on each products' label.  *Id.*, Ex. 1-6.

8

DECHERT LLP
ATTORNEYS AT LAW

purchase the product again to know whether the alleged misrepresentation was cured. *Davidson*, 889 F.3d at 969-71. In *Davidson*, the plaintiff purchased wet wipes labeled as "flushable" with the belief the wipes were, in fact, flushable, when that was allegedly not true. *Id.* at 961-62. The Ninth Circuit held that when the plaintiff encountered this product in a store labeled the same way in the future, she would have no way of knowing whether the representation "flushable" was true without purchasing the product and testing to see if it actually flushed. *Id.* at 970-72; *see also Joslin*, 2019 WL 5690632, at *3. Thus, she was able to show she faced an "actual and imminent … threat of future harm" sufficient to support injunctive standing. *Davidson*, 889 F.3d at 969 (citation omitted).

Not so here, where the ingredient list on the ChapStick® packaging precludes any further alleged deception. Plaintiff has identified thirteen ingredients she believes to be "non-natural," and she can review the ingredient list on the product labeling to determine if those ingredients are still present in the products. *See* Ex. 11-16, Chapstick® Labeling.[14] As this Court has held, if a plaintiff "need only inspect the ingredient list to discover" whether the alleged misrepresentation has been cured, then she lacks Article III injunctive standing. *Joslin*, 2019 WL 5690632, at *4. If "part of [a] product's packaging discloses the truth of the product," even where some other "part of a product's packaging may be misleading," the "plaintiff's knowledge of the truth" of the ingredients "forecloses the risk of future harm." *Id.*

Thus, in *Yu v. Dr. Pepper Snapple Group, Inc.* the court did not find "plausible" the plaintiff's allegation that he lacked the ability to determine whether the applesauce and apple juice truly contained "All Natural Ingredients," where the plaintiff now knew that the products contained the non-natural ingredient alleged in the complaint. 2020 WL 5910071, at *8 (N.D. Cal. 2020). Even though the plaintiff alleged he wanted to purchase the product in the future, he would not be "misled into purchasing" them "[g]iven what [he] [now] knows about [the] products," and thus lacked standing to pursue injunctive relief. *Id.*; *see also Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. 2018) ("Unlike *Davidson*, where a consumer's inability to rely on packaging misrepresentations in the future was an ongoing injury, [the plaintiff] is able to rely on the

---

[14] The labeling attached as Exhibits 11 through 16 is approved labeling for the products at issue.

1  packaging now that he understands the 'No Sugar Added' label.").

2  Moreover, Plaintiff only posits the hypothetical that "[i]f the Products' ingredients were

3  actually natural … Plaintiff would purchase the Products in the future." FAC ¶ 7.  A plaintiff

4  cannot seek an injunction by claiming they "would purchase the Product again in the future" if it

5  were different, since "the Court lacks authority to compel [the defendant] to make any particular

6  product by way of an injunction." *Prescott v. Nestle USA, Inc.*, 2020 WL 3035798, at *6 (N.D.

7  Cal. 2020).  Such allegations are far from what the Ninth Circuit deemed necessary in *Davidson*.

8  *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (dismissing injunctive claim

9  where "Plaintiff merely theorizes that he might repair the Watch in the future, which may give rise

10  to the alleged defect.").  Plaintiff's injunctive claims should be dismissed.

11  **III.    PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY**

12  Each of Plaintiff's five causes of action is based on the same course of allegedly fraudulent

13  conduct—selling products with allegedly misleading and deceptive labels.  *See, e.g.*, FAC ¶¶ 73,

14  82, 91 (UCL); *id.* ¶ 103 (FAL); *id.* ¶ 120 (CLRA); *id.* ¶¶ 134-36 (express warranty); *id.* ¶ 145

15  (unjust enrichment).  Plaintiffs' claims are "grounded in fraud" and must satisfy Rule 9(b).

