UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M MOORE,<br><br>   Plaintiff,<br><br> v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, et al.,<br><br>   Defendants. | Case No. 20-cv-09077-JSW<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 27 |

Now before the Court for consideration is the motion to dismiss Plaintiff's first amended complaint ("FAC") filed by Defendants GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Pfizer Inc. (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in the case. For the following reasons, the Court DENIES Defendants' motion.

## BACKGROUND

Plaintiff Lisa Moore ("Plaintiff") brings this putative consumer class action on behalf of herself and all residents within the United States and a subclass of California purchasers of certain ChapStick® products. Plaintiff alleges that Defendants falsely label certain of their ChapStick® products with the claims "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients." (FAC ¶ 1.) Plaintiff alleges these representations are false because the challenged ChapStick® products contain non-natural, synthetic, artificial, and/or highly processed ingredients. (*Id*.)

Plaintiff challenges six ChapStick® products: (1) ChapStick® 100% Natural Lip Butter; (2) ChapStick® Total Hydration 100% Natural Lip Balm; (3) ChapStick® Total Hydration

Essential Oils Lip Balm; (4) ChapStick® Total Hydration Moisture + Tint Lip Balm; and (6) ChapStick® Total Hydration Natural Lip Scrub (collectively, the "Products"). (*Id.* ¶ 2.) The Products come in a variety of scents and shades. (*Id.*; *see also id.* n.1-6.) Plaintiff alleges that the Products are substantially similar. (*Id.* ¶ 38.) Plaintiff alleges that the Products contain ingredients that are non-natural, synthetic, artificial, and/or highly processed, and she identifies twelve such ingredients that are allegedly present in the Products. (*Id.* ¶ 24.)

Plaintiff, a resident of California, alleges that she routinely purchased the ChapStick® Total Hydration 100% Natural Lip Balm in Eucalyptus Mint and Fresh Citrus scents and the ChapStick® Total Hydration Essential Oils Lip Balm in the Happy scent at CVS and Walgreens stores in or around San Francisco. (*Id.* ¶ 6.) Plaintiff alleges that she relied on the natural representations on the label and would not have purchased the products if she knew that they contained non-natural ingredients. (*Id.*) Plaintiff further alleges that she continues to desire to purchase the Products if the Products did not contain any non-natural ingredients but is unable to rely on the truth of the natural representations and does not know the meaning of the Products' ingredients. (*Id.* ¶¶ 6-7.)

Based on these allegations, Plaintiff brings causes of action for violations of: (1) California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.* ("UCL"); (2) California's False Advertising Law, Business and Professions Code sections 17500, *et seq.* ("FAL"); and (3) California's Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq.* ("CLRA"). Plaintiff also brings causes of action for breach of express warranty and unjust enrichment.

**ANALYSIS**

A.  **Requests for Judicial Notice.**

Defendants request judicial notice of numerous documents. These documents fall into the following categories: (1) webpages from the ChapStick® website; (2) product labels from the challenged Products; and (3) publications of federal agencies. Plaintiff submitted an opposition objecting to Defendants' requests, and Defendants submitted a response. The Court will discuss each category of documents in turn.

2

In general, websites and their contents may be judicially noticed. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020). Exhibits 3-6 are webpages for several of the challenged Products, and the Court finds that Exhibits 3-6 are proper subjects of judicial notice. The Court therefore takes judicial notice of the existence of Exhibits 3-6, but not the truth of the contents in the documents. *Pac. Overlander, LLC v. Kauai Overlander*, No. 18-CV-02142-KAW, 2018 WL 3821070, at *2 (N.D. Cal. Aug. 10, 2018) (taking judicial notice of websites and printouts of webpages, but not for the truth of statements therein). However, Exhibit 1 is a webpage showing a "quiz" for ChapStick® users. This webpage is not relevant to the instant motion, and the Court declines to take judicial notice of Exhibit 1 for this reason. *Hitachi Kokusai Electric Inc. v. ASM Internat'l, N.V.*, 2018 WL 6099953, at *3 (N.D. Cal. Nov. 21, 2018) (declining to take judicial notice of webpages because the court found them to be irrelevant to motion).