16  When a plaintiff avers fraudulent conduct, the "circumstances constituting the alleged fraud

17  [must] be specific enough to give defendants notice of the particular conduct … so that they can

18  defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-*

19  *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  To properly put the

20  defendant on notice, a plaintiff must "identify the who, what, when, where, and how" of the

21  particular conduct.  *U.S. ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th

22  Cir. 2011) (citation omitted).  These details are also critical to Plaintiff's demonstration of "actual

23  reliance," which is necessary to establish causation on claims involving false advertising and

24  misrepresentations to consumers.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009); *accord*

25  *Kearns*, 567 F.3d at 1125-27.  Reliance is the linchpin of causation, since "reliance is the causal

26  mechanism of fraud." *In re Tobacco II*, 46 Cal. 4th at 326.  This requires Plaintiff to allege facts

27  showing the misrepresentation was an "immediate cause of the injury-causing conduct." *Id.* at 328.

28  Plaintiff's pleading does not meet these standards.  "[T]he who, what, when, where, and

how" of the alleged deception are wholly absent.  *Cafasso*, 637 F.3d at 1055.  Plaintiff does not allege the circumstances of her purchases, the place in the store the products were located, the form of packaging they were in, the statements that she read on the packaging, if any, before purchasing the products, and whether and how those statements induced her to purchase the product.  Without that detail, Plaintiff's Complaint is a generalized challenge to generalized conduct—not a specific account to Defendants of the conduct that Plaintiff claims deceived her and led her to purchase ChapStick® products when she otherwise would have not.  It is insufficient to support deception, causation, and actual reliance.  *In re Tobacco II*, 46 Cal. 4th at 326, 328.

Instead of providing those details, all that Plaintiff alleges is that she "relied" on a catchall category of "Natural Representations stated on the Products' label and packaging."  FAC ¶ 6.  But a pleading that "generally identifies" the statements but "fails to specify which statements the plaintiff actually saw and relied upon" does not satisfy Rule 9(b).  *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. 2018); *accord Pirozzi*, 913 F. Supp. 2d at 850.  The particularity requirement means that a plaintiff cannot merely rely upon allegations about a "representative" statement when there are multiple statements at issue.  *Tabler v. Panera LLC*, 2020 WL 3544988, at *7 (N.D. Cal. 2020).  That is because other statements can "contain different language," *id.*, and a plaintiff must "explain how those statements are actually misleading."  *Lusson v. Apple, Inc.*, 2016 WL 10932723, at *2 (N.D. Cal. 2016). Without such particularity, the Court cannot "assess how a 'reasonable consumer' would view the different" statements, and a plaintiff "fails to give [the defendant] an opportunity to respond."  *Tabler*, 2020 WL 3544988, at *7.  That is precisely true here: there are multiple statements at issue for the twenty-six products Plaintiff challenges, and multiple statements on the packaging of just the three products she purchased.  A general reference to "Natural Representations" neither tells Defendants which statements Plaintiff read and relied on nor how those statements were false and misleading.

Even apart from the absence of any details regarding her experience, Plaintiff's allegations fail Rule 9(b) because she does not provide any information that would explain why the representations at issue are misleading.  Plaintiff insists that particular ingredients found in varying combinations among the twenty-six ChapStick® products are synthetic, artificial or highly

11

processed, and therefore "non-natural." FAC ¶ 24. But she provides no government regulation, statute or other authority to support her claims that the challenged ingredients in this case are in fact artificial, synthetic or unnatural. Plaintiff cannot overcome Rule 9(b) by listing ingredients and merely asserting they are not natural without offering any basis for this Court to accept her conclusory allegations. *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013) ("A bare, conclusory assertion that" certain ingredients function in specific ways, made "without any basis for such a conclusion in the FDA regulations or otherwise, is insufficient to state a claim."); *Figy v. Frito-Lay N. Am., Inc.,* 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) ("It is insufficient under Rule 9(b) to simply assert, no matter how foreign or synthetic-sounding an ingredient's name might be, that an ingredient is unnatural."). Plaintiff's failure to plead with particularity warrants dismissal of any remaining claims. *See Vess*, 317 F.3d at 1107.

## IV. PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's claims also fail on the merits. To prevail on her consumer protection claims, Plaintiff must plausibly allege that reasonable consumers are likely to be deceived by the challenged conduct. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Miller*, 912 F. Supp. 2d at 873. There must be "more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quotation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation omitted).[15] Plaintiff fails in that effort both as to the use of the word "Natural" and the use of the phrase "Naturally Sourced Ingredients" in the ChapStick® products.