Next, Defendants request that the Court take judicial notice of the Products' labels because they are incorporated by reference into the FAC. Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the labels and the labels are central to the plaintiff's complaint. *Samet v. Proctor & Gamble Co.*, 2013 WL 3124647, at *2 n.1 (N.D. Cal. 2013). Here, Plaintiff objects to the authenticity of the labels and raises objections that focus on the content of the labels. Defendants, however, have provided a declaration authenticating the labels and purport to offer these labels not for the truth of their statements, but only to note their existence, specifically that the labels contain an ingredient list. The Court finds the labels proper subjects of judicial notice and takes judicial notice of the existence of Exhibits 11-16 for this limited purpose, but not for the truth of the contents therein.

Defendants also request that the Court take judicial notice of several government publications on webpages, specifically: (1) the DHHS webpage for the ingredient Octyldodecanol; (2) an FDA webpage regarding the use of the term natural in food labeling; (3) an FDA summary regarding the proposed rule for the use of natural in food labeling; and (4) a transcript of FDA remarks regarding food standards. Whether or not these are proper matters to be noticed under Fed. R. Evid 201(b), the Court finds these webpages irrelevant to deciding the issues presented by

3

this motion. Accordingly, the Court declines to take judicial notice of Exhibits 7-10. *See Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2018 WL 1510202, at *3 (N.D. Cal. Mar. 27, 2018) (declining to take judicial notice of articles that were irrelevant to motion).

Finally, Exhibit 2 is a chart that compiles information related to the challenged Products. Defendants do not provide any basis upon which the Court may consider this chart in the request for judicial notice. To the extent Defendants' raise arguments related to chart in the response to Plaintiff's opposition, the Court will not consider those arguments. *Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) ("As a general rule, courts do not consider arguments raised for the first time on reply."). The Court finds the chart is not the proper subject of judicial notice under with Fed. R. Evid. 201(b) or the doctrine of incorporation by reference. The Court declines to judicially notice Exhibit 2.

**B.     Plaintiff Has Article III Standing for Products Not Purchased.**

Defendants move to dismiss Plaintiff's claims for lack of standing as to products she did not purchase. Defendants argue that Plaintiff claims to have purchased only lip balms, but she brings causes of actions related to several other products including lip scrubs and lip butters.

In the Ninth Circuit, "[t]here is no controlling authority on whether Plaintiffs have standing for products they did not purchase," *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012), and both parties cite cases in support of their position. However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014) ("Courts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products."). In determining whether products are substantially similar, "[c]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy*, 67 F. Supp. 3d at 1083. Courts have previously found that diverse products bearing similar labels may be considered "substantially similar." *Maisel v. S.C. Johnson & Son,*

4

*Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021) (collecting cases). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Here, Plaintiff alleges that products are substantially similar in the following ways: (1) all are manufactured, marketed, advertised, labeled, and packaged by Defendants; (2) all are sold under the ChapStick® brand name; (3) all are intended to moisturize lips; (4) all are applied in the same manner; (5) all contain similar natural representations on the front label and packaging; (6) all contain a combination of the thirteen non-natural, artificial, synthetic, and highly processed ingredients; (7) the Products contain a significant overlap of other ingredients; and (8) the misleading effect of the labels is the same across all the Products. (FAC ¶ 38(a)-(h).)

Based on these allegations, the Court finds Plaintiff has sufficiently alleged that the unpurchased products are substantially similar to the purchased products. The differences between the Products raised by Defendants may impact class certification or summary judgment, but they are not enough to defeat substantial similarity for the purposes of standing. *See Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 WL 126848, at *12 (N.D. Cal. Mar. 26, 2014) (differences in ingredients and labeling on products did not render the products sufficiently dissimilar to defeat standing where the products contained similar "natural" representations and the challenged harm was the same).

Accordingly, the Court DENIES Defendants' motion on this ground.