### A. Plaintiff Fails To Plausibly Allege How "Natural" Is Misleading

Three of the ChapStick® product lines use the word "Natural" or "100% Natural" on their

---

[15] This deficiency is also fatal to Plaintiff's breach of express warranty and unjust enrichment claims because they are based on the same theory of misrepresentation. *Yu*, 2019 WL 2515919, at *4; *see also Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *4 (N.D. Cal. 2019); FAC ¶¶ 134-135, 145.

packages.[16]  Plaintiff makes varying conclusory assertions in the FAC as to why the natural claims are misleading.  She contends that products are not natural when they contain ingredients that are either artificial (meaning extra substances or chemicals have been added), synthetic (meaning the product has been chemically changed through the manufacturing process), or highly processed (which is undefined).  FAC ¶ 15.  However, the FDA, the FTC, and courts across the country have recognized that "[t]here is no single, controlling definition of the word 'natural.'"  *See, e.g.*, *Jones v. ConAgra Foods, Inc*., 2014 WL 2702726, at *15 (N.D. Cal. 2014); FDA's Natural Request, 80 Fed. Reg. at 69,906 ("[T]he term 'natural' is used on a variety of products to mean a variety of things… [and] consumers regard many uses of this term as non- informative").  Because there is no controlling federal regulation, nor a universal definition of the term 'natural,' courts have held a complaint should be dismissed if the plaintiff "fails to offer an objective or plausible definition" of the term.  *See Pelayo v. Nestle USA, Inc*., 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013).

Thus, in *Robinson v. Unilever United States, Inc.*, plaintiff's allegations regarding the defendant's "Made with 100% Natural Moisturizers"; "Made with 100% Natural Exfoliant"; and "Made with 100% Natural Extracts" labels failed to plausibly trigger the reasonable consumer standard.  2019 WL 8012687, at *2–3 (C.D. Cal. 2019).  Likewise, in *Yu*, the court held that a reasonable consumer would not interpret "natural" and "all natural ingredient" labels to mean there was an absence of chemical pesticides.  2020 WL 5910071, at *5–6.  Also, in *Bruton v. Gerber Products Co.*, the court dismissed a plaintiff's claim that the statement "Made With 100% Natural Fruit" meant the entire product was natural.  961 F. Supp. 2d 1062, 1097–98 (N.D. Cal. 2013).

Plaintiff's relies on the dictionary definition of "natural," the Department of Agriculture definition of "synthetic," and the FTC's warning that natural claims must be substantiated.  To the extent they are relevant, they do not indicate what a reasonable consumer believes the words "artificial," "synthetic," or "natural" to mean.  Indeed, any arguable confusion "is clarified by the detailed information contained in the ingredient list," *Hairston v. S. Beach Beverage Co.*, 2012 WL

---

[16]  The ChapStick® Lip Butter product states "100% Natural Lip Butter" (FAC ¶ 18), the ChapStick® Total Hydration 100% Natural Lip Balm states "Natural Age Defying," "100% Natural lip care," and "100% Naturally Sourced Ingredients" (FAC ¶ 19), and ChapStick® Total Hydration Natural Lip Scrub product line states "Natural Lip Scrub" (FAC ¶ 23).

1893818, at *5 (C.D. Cal. 2012), which "reasonable consumers expect … contains more detailed information about the product that confirms other representations on the packaging." *Williams*, 552 F.3d at 939-40; *Pelayo*, 989 F. Supp. 2d at 978 (collecting cases).  Because ChapStick® is not itself found in nature, reasonable consumers would understand that manufacturing would involve adding and processing ingredients, as stated on the label.  Ex. 11-16.  These claims should be dismissed.