**C.     Plaintiff's Allegations Are Sufficient to Establish Standing to Seek Injunctive Relief.**

Defendants also argue that Plaintiff lacks Article III standing to seek injunctive relief because she has not alleged more than a hypothetical threat of future harm. In order to show she has standing to seek injunctive relief, Plaintiff must "demonstrate that [she] has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quotation marks and citation omitted). The latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury." *Id.* The threat of future

1    injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an
2    injury in fact for injunctive relief purposes. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967
3    (9th Cir. 2018).
4          In *Davidson*, the plaintiff purchased wet wipes labeled as "flushable" because she believed
5    they "would be better for the environment, and more sanitary, than non-flushable wipes." 889
6    F.3d at 961. The plaintiff also alleged she believed that such wipes would be "'*suitable* for
7    disposal down a toilet,' not simply '*capable* of passing from a toilet to the pipes after one
8    flushes.'" *Id.* (emphasis in original). However, the plaintiff alleged that, contrary to the statement
9    on the label that the wipes were "flushable," the wipes were not "suitable" for disposal down a
10   toilet because they did not break down quickly once flushed. *Id.* at 962. Therefore, the plaintiff
11   alleged that the wipes were not "flushable" in the way a reasonable consumer would understand
12   the word to mean. *Id.* The plaintiff also alleged she had paid a premium for "flushable" wipes,
13   that were not flushable at all, as compared with "non-flushable" wipes. *Id.* at 961. The plaintiff
14   also alleged that she regularly visited stores selling the wipes in question and desired to purchase
15   truly flushable wipes. *Id.* at 970-71.
16         The court found these allegations were sufficient to establish standing for injunctive relief.
17   *Id.* at 972. In so finding, the court reasoned that if the plaintiff encountered the nominally
18   "flushable" wipes in a store, she would have no way of knowing whether the representation
19   "flushable" was true without first purchasing the product and testing them for herself. *Id.* at 970-
20   72. Furthermore, because the plaintiff alleged that she would like to purchase truly flushable
21   wipes, gave reasons to support her desire to purchase the wipes, and alleged she regularly visited
22   stores carrying the wipes, her inability to rely on the truth of the packaging constituted a
23   cognizable risk of future harm. *Id.* at 971-72.
24         Here, Plaintiff alleges that she "continues to see the Products available for purchase and
25   desires to purchase them again if the Natural Representations were in fact true—i.e., if the
26   Products truthfully did not contain any non-natural, synthetic, artificial and/or highly processed
27   ingredients." (FAC ¶ 6.) In the FAC, Plaintiff identifies twelve non-natural, synthetic, and/or
28   artificial ingredients that are present in the Products in varying combinations, but she alleges that

she does not know the meaning or the import of the Products' ingredients. Plaintiff alleges that as "an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of cosmetic products," she would not be able to differentiate between cosmetic ingredients that are natural and those that are synthetic. (*Id*. ¶ 7.) As a result, Plaintiff alleges that she is at risk of reasonably, but incorrectly, assuming that Defendants fixed the formulation of the Products.

Defendants argue that Plaintiff has not alleged a cognizable threat of future harm under *Davidson*. Defendants argue that the ingredient list on the Products precludes further deception. Unlike the flushable wipes in *Davidson*, Defendants contend that Plaintiff can review the Products' labeling to determine if the twelve allegedly "non-natural" ingredients are present in the Products before deciding to make a purchase. Defendant argues that Plaintiff's knowledge of the truth of the ingredients forecloses the risk of future harm because she cannot be plausibly misled again.

Several courts have rejected similar arguments since *Davidson*. For example, in *Vizcarra v. Unilever United States, Inc.*, the plaintiff alleged that the defendant's labeling of its ice cream as "natural vanilla" was misleading because the vanilla flavor in the product was derived from non-vanilla plant sources. No. 4:20-cv-02777-YGR, 2020 WL 4016810, at *1 (N.D. Cal. July 16, 2020). The defendant argued that the plaintiff lacked standing to seek injunctive relief because she was now aware of the source of the vanilla flavoring. The court disagreed finding the plaintiff's allegations that "she was deceived by the 'natural vanilla' labeling and marketing for Breyers Natural Vanilla Ice Cream, that she purchased the ice cream in reliance of its allegedly deceptive labeling and marketing, and that she would purchase the ice cream in the future if it were truly flavored as labeled and advertised" sufficient under *Davidson*. *Id*. at *6. The fact that carton contained an ingredient list did not alter the court's conclusion because consumers are not required to consult the ingredient list to discern the actual contents of the mislabeled product. *Id*.