### B.    Plaintiff Fails To Plausibly Allege How "Naturally Sourced" Is Misleading

ChapStick® Total Hydration Natural Lip Scrub uses the phrase "Naturally Sourced Ingredients" and four other product lines use "100% Naturally Sourced Ingredients" on the packaging.[17]  Plaintiff's Complaint, however, is devoid of any explanation as to what renders either of these phrases misleading.  Nor can she as courts in this District have held that the use of "naturally" in labeling does not deceive a reasonably consumer where, as here, it would be understood as referring only to the source of ingredients, rather than as a claim that the products were entirely natural.  The Court in *Gasser v. Kiss My Face, LLC* dismissed plaintiffs' claims because the cosmetic product's labeling, which claimed to "nourish naturally with our botanical blends" for "obsessively natural kids," was not likely to deceive a reasonable consumer.  2017 WL 4773426, at *5 (N.D. Cal. 2017).  The Court noted that there was no precedent to support that use of the adverb "naturally" was sufficient itself to pass the reasonable consumer test.  *Id.*  Further, the Court reasoned the label was "not an affirmative representation that the [products were] entirely natural."  *Id.*  Rather, the label showed that "a reasonable consumer would interpret the statement ["nourish naturally with our botanical blends"] as meaning the product contains natural ingredients—a true statement."  *Id.*

Furthermore, even accepting Plaintiff's subjective understanding of "naturally sourced," her theory that she was deceived into believing the entire product came directly from nature is not plausible looking at the label as whole.  In *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, the court held the many meanings of the phrase "100% Grated

---

[17] Total Hydration 100% Natural Lip Balm, Total Hydration Essential Oils Lip Balm, Total Hydration Moisture + Tint Lip Balm, and Total Hydration Moisture + Tint SPF 15 Lip Balm.  *See* Ex. 12-16.

Parmesan Cheese" meant the label was not deceptive, since reasonable consumers would know to read the ingredient list and "need more information before concluding that the labels promised only cheese and nothing more." 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017).  The same goes here.  Plaintiff pleads no facts to plausibly suggest that packaging stating "Naturally Sourced Ingredients" and "100% Naturally Sourced Ingredients" is likely to deceive a reasonable consumer.   Plaintiff interprets the mere presence of the adverb "naturally" as a representation "that the Products contain no non-natural, artificial, and/or synthetic ingredients."  FAC ¶ 16.  But in doing so, she disregards the context of the statements and the label that her own Complaint proffers, ignoring the words "sourced" and "ingredients" without any further explanation of why she or a reasonable consumer would do so.  Reasonable consumers would find that the plain meaning of the "naturally sourced" representation is that the *sources* of the cosmetic product's ingredients are natural.  *Gasser*, 2017 WL 4773426, at *5.  That is true even under Plaintiff's telling: she does not allege that the sources of the ingredients are non-natural.  Plaintiff thus fails to plausibly allege that the "naturally sourced" representations are likely to deceive a reasonable consumer.

## V.     PLAINTIFF'S EXPRESS WARRANTY CLAIMS FAIL

Plaintiff does not allege that she provided pre-suit notice of breach to Defendants as required by California Commercial Code § 2607(3)(A).  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).  Notice to defendant of a violation of the CLRA does not satisfy the notice required for a warranty claim.  *Oddo v. Arcoaire Air Conditioning & Heating*, 2017 WL 372975, at *8 (C.D. Cal. 2017).  Dismissal of the express warranty claim is proper.  *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011).  Her express warranty claim also fails under California Commercial Code § 2313(1)(a) because she has not alleged "an affirmation of fact or promise" relating to the products that was "part of the basis of the bargain."  *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997).  Plaintiff pleads no specific statement of fact, but only the "Natural Representations" generally, and she does not allege which, if any, of them, she actually relied on in purchasing the products.  *See* FAC ¶ 6.  Her claim thus fails.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

15

1

2

Dated: February 26, 2021                                    DECHERT LLP

3                                                                  By:    */s/ Jonathan S. Tam*
                                                                            Jonathan S. Tam (Bar No. 304143)
4                                                                          Christina Guerola Sarchio (*pro hac vice*)
                                                                            Lincoln Davis Wilson (*pro hac vice*)
5                                                                          *Attorneys for Defendants*
                                                                            *GlaxoSmithKline Consumer Healthcare*
6                                                                          *Holdings (US) LLC, and Pfizer Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28