Similarly, the plaintiff in *Shank v. Presidio Brands, Inc.*, alleged that he continued to desire to purchase the challenged products in the future if they were reformulated to no longer contain unnatural, synthetic, or non-naturally derived ingredients. No. 17-CV-00232-DMR, 2018 WL 1948830, at *3 (N.D. Cal. Apr. 25, 2018). He further alleged that he would be hesitant to rely on

7

the labels in the future because he had no way of knowing whether the reformulation would, in fact, actually contain no unnatural, synthetic, or non-naturally derived ingredients. *Id*. The defendant argued that there was no risk of future injury because the plaintiff could look at the products' ingredients list and determine at the time of purchase if the same allegedly offensive ingredients were still present. *Id.* at *4. The court rejected this argument and found the plaintiff's allegations sufficient under *Davidson*. *Id*. at *4-5 (finding that the plaintiff's "ability to read the products' ingredients does not render [the defendant's] allegedly false advertising that the products contain "only naturally-derived" ingredients "any more truthful""); *see also Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at * 15 (N.D. Cal. Apr. 21, 2020) (holding that the burden is not on plaintiff to consult the ingredient list to try to discern if the ingredients match the labels on the front of the box).

   The Court finds the reasoning in *Vizcarra* and *Shank* persuasive here. Plaintiff alleges that she continues to desire to purchase the Products if they were actually natural and would be unable to trust Defendant's label representations absent injunctive relief. Moreover, even if Plaintiff is now aware of some synthetic ingredients, it is plausible that she would still be unable to rely on the Products' labeling in the future given her allegations that she cannot differentiate between synthetic and natural ingredients. *See Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958, at *7 (N.D. Cal. July 31, 2020) ("[A]bsent an encyclopedic knowledge of sunscreen active ingredients, Plaintiffs may not be able to truly know whether a sunscreen is truly 'mineral-based.'"). In any event, the Court is not persuaded that Plaintiff should be required to carefully review the ingredient list to discern if the Products are natural. *See Tucker*, 2020 WL 1929368, at *6 (declining to place the onus on plaintiff to consult the ingredient list to discern the truth of the allegedly misleading representation).

   Defendants point to a few post-*Davidson* decisions for the proposition that a plaintiff cannot show a likelihood of future injury where the plaintiff has become aware that the product in question does not actually possess the qualities that the plaintiff initially believed it did. However, the Courts finds those cases distinguishable. In *Prescott v. Nestle USA, Inc.*, the plaintiffs alleged that the label statement "Premier White Morsels" misled consumers into believing the products

8

1    contained real white chocolate because of the use of the term "white." No. 19-cv-07471-BLF,
2    2020 WL 3035798, at *1 (N.D. Cal. June 4, 2020). The plaintiffs sought an injunction prohibiting
3    the defendant from advertising its product as "white chocolate." *Id*. However, the plaintiffs did
4    not allege that the products were labeled as "white chocolate," so the request for injunctive relief
5    was of questionable viability. *Id.* at *1 n.1. Although the plaintiffs alleged that they would
6    purchase the product again in the future if they could be sure it was white chocolate, the court
7    could not compel the defendant to make a product by way of injunction. *Id*. at *6. Moreover, the
8    plaintiffs did not allege that they desired to purchase the challenged product absent the allegedly
9    misleading label, and instead they made clear that they did not wish to purchase "fake" white
10   chocolate. *Id*. That is not the case here. Plaintiff has alleged that the labels represent that the
11   Products are "natural," which she alleges is misleading given the presence of non-natural
12   ingredients. And she has alleged her desire to continue to purchase the Products if she knew the
13   natural representations were true.

*Joslin v. Clif Bar & Co.*, is also distinguishable. No. 4:18-CV-04941-JSW, 2019 WL
5690632 (N.D. Cal. Aug. 26, 2019). The *Joslin* plaintiffs alleged that the phrase "white
chocolate" on the products' label was misleading because it implied that the products contained
white chocolate when they did not. *Id*. at *2. However, the plaintiffs did not allege that they
desired to purchase the challenged products in the future, which was independently fatal to their
injunctive relief claims. *Id.* at *3. Additionally, because the plaintiffs alleged they were misled by
the "white chocolate" label on the product, it was reasonable to conclude that the plaintiffs "need
only inspect the ingredient list to discover that the Products do not contain white chocolate." *Id*.
White chocolate is a single ingredient, the presence or absence of which would be easily
identifiable on the list. *Id*. Here, in contrast, Plaintiff alleges that the natural label implies that the
Products contain no non-natural ingredients, and Plaintiff alleges that she would be unable to
differentiate between natural and non-natural ingredients in the ingredient list.

The Court finds Plaintiff's allegations of future harm sufficient to establish standing for
injunctive relief at this stage and DENIES Defendants' motion on this ground.

9

**D.     The Court Denies Defendants' Motion for Failure to State a Claim.**

**1.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Id.* The Court may review matters that are in the public record, including pleadings, orders, and other papers filed in court. *See id.*

Where, as here, a plaintiff asserts a claim sounding in fraud, the plaintiff must "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b) ("Rule 9(b)"). A claim sounds in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317

F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b)'s particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### 2. Plaintiff's Allegations Satisfy Rule 9(b)'s Heightened Pleading Requirement.

Defendants move to dismiss Plaintiff's fraud-based claims for failure to satisfy Rule 9(b)'s heightened pleading requirements. For claims sounding in fraud, a plaintiff must "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). A claim sounds in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Rule 9(b)'s heightened pleading standard applies to UCL, FAL, and CLRA causes of actions because they "are 'grounded in fraud' or 'sound in fraud.'" *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (quoting *Kearns*, 567 F.3d at 1125). Defendants also contend that Rule 9(b) applies to Plaintiff's unjust enrichment and warranty claims.

Plaintiff has pleaded her claims with sufficient particularity to satisfy Rule 9(b). Plaintiff has alleged the "who, what, when, where, and how" of the challenged misconduct. She alleges that she routinely purchased the ChapStick® Total Hydration 100% Natural Lip Balm in the Eucalyptus Mint and Fresh Citrus scents and the Total Hydration Essential Oils Lip Balm in the Happy scent. She alleges that she made these purchases at CVS and Walgreens near San

Francisco once every two months for approximately two to three years until roughly December 2019. Plaintiff alleges which of the challenged Products she purchased. She provides images of the Products in the FAC, which show the packaging and labeling of the Products including the challenged natural statements. Although Plaintiff defines the challenged label statements in the FAC as "the Natural Representations," this does not render her allegations insufficient. She has clearly identified the specific statements that appear on each of the challenged Products including those she purchased. (*See* FAC ¶¶ 18-23.) Finally, Plaintiff alleges that she relied on the natural representations that appeared on the Products' labels and packaging in making her purchases. These allegations are sufficient to plead fraud with particularity. *See Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at *8 (N.D. Cal. Jan. 23, 2018) (finding similar allegations satisfy Rule 9(b)'s heightened pleading standard).

Defendants also argue that Plaintiff's allegations fail Rule 9(b) because she does not adequately allege why the representations at issue are misleading. The Court disagrees. Plaintiff alleges a definition of natural and alleges that she interpreted the natural representations as claims that the Products contain no non-natural, artificial, and/or synthetic ingredients. Plaintiff also provides a definition of "synthetic" and alleges how each challenged ingredient is non-natural, synthetic, or artificial. These allegations are sufficient under Rule 9(b). *See Balser v. Hain Celestial Grp., Inc.,* 640 F. App'x 694, 695–96 (9th Cir. 2016) (finding plaintiffs had pleaded claims with sufficient particularity where "[t]hey provided a definition of 'natural,' and explained that 'natural' means free of synthetic ingredients ... [and] alleged [defendant] used the phrase '100% Vegetarian' on the back of the products' packaging, which, the complaint avers, means products derived from plants.").

The Court DENIES Defendants' motion on this ground.

### 3. Plaintiff Has Plausibly Pled Consumer Deception.

Defendants argue that Plaintiff's consumer protection claims fail because she has not plausibly alleged that reasonable consumers would interpret the terms "natural" or "naturally sourced" as representations that the Products contain no non-natural, synthetic, artificial, or highly processed ingredients.

12

In order to state a claim under the FAL, CLRA, UCL, Plaintiff must allege facts satisfying the "reasonable consumer" standard, *i.e.* that members of the public are likely to be deceived. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citing *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

> "Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *accord Fink*, 714 F.3d at 741 (plaintiff must show "deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances").

Whether a business practice is deceptive is an issue of fact not generally appropriate for decision on a motion to dismiss. *See, e.g.*, *Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). However, courts have granted motions to dismiss under the UCL and similar statutes on the basis that the alleged misrepresentations were not false, misleading, or deceptive as a matter of law. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 989 (S.D. Cal. 2014); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (holding that reading flyer as a whole dispelled plaintiff's allegation that a particular statement was deceptive).

Here, Plaintiff alleges that Defendants' use of the phrases "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients" on the Products' labels leads reasonable consumers to believe that the Products contain no non-natural, synthetic, artificial, or highly processed ingredients. Moreover, Plaintiff has plausibly alleged that these representations are false because the Products actually contain a variety of non-natural, synthetic, or artificial ingredients.

Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar "natural" statements, including "100% natural," "natural," and

"naturally-sourced," to mean that a product does not contain any non-natural ingredients. *See Shank*, 2018 WL 510169, at *9 (finding that "natural" and "naturally-derived" on the label could easily be interpreted as a claim that all the ingredients in the products were natural where the plaintiff alleged that the labeling was misleading because the products contained numerous artificially-engineered and synthetic ingredients); *Gregorio v. Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at *4 (N.D. Cal. Feb. 6, 2018)("It is not unreasonable as a matter of law to expect a product labeled 'naturally derived' to contain no synthetic ingredients..."); *Fagan v. Neutrogena Corp.*, No. 5:13-cv-01316-SVW-OP; 2014 WL 9255, at *2 (C.D. Cal. Jan. 8, 2014) (finding plausible plaintiff's allegations that the phrases "100% naturally sourced sunscreens," "100% naturally sourced sunscreen ingredients," and "naturally-sourced sunscreen ingredients" constituted representations that the products contained only natural ingredients). The Court agrees and finds plausible Plaintiff's theory that reasonable consumers would interpret the natural representations to mean that the Products are free of synthetic ingredients.

      The cases Defendants cite are distinguishable because they address situations in which the scope of the natural representation was limited. For example, in *Robinson v. Unilever United States, Inc.*, the challenged products contained phrases including "Made with 100% Natural Moisturizers" and "Made with 100% Natural Exfoliants." No. CV 17-3010-DMG (AJWx), 2019 WL 8012687, at *2 (C.D. Cal. Aug. 21, 2019). The court concluded that because of the phrase "made with" no reasonable consumer would conclude that the products could be comprised of only natural ingredients. *Id.*; *see also Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1098 (N.D. Cal. 2013), *rev'd and remanded,* 703 F. App'x 468 (9th Cir. 2017) ("If Defendants' labels claimed that the products were "100% Natural," Bruton's allegations might be sufficient. However, Bruton fails to explain why a label claiming that a product is "Made with 100% Natural *Fruit*" plausibly implies that the entire product—which contains ingredients other than fruit—is free of synthetic ingredients or ingredients not normally expected to be in food."). Here, the Products contain no such qualifier limiting the scope of the natural representation.

      Defendants also argue that any consumer confusion is clarified by the Products' ingredient list. This argument fails. The Ninth Circuit has held that reasonable consumers are not "expected

14

to look beyond misleading representations on the front of the box to discover the truth from the ingredient list." *Williams*, 552 F.3d at 939; *Shank*, 2018 WL 510169, at *9 (rejecting a similar argument and citing *Williams*); *see also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015) ("[I]t is not clear to me that merely listing the names of the various product ingredients—without specifying whether those ingredients are natural or unnatural—elucidates whether the sunscreen contains natural ingredients.").

With regard to the "naturally sourced" representations, Defendants argue that use of "naturally" in labeling does not deceive a reasonable consumer where it is understood as referring only to the source of the ingredients, rather than as a claim that the products were entirely natural. Defendants rely on *Gasser v. Kiss My Face, LLC*, but that decision does not support their argument. No. 17-CV-01675-JSC, 2017 WL 4773426 (N.D. Cal. Oct. 23, 2017). In *Gasser*, the court found that a reasonable consumer would not interpret the statements "nourish naturally with our botanical blends" and "obsessively natural kinds" to mean that the product itself did not contain any synthetic ingredients. *Id.* at *5. Here, in contrast, Defendants' "naturally sourced" representations—"Naturally Sourced Ingredients" and "100% Naturally Sourced Ingredients"—refer specifically to the Products' ingredients. Accordingly, it is plausible that a reasonable consumer would understand these statements to mean that the products are free of synthetic ingredients. *See Shank*, 2018 WL 510169, at *9 (drawing no distinction between hygiene products labeled as natural and naturally derived for purposes of consumer deception); *Fagan*; 2014 WL 9255, at *2 (finding the phrases "100% naturally sourced sunscreens," "100% naturally sourced sunscreen ingredients," and "naturally-sourced sunscreen ingredients" could be interpreted to mean that that the products contained only natural ingredients).

Plaintiff's allegations raise a plausible inference that a reasonable consumer would find Defendants' natural representations on the Products misleading. Accordingly, the Court DENIES Defendants' motion on this basis.

    **4.**    **Plaintiff Has Adequately Alleged a Claim for Breach of Express Warranty.**

Finally, Defendants move to dismiss Plaintiff's breach of express warranty claim. Defendants argue that Plaintiff's claim should be dismissed for failure to provide pre-suit notice.

15

1    California Commercial Code section 2607 requires that a buyer give a seller notice of any breach
2    of express warranty, but it does not specifically require a buyer to give notice to a manufacturer.
3    *See* Cal. Com. Code § 2607; *see also Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178
4    (S.D. Cal. 2012) ("[W]hen claims are against a defendant in its capacity as a manufacturer, not as
5    a seller, plaintiff is not required to give notice.") (citing *Greenman v. Yuba Power Prods.*, 377
6    P.2d 897, 899 (Cal. 1963)).  Here, Plaintiff sues the manufacturers of the Products, not sellers.
7    Notice was not required.  Nor is the Court persuaded by Defendants' contention that notice to
8    manufacturers is excused only in products liability cases.  *See Snarr v. Cento Fine Foods Inc.*, No.
9    19-CV-02627-HSG, 2019 WL 7050149, at *8 (N.D. Cal. Dec. 23, 2019) (finding no notice
10   required in context of consumer class action arising out of false labeling claims).

11   Defendants also move to dismiss Plaintiff's express warranty claim for failure to
12   sufficiently state a claim.  "A plaintiff asserting a breach of warranty claim must allege facts
13   sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a
14   description of the goods; (2) the statement was part of the basis of the bargain; and (3) the
15   warranty was breached."  *Allen v. ConAgra Foods, Inc.,* Case No. 13-cv-01279-JST, 2013 WL
16   4737421, *11 (N.D. Cal. Sept. 3, 2013).  Defendants argue that Plaintiff pleads no specific
17   statement of fact and refers only to "natural representations" generally.  Defendants also argue that
18   Plaintiff does not allege which representations, if any, she relied on in purchasing the Products.
19   The Court previously rejected these arguments in the context of Plaintiff's claims of consumer
20   deception, discussed above.  Accordingly, the Court DENIES Defendants' motion to dismiss the
21   breach of express warranty claim for the same reasons.
22   //
23   //
24   //
25   //
26   //
27   //
28   //

## CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES Defendants' motion to dismiss. It is FURTHER ORDERED that the parties shall appear for a case management conference on October 15, 2021, at 11:00 a.m. The parties shall submit a joint case management conference statement by no later than October 8, 2021.

**IT IS SO ORDERED.**

Dated: August 6, 2021

_____
JEFFREY S. WHITE
United States District Judge