**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA M. MOORE, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, and PFIZER, INC.,<br><br>  Defendants. | Case No. 4:20-cv-09077-JSW<br>Action Filed: December 16, 2020<br>FAC Filed: January 26, 2021<br><br>*Assigned to Hon. Jeffrey S. White for all purposes*<br><br>**PLAINTIFF LISA M. MOORE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Information:<br>Date:       August 18, 2023<br>Time:       9:00 a.m.<br>Courtroom:  5 |

# REDACTED—PUBLICLY FILED

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**TABLE OF CONTENTS**

Page No.

I.    INTRODUCTION ................................................................................................ 1

II.   COMMON FACTS AND EVIDENCE SUPPORT THE CLASS CLAIMS .......................... 1

      A.    The Class Products................................................................................ 1

      B.    Defendants Uniformly and Prominently Labeled the Products with the Natural
            Representations Throughout the Class Period ............................................. 2

      C.    Defendants Agree the Natural Representations Are Material to Consumers .............. 3

      D.    The Natural Representations Lead Reasonable Consumers to Believe that the Products
            Do Not Contain Artificial Ingredients ...................................................... 5

      E.    The Natural Representations Are False and Misleading Because the Products Contain
            Artificial Ingredients .......................................................................... 7

III.  LEGAL STANDARD........................................................................................... 8

IV.   THE REQUIREMENTS OF RULE 23(a) ARE READILY MET ........................................... 9

      A.    The Class Is Adequately Defined .............................................................. 9

      B.    The Rule 23(a) Criteria Are Satisfied ....................................................... 10

            1.    Numerosity....................................................................... 10

            2.    Commonality...................................................................... 11

            3.    Typicality......................................................................... 13

            4.    Adequacy ......................................................................... 15

V.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ......................................... 17

      A.    Predominance..................................................................................... 17

            1.    The Class's Claims Will Be Resolved Through Objective Standards and
                  Common Evidence that Apply Class-wide .................................... 18

                  a)   California's Consumer Protection Laws .................................. 18

                  b)   Breach of Warranty........................................................ 20

                  c)   Unjust Enrichment ......................................................... 21

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2. The Class's Damages Model Is Capable of Measuring Class-wide Damages and Is Consistent with the Class's Theories of Liability ................................ 21

3. Superiority ................................................................................................ 23

VI. THE PROPOSED CLASS SATISFIES RULE 23(b)(2) ........................................ 24

VII. CONCLUSION ..................................................................................................... 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**TABLE OF AUTHORITIES**

Page No.

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)..........................................................................................8, 10, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455, 133 S. Ct. 455, 185 L. Ed. 2d 308 (2013).........................................9, 19

*Ang v. Bimbo Bakeries USA, Inc.,*
  No. 13-cv-01196-WHO,
  2014 WL 1024182, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)............20

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001) ...................................................................................14

*Astiana v. Kashi Co.,*
  291 F.R.D. 493 (S.D. Cal. 2013) ...................................................................... *passim*

*Bailey v. Rite Aid Corp.,*
  338 F.R.D. 390 (N.D. Cal. 2021).............................................................................21

*Bradach v. Pharmavite, LLC,*
  735 F. App'x 251 (9th Cir. 2018) ............................................................................19

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017) ...................................................................................8

*Broomfield v. Craft Brew All., Inc.,*
  No. 17-cv-01027-BLF,
  2018 WL 4952519, 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ........12

*Bruno v. Quten Rsch. Inst., LLC,*
  280 F.R.D. 524 (C.D. Cal. 2011) .............................................................................15

*Castro v. Paragon Indus., Inc.,*
  No. 1:19-cv-00755-DAD-SKO,
  2020 WL 1984240, 2020 U.S. Dist. LEXIS 73765 (E.D. Cal. Apr. 24, 2020) ...........17

*Colgan v. Leatherman Tool Grp., Inc.,*
  135 Cal. App. 4th 663 (2006) ...................................................................................21

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018) ....................................................................................24

*Ehret v. Uber Techs., Inc.,*
  148 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................................13

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)................................................8

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) ....................................................................................15

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) ..............................................17

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018)...........................................................................12, 15, 22

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK (MRWx),
   2014 WL 1410264, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ........................10, 18

*General Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................................................................13

*Gregorio v. Clorox Co.*,
   No. 17-cv-03824-PJH,
   2018 WL 732673, 2018 U.S. Dist. LEXIS 19542 (N.D. Cal. Feb. 6, 2018) ...............................3, 6

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ..............................................................................13

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................... *passim*

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................11, 14, 15, 17

*Harris v. Palm Springs Alpine Ests., Inc.*,
   329 F.2d 909 (9th Cir. 1964) ..................................................................................8, 10

*Hartless v. Clorox Co.*,
   273 F.R.D. 630, 638 (S.D. Cal. 2011) ..........................................................................16

*Hawkins v. Kroger Co.*,
   337 F.R.D. 518 (S.D. Cal. 2020) ...............................................................................18

*Hilsley v. Ocean Spray Cranberries Inc.*,
   No. 17cv2335-GPC(MDD),
   2018 WL 6300479, 2018 U.S. Dist. LEXIS 202679 (S.D. Cal Nov. 29, 2018)..................12, 15

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ...............................................................................18

*In re ConAgra Foods*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ..........................................................................20

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................................16

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ...............................................................................20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010)...............................................................................10

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .........................................................................................18

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ................................................................................15, 19

*Jordan v. L.A. County*,
   669 F.2d 1311 (9th Cir. 1982) ........................................................................................11

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...................................................................................10

*Krommenhock v. Post Foods, LLC.*,
   334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................................21

*Kutzman v. Derrel's Mini Storage, Inc.*,
   No. 1:18-cv-00755-AWI-JLT,
   2020 WL 406768, 2018 U.S. Dist. LEXIS 13314 (E.D. Cal. Jan. 24, 2020) ...............17

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ....................................................................................... 21

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ......................................................................10, 15, 20

*Lovette v. Zale Del., Inc.*,
   No. 3:18-cv-0727-L-RBB,
   2019 WL 2492503, 2019 U.S. Dist. LEXIS 100305 (S.D. Cal. June 13, 2019)............18

*Lytle v. Nutramax Lab'ys, Inc.*,
   No. ED CV 19-0835 FMO (SPx),
   2022 WL 1600047, 2022 U.S. Dist. LEXIS 95559 (C.D. Cal. May 6, 2022) ........................13, 21

*Martin v. Monsanto Co.*,
   No. ED CV 16-2168-JFW (SPx),
   2017 WL 1115167, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017).................15, 18, 20

*Martinelli v. Johnson & Johnson*,
   No. 2:15-cv-01733-MCE-DB,
   2019 WL 1429653, 2019 U.S. Dist. LEXIS 54601 (E.D. Cal. Mar. 28, 2019) ...........................22

*McMorrow v. Mondelez Int'l, Inc.*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ...................................................................21

*Milan v. Clif Bar & Co.*,
   340 F.R.D. 591 (N.D. Cal. 2021) ..............................................................................19, 21

*Miller v. Fuhu Inc.*,
   No. 2:14-cv-06119-CAS-AS,
   2015 WL 7776794, 2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1, 2015) ...........................19

*Mueller v. Puritan's Pride, Inc.*,
   No. 3:16-cv-06717-JD
   2021 WL 5494254, 2021 U.S. Dist. LEXIS 226103 (N.D. Cal. Nov. 23, 2021) ........................ 24

*Mullins v. Premier Nutrition*,
   No. 13-cv-01271-RS,
   2016 WL 1535057, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) ...........................19

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .................................................................................................11

*Park v. Cytodyne Techs., Inc.*,
   No. GIC 768364,
   2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) ...................................................18

*Prescott v. Reckitt Benckiser LLC*,
   No. 20-cv-02101-BLF,
   2022 WL 3018145, 2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022)....................12, 21

*Rodman v. Safeway, Inc.*,
   No. 11-cv-03003-JST,
   2014 WL 988992, 2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 9, 2014) ...............................19

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520 (N.D. Cal. 2018) ..........................................................................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) ..........................................................8

*Smith v. Keurig Green Mountain, Inc.*,
   No. 18-cv-06690-HSG,
   2020 WL 5630051, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) ................... 20, 24

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ....................................................................................19, 23

*Testone v. Barlean's Organic Oils, LLC*,
   No. 19-CV-169 JLS (BGS),
   2021 WL 4438391, 2021 U.S. LEXIS 185896 (S.D. Cal. Sept. 28, 2021) ...............11, 13, 15, 22

*Tran v. Sioux Honey Ass'n, Coop.*,
   No. 8:17-cv-00110-JLS-SS,
   2020 WL 905571, 2020 U.S. Dist. LEXIS (C.D. Cal. Feb. 24, 2020) ........................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .............................................................................................................17

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................................................23

*Velazquez v. GMAC Mortg. Corp.*,
   605 F. Supp. 2d 1049 (C.D. Cal. 2008) ...............................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)...............................10, 11, 13

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................................18

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011)............................................................................................9

*Young v. Neurobrands, LLC*,
   No. 18-CV-05907-JSW,
   2020 WL 11762212, 2019 U.S. Dist. LEXIS 67905 (N.D. Cal. Oct. 15, 2020) .........10, 12, 15, 25

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Zakaria v. Gerber*,
  No. LA CV15-00200 JAK
  2016 WL 6662723, 2016 U.S. Dist. LEXIS 184861 (N.D. Cal. Mar. 23, 2016)....................13, 22

*Zakaria v. Gerber*,
  755 Fed. App'x 623, 624 (9th Cir. 2018) .......................................................................................21

## Federal Statutes

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Fed. R. Civ. P. 30 .........................................................................................................16

## State Statutes

Cal. Bus. & Prof. Code §§17200, *et seq.* ........................................................................1

Cal. Bus. & Prof. Code §§ 17203 .....................................................................................21

Cal. Bus. & Prof. Code §§17500, *et seq.* ........................................................................1

Cal. Bus. & Prof. Code §§ 17535 .....................................................................................21

Cal. Civ. Code §§1750, *et seq.*........................................................................................1

Cal. Civ. Code § 1780 ......................................................................................................21

Cal. Comm. Code § 2313 .................................................................................................20

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## I.    INTRODUCTION

Defendants GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Pfizer, Inc. ("**Defendants**") label and package certain of their ChapStick® lip-care products with the following representations: "100% Natural," "Natural," "100% Naturally Sourced Ingredients," and/or "Naturally Sourced Ingredients" (the "**Natural Representations**").[1] However, following substantial discovery, it is clear that the Natural Representations are false and misleading because the products contain artificial ingredients (i.e., ingredients that *do not exist* in nature but are entirely designed and made by humans). Accordingly, the Products are not "natural." Yet, Defendants continue to sell the deceptively labeled products because they know that consumers pay a premium for natural products. Consequently, Plaintiff Lisa M. Moore ("**Plaintiff**") asserts five causes of action for: (1) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("**UCL**"); (2) Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("**FAL**"); (3) Violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("**CLRA**"); (4) Breach of Warranty; and (5) Unjust Enrichment (*see* FAC, ECF 22), and hereby moves to certify this case under Fed. R. Civ. P. 23(b)(2) and (b)(3) to stop Defendants' unlawful conduct and to return to consumers the amount they overpaid for the grossly misrepresented products.

## II.    COMMON FACTS AND EVIDENCE SUPPORT THE CLASS CLAIMS

### A.    The Class Products

The ChapStick® products at issue are as follows: (1) 100% Natural Lip Butter[2]; (2) Total Hydration 100% Natural Lip Balm[3]; (3) Total Hydration Essential Oils Lip Balm[4]; (4) Total

---

[1] *See also* Dennis Decl. ¶ 97.

[2] The ChapStick® 100% Natural Lip Butter products, labeled and packaged with the Natural Representations ("**Lip Butter**"), include the following scents or flavors: (a) Green Tea Mint, (b) Pink Grapefruit, (c) Sweet Papaya, and (d) Cucumber Pear. FAC, ECF 22, at ¶ 2, n.1; *see also id.* at Ex. 1; **Ex. 9** [Lip Butter Labels].

[3] The ChapStick® Total Hydration 100% Natural Lip Balm products, labeled and packaged with the Natural Representations ("**TH-Orig**"), include the following scents or flavors: (a) Eucalyptus Mint, (b) Fresh Citrus, (c) Honey Blossom, and (d) Soothing Vanilla. *Id.* ¶ 2, n.2; *see also id.* at Ex. 2; **Ex. 10** [TH-Orig Labels]; **Ex. 15** [Duo Labels].

[4] The ChapStick® Total Hydration Essential Oils Lip Balm products, labeled and packaged with the Natural Representations ("**TH-EO**"), include the following variations: (a) Chill (Hemp Seed), (b) Energy (Grapefruit and Lime), (c) Happy (Orange and Lemon), (d) Peace (Rosemary and Peppermint), and (e) Relax (Lavender and Chamomile). *Id.* ¶ 2, n.3; *see also id.* at Ex. 3; **Ex. 11** [TH-EO Labels].

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Hydration Moisture + Tint Lip Balm[5]; (5) Total Hydration Moisture + Tint SPF 15 Lip Balm[6]; and (6) Total Hydration Natural Lip Scrub[7] (collectively, the "**Products**").

**B.     Defendants Uniformly and Prominently Labeled the Products with the Natural Representations Throughout the Class Period**

Throughout the Class Period,[8] Defendants prominently labeled each Product with one or more of the Natural Representations. *See* Bruce Decl. ¶¶ 2i-2o, 3-9 (summarizing the Natural Representations and related imagery for each Product); **Ex. 3** [Def 2d. Am. ROG Resp.] at ROG No. 1 (identifying all labels and packaging for each Product, including some duplicate bates numbers); **Ex. 9-15** [Labels] (compiling all non-duplicative labels for each Product); **Ex. 5** [Reibrich Dep.] at 31:8-17, 33:25-34:8, 34:11-35:2, 35:6-11, 36:4-24, 37:7-24 (Lip Butter), 38:21-39:17, 42:16-43:20, 44:7-45:2, 46:4-25, 47:2-48:3, 48:13-49:13, 49:14-25 (TH-Orig), 50:20-51:3, 54:7-22, 56:9-57:1, 57:2-24, 58:1-18 (TH-EO), 58:19-59:11, 61:10-62:5, 62:6-63:1, 63:2-22, 63:23-65:2, 65:3-66:5, 66:6-9, 67:23-68:14, 68:15-69:8 (TH-Tint), 69:9-70:1, 70:25-71:3, 71:4-20, 71:21-73:3, 73:4-74:1 (TH-SPF), 74:2-75:10, 75:11-76:13 (TH-Scrub) (discussing exemplar labels for each Product, deposition exhibits 3-31, noting each front-facing Natural Representation and confirming no significant changes during the Class Period). The Natural Representations are set against and highlighted by an eye-catching background and/or font color designed to grab consumers' attention and to convince them that the Products only contain natural ingredients. *See* Bruce Decl. ¶¶ 3-9 (summarizing labels); **Ex. 3** [Def 2d. Am. ROG Resp.] at ROG No. 1 (identifying all labels); **Ex. 9-15** [Labels] (compiling all non-duplicative labels); *see also*, *e.g.*, **Ex. 5** [Reibrich Dep.] at Ex. 32, p.

---

[5] The ChapStick® Total Hydration Moisture + Tint Lip Balm products, labeled and packaged with the Natural Representations ("**TH-Tint**"), include the following shades: (a) Coral Blush, (b) Flaunt It Fuchsia, (c) Hello Bordeaux, (d) Merlot, (e) Sunset Nude, (f) Rose Petal, (g) Pink Nude, and (h) Warm Nude. *Id.* ¶ 2, n.4; *see also id.* at Ex. 4; **Ex. 12** [TH-Tint Labels].

[6] The ChapStick® Total Hydration Moisture + Tint SPF 15 Lip Balm products, labeled and packaged with the Natural Representations ("**TH-SPF**"), include the following shades: (a) Peachy Keen, (b) Pretty in Pink, and (c) Very Berry. *Id.* ¶ 2, n.5; *see also id.* Ex. 5; **Ex. 13** [TH-SPF Labels].

[7] The ChapStick® Total Hydration Lib Scrub products, labeled and packaged with the Natural Representations ("**TH-Scrub**"), include the following scents: (a) Fresh Peppermint and (b) Sugar Plum. *Id.* ¶ 2, n.5; *see also id.* Ex. 6; **Ex. 14** [TH-Scrub Labels]; **Ex. 15** [Duo Labels].

[8] The "**Class Period**" is defined as December 16, 2016, through present. *See* FAC, ECF 22, ¶ 39 (limiting the California Subclass to four years prior to the filing of this action through present); Compl., ECF 1 (filed on December 16, 2020).

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

12 (2018 Natural Packaging Consumer Survey, finding the Lip Butter "is easy to read" for 87% of respondents and "[w]ould grab [the] attention" of 75% of respondents).

In fact, Defendants *admit* that, from a marketing or advertising perspective, each of the Natural Representations means the same thing: "that the ingredients [are] 100 percent naturally sourced." **Ex. 5** [Reibrich Dep.] at 32:24-33:3 (explaining "100 Percent Naturally Sourced" is a "more precise" way of saying "Natural"), 33:8-10 (defining "Natural" to mean "that the ingredients [are] 100 percent naturally sourced"), 39:20-40:3 (when asked the difference between "100 Percent Natural" and "100 Percent Naturally Sourced," Defendants explained they are "substantiated" the same—i.e., their purported truthfulness is supported by the same supposed facts or evidence), 40:14-20 (likewise, explaining "100% Naturally Sourced Ingredients" is "more precise . . . based on what [Defendants] were seeing in the overall marketplace in terms of natural claims," but explaining they are substantiated the same), 40:21-41:1, 46:19-25 (confirming that Defendants substantiate all of the Natural Representations the same, with or without the "100%" qualifier); *see also Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 WL 732673, at *1, 2018 U.S. Dist. LEXIS 19542 (N.D. Cal. Feb. 6, 2018) ("[T]he phrase ['naturally derived'] may be tantamount to, or at least could reasonably be understood to mean 'all natural' or '100% natural.") (citations omitted).

**C.    Defendants Agree the Natural Representations Are Material to Consumers**

Defendants readily acknowledge that there is a "███████████████████████████ ██████████" in the lip balm market. **Ex. 23** [Marketing Plans 2019] at p. 16; *see also* **Ex. 27** [Email 2019 re Leverage Trend] at p. 1 (Defendants discussing internally "████████████ ██████████████████"); **Ex. 3** [Defs. 2d Am. ROG Resp.] at ROG No. 7 ("██████ ████████████████████"); *see also* **Ex. 26** [ChapStick Q&A] at p. 3 ("████████ █████████████████████████████████████████████████████████."). In fact, Defendants admitted that they "knew . . . from the research that [they] conducted," "a set of consumers" are "looking for natural products. [Thus, they] wanted to ensure that ChapStick had offerings that appealed to all types of consumers and met their needs. . . . '[N]atural' was one form of . . . product that people were looking

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

for." **Ex. 5** [Reibrich Dep.] at 55:25-56:8; *see also* Weir Decl. ¶ 14 (In a 2017 summary of a Nielsen Company Report, Defendants were advised ███████████████████████████████████████████████████████████████████████████████████████████████████████"
(GSK_MOORE_00030684)); *id.* (In another internal report, ████████████████████████████████████████████████████████████████████████████████████████████████████████████
(GSK_MOORE_00039769)).

On a "daily" basis and as "a normal course of business," the ChapStick brand marketing team analyzed consumer trends. *Id.* at 60:15-23. As a "general marketing plan and strategy," Defendants "wanted to bring to market" products "based on what [they] saw happening in the marketplace and what consumers were looking for." *Id.* at 78:12-18. They did "market research constantly" to determine trends, which included evaluating "how [their] products are performing in the market . . . . understanding consumers' perception of [their] brand . . . . understanding the trends in the marketplace . . . [and] determin[ing] . . . what's coming next." *Id.* at 79:22-80:18. As a result, Defendants pursued a natural line of ChapStick lip-care products because they saw that "'Natural' was a trend in the marketplace of competitive products . . . [for] beauty products in general. . . . And [they] knew there was a consumer who was looking for that." *Id.* at 81:19-82:5. Similarly, Defendants "kn[e]w that consumers, particularly the younger consumer, ha[ve] an interest in natural" products and Defendants "obviously" wanted to capitalize on that market to modernize ChapStick. *Id.* at 93:7-11.

Based on Defendants' marketing research, Defendants concluded that the "100% Naturals" ChapStick products ██████████████████████████████████████████████" finding "███████████████████████████████████████," and retailer ("POS") ████████████████████████. *Id.* at Ex. 34, p. 2-3 (noting "████████████████████████████████████████████████████████████████████████") (emphasis added). *See also* ████████████ Weir Decl. ¶¶ 11-20 (detailing Defendants' own marketing research that demonstrated the price premia commanded by the Products).  Indeed, Defendants found that ████████████████████ ███████████████████████████████████████████████████ Ex. 32, pp. 2, 5 (emphasis added). Specifically ██████ ██████████████████████████████████████████████████. *Id.* In addition, ███████████████

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

. *Id.* at Ex. 32, pp. 2, 5. In another consumer survey regarding lip products conducted in 2015, Defendants found "'                                " *Id.* at Ex. 35, p.32. And, in yet another survey conducted in 2019, Defendants found                                ." **Ex. 24** [Market Research 2019] at p. 52. Indeed, Defendants projected                                " in lip care products. *Id.* at p. 11; **Ex. 25** [Marketing Team Minutes 2017] at p. 1 (Defendants noting "                                ").

In addition, Defendants surveyed consumers in 2018 regarding their "likes" and "dislikes" concerning the ChapStick Total Hydration and 100% Natural Products. **Ex. 28** [Marketing Research 2018—Raw Data]. Not surprisingly, consumers overwhelmingly                                " Specifically, consumers reported that they liked                                " *Id.* at pp. 5-13.

**D.     The Natural Representations Lead Reasonable Consumers to Believe that the Products Do Not Contain Artificial Ingredients**

Common evidence proves that the Natural Representations lead reasonable consumers to believe that the Products do not contain any artificial ingredients.[9] *See* Order Denying MTD, ECF 42, at 13-14 ("Plaintiff has plausibly alleged that these representations are false because the Products actually contain a variety of non-natural, synthetic, or artificial ingredients. Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' statements, including '100% natural,' 'natural,' and 'naturally-sourced,' to mean that a product does

---

[9] "Artificial" refers to a substance that does not exist in nature. In other words, it is a substance that is both designed by humans and made by humans (e.g., in a laboratory or factory). Toutov Decl. ¶ 12.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

not contain any non-natural ingredients."); *see also*, *e.g.*, *Gregorio*, 2018 WL 732673, at *1 ("It is far from unreasonable to expect [a] product to contain only 'naturally derived' ingredients [i.e., 'no synthetic ingredients'].) (citations omitted).

Even Defendants agree that "natural" and "naturally sourced," as represented on the Products, mean non-artificial. *See* **Ex. 6** [Eppler Dep.] at 52:15-17. Indeed, a key component of Defendants' advertising strategy relating to their natural ChapStick products was to "████████████████████

█████████." **Ex. 5** [Reibrich Dep.] at Ex. 37, p. 52 (ChapStick® Brand Strategy and Style Guidelines 2017). Other considerations included the "████████████████████████████████

████████████████████████████████." *Id*. In addition, Defendants employed "█████████" that emphasized "████████

████." *Id.* at Ex. 37, p. 31.

In fact, Defendants' own consumer perception research confirms ████████████████

████████" **Ex. 5** [Reibrich Dep.] at 99:8-10, Ex. 35 at p. 32 (Marketing Research Project Jolie, 2015) (emphasis added); *see also* **Ex. 29** [Defs. Nat'l Memo] at p. 2 (purportedly substantiating the Natural Representations by verifying ██████████████████████████████████████

██████████████████ (emphasis added).

To be sure, Defendants' marketing research confirms that they have successfully marketed the Products to consumers as containing only natural or naturally sourced ingredients. For example, a 2018 consumer survey demonstrates that ████████████████████████████████

████████████████████████████████████████" **Ex. 5** [Reibrich Dep.] at 84:16-22, Ex. 32, p. 10 (Marketing Research Naturals Packaging, 2018). Indeed, Defendants admit that they believe consumers interpret the Products' Natural Representations, as Defendants define it, to be "that the ingredients were 100 percent naturally sourced, which mean[s] that . . . *all* the ingredients that went into the product were natural." **Ex. 5** [Reibrich Dep.] at 85:5-24 (further noting that the 2018 consumer survey ████████████████) (emphasis added).

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

In addition to Defendants' own marketing research—**which entirely supports Plaintiff's case**—Plaintiff's market research and survey expert, J. Michael Dennis, Ph.D. has designed and will conduct a consumer perception study to determine whether the Natural Representations are misleading to consumers. Dennis Decl. ¶ 21. Specifically, the proposed consumer survey will measure the extent to which the Natural Representations convey to consumers that the Product "only contains ingredients that exist in nature (that is, contains no artificial ingredients)." *Id*. at ¶ 42.

Dr. Dennis's survey was rigorously designed and conforms to best practices. To ensure the survey data is reliable, Dr. Dennis built in various safeguards, including but not limited to: (1) non-leading questions; (2) impartial and balanced response options; (3) randomizations to control for potential order effects; (4) unrelated consumer perception questions designed to disguise research objectives; (5) control questions to filter out "noise" in the measurement of consumer perceptions; (6) cognitive interviews; and (7) pretesting. *Id*. at ¶¶ 23, 27-59.

With the assistance of a reputable online market research company, Dr. Dennis will collect approximately 300 interview completions for each of the six product lines (1800 total). *Id*. at ¶¶ 57, 87. Dr. Dennis's report will clearly document his findings and conclusions. *Id*. at ¶ 58. It will also clearly and transparently document the methodology used for the survey, including any changes made to the survey questionnaire based on the cognitive interviews and pretesting. *Id*. Moreover, Dr. Dennis will document any statistical adjustments made to the results, which account for any "noise" from respondents who fail the control filter used in the survey. *Id*. The report will also document the results of sensitivity tests used to evaluate any impact on the results attributable to respondent-driven factors such as age, gender, level educational obtainment, geographical location, time spent answering the survey questions, and past purchase history of Chapstick-branded lip care products. *Id*.

### E. The Natural Representations Are False and Misleading Because the Products Contain Artificial Ingredients

Common evidence can and will be used to prove that the Products contain artificial ingredients (i.e., ingredients that do not exist in nature). Plaintiff's chemistry expert, Dr. Anton A. Toutov, Ph.D., analyzed the Products to determine whether they contain artificial ingredients. Toutov Decl.

¶ 12. Dr. Toutov reviewed materials obtained from the vendors that supplied the ingredients Defendants used in the Products, including information concerning how the ingredients were manufactured. *Id.* ¶ 13. In addition, Dr. Toutov reviewed the deposition testimony of Angela Eppler, Defendants' corporate designee concerning the formulation of the Products, as well as the sourcing, manufacturing, and processing of the ingredients used in the Products. *Id.* Dr. Toutov also reviewed materials obtained from Defendants in discovery, including internal communications, manufacturing information, substantiation documentation, and formulation and labeling documents, as well as peer-reviewed, scholarly publications and patent documents relating to the ingredients used in the Products. *Id.* Based on his review of these materials, Dr. Toutov concluded that each Product contains one or more of the following artificial ingredients: (1) caprolyl glycerin/sebacic acid copolymer; (2) caprylic/capric triglycerides; (3) hydrogenated soybean oil; (4) polyhydroxystearic acid; (5) octyldodecanol; (6) carmine; (7) jojoba esters; and (8) tocopherol acetate. *Id.* ¶¶ 16-57. Accordingly, because the Products contain artificial ingredients, the Natural Representations are false and misleading.

## III.   LEGAL STANDARD

Consumer protection claims are ideal for class certification and any doubt as to the propriety of certification should be resolved in favor of certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997); *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). Under Fed. R. Civ. P. 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). These are the only criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-26 (9th Cir. 2017). Indeed, "[i]n determining the propriety of a class action the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citations omitted). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).

## IV.   THE REQUIREMENTS OF RULE 23(A) ARE READILY MET

### A.   The Class Is Adequately Defined

There is no express ascertainability requirement under Ninth Circuit law. *Briseno*, 844 F.3d at 1124, n.4. Nevertheless, a class must be adequately defined. *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ("The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.") (citation omitted). A class is adequately defined where objective criteria can be applied to determine eligibility as a class member. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *5, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014). Here, the Class is well-defined as follows:

> All persons or entities who, during the Class Period, purchased one or more of the Products in California for purposes other than resale.

FAC, ECF 22, ¶ 39.

The Class is objectively and sufficiently definite. It "identifies purchasers of Defendant's products that included the material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Forcellati*, 2014 WL 1410264, at *5 ("Here, Plaintiffs have precisely defined their class based on an objective criterion: purchase of Defendants' . . . products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement."). Furthermore, "[t]here is no requirement that 'the identity of the class members . . . be known at the time of certification.'" *Astiana*, 291 F.R.D. at 500 (citations omitted). "As long as the class

definition is sufficiently definite to identify putative class members, '[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification.'" *Id.*[10]

### B.   The Rule 23(a) Criteria Are Satisfied

####    1.   Numerosity

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913-14. "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris*, 329 F.2d at 913-14. While there is no set numerical cutoff to determine whether a class is numerous, courts have consistently held that joinder is impracticable where the class is composed of more than 40 persons. *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough."). Here, numerosity is satisfied because there were more than ███████████ of the Products sold during the Class Period. **Ex. 22** [Defs. Sales Data] (reflecting some retail sales data during the Class Period through April 17, 2022, including more than █████ units of Lip Butter, ██████ units of TH-Orig, ██████ units of TH-EO, ██████ units of TH-Tint, █████ units of TH-SPF, and █████ units of TH-Scrub, but excluding e-commerce, convenience stores, and direct to consumer sales); **Ex. 3** [Defs. 2d Am. ROG Resp.] at ROG No. 4 (identifying said spreadsheet as reflecting Defendants' sales); **Ex. 5** [Reibrich Dep.] at 137:7-18, 137:25-138:15. From this, it is reasonable to infer that there are more than one million aggrieved members of the Class. Thus, the Class is sufficiently numerous.

/ / /

/ / /

---

[10] *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010) ("The fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed."); *Forcellati*, 2014 WL 1410264, at *5 (finding purchase records or identification of class members by the defendant to be unnecessary for certification because "facilitating small claims is '[t]he policy at the very core of the class action mechanism'" (citing *Amchem*, 521 U.S. at 617).

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### 2. *Commonality*

The commonality requirement requires the existence of "questions of law or fact common to the class," and is construed liberally and permissively. Fed. R. Civ. P. 23(a)(2); *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1320 (9th Cir. 1982); *see also Young v. Neurobrands, LLC*, No. 18-CV-05907-JSW, 2020 WL 11762212, at *3, 2019 U.S. Dist LEXIS 67905 (N.D. Cal. Oct. 15, 2020) (White, J.) ("The Ninth Circuit has construed Rule 23(a)'s commonality factor permissively."). The class's "claims must depend upon a common contention . . . [and] . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Ninth Circuit explained: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc.*, 564 U.S. at 338. "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart*, 564 U.S. at 350.

In false advertising cases, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Astiana*, 291 F.R.D. at 502 (citation omitted). In fact, "it is an error of law for a court to inquire into the motives of each individual class member at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391, at *4, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021). And "[i]n determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is ***capable*** of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) (emphasis added).[11]

---

[11] *See also id.* ("[A] district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue.").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Importantly, "[i]n misbranding and false advertising cases, courts routinely find that commonality has been satisfied based on the question of whether the label would be deceptive to a reasonable consumer." *Young*, 2020 WL 11762212, at *4; *see Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at *5, 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ("Numerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer."); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 WL 3018145, at *4, 2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022) (same); *Hilsley v. Ocean Spray Cranberries Inc.*, No. 17cv2335-GPC(MDD), 2018 WL 6300479, at *4, 2018 U.S. Dist LEXIS 202679 (S.D. Cal Nov. 29, 2018) (citing cases).

Here, Plaintiff identified numerous common questions in the First Amended Complaint. *See* FAC, ECF 22, ¶ 43 (listing common questions). These questions satisfy commonality. To be sure, an answer to these questions—for example, whether the Natural Representations are false, misleading, or deceptive—will resolve "in one stroke" an issue that is central to the validity of each Class Member's claim: whether the Products were falsely and unlawfully labeled under California's consumer protection laws.[12]

Notably, the common questions will be resolved by application of the same facts because Plaintiff and Class Members all purchased Products bearing the same misrepresentations. *Astiana*, 291 F.R.D. at 501 ("Here, Plaintiffs have identified several legal and factual issues common to the putative class's claims, including whether the use of the term 'Nothing Artificial' to advertise food products that contain the allegedly synthetic ingredients violates the UCL, FAL, CLRA, or

---

[12] *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607–08 (N.D. Cal. 2018) (citing cases and reasoning "Plaintiffs argue that the common question is: 'was Defendant's 'Made From Real Ginger' label likely to deceive reasonable consumers?' In other consumer fraud cases in this district, courts have found similar common questions to be sufficient to satisfy commonality.") (citations omitted).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant's own warranties. By definition, all class members were exposed to such representations and purchased Kashi products, creating a 'common core of salient facts.'").[13]

Further, "courts have repeatedly recognized that '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'" *Hadley*, 324 F. Supp. 3d at 1099 (citing *Zakaria v. Gerber*, No. LA CV15-00200 JAK (Ex), 2016 WL 6662723, at *8, 2016 U.S. Dist. LEXIS 184861 (N.D. Cal. Mar. 23, 2016)) (finding certification appropriate even where the defendant asserted certain class members would not have seen the challenged statement); *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 895 (N.D. Cal. 2015) ("[In numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold."). For all of these reasons, commonality has been satisfied.

### 3.    *Typicality*

Typicality and commonality are often considered together because they "tend to merge" and "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, n.13 (1982).

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). "[T]he claims of the class representatives

---

[13] *See also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (finding commonality where all class members were exposed to the challenged labeling); *Lytle v. Nutramax Lab'ys, Inc.*, No. ED CV 19-0835 FMO (SPx), 2022 WL 1600047, at *14, 2022 U.S. Dist. LEXIS 95559 (C.D. Cal. May 6, 2022) (same); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 WL 905571, at *4, 2020 U.S. Dist. LEXIS (C.D. Cal. Feb. 24, 2020) ("By definition, all class members were exposed to such representations and purchased [Sioux] products, creating a 'common core of salient facts . . . 'variation among class members in their motivation for purchasing the product [and] the factual circumstances behind their purchase . . . does not defeat the relatively 'minimal' showing required to establish commonality.'") (citations omitted); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012), *on reconsideration*, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ("Because [the product] was packaged and sold uniformly across the nation, resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each class member's claims. . . . Defendants' argument that commonality is not satisfied because class members may have purchased [the product] for a variety of reasons is unpersuasive.") (citation omitted); *Testone*, 2021 WL 4438391, at *8 ("Plaintiffs assert that there are common questions here, such as what the at-issue label statements would mean to a reasonable consumer and whether they would be deceptive to a reasonable consumer. In prior mislabeling cases such as this, courts have found the commonality requirement satisfied 'because [the litigation] raises the common question of whether the packaging would mislead a reasonable consumer.'") (citations omitted).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

[are] typical of those of the class, and [typicality is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds* (citation omitted). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive' with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020, overruled on other grounds by *Wal-Mart*, 564 U.S. at 338. For example, typicality is established where the class was injured through an alleged common practice. *Id*. The plaintiff need only show that the defendant made a misrepresentation or engaged in an unfair practice that was typical across the class, and that the plaintiff and class members were injured. *Astiana*, 291 F.R.D. at 502 ("Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff") (citations and quotations omitted).

Here, typicality, like commonality, is satisfied because Plaintiff and the Class all purchased Products bearing the same material and deceptive Natural Representations. Bruce Decl. ¶¶ 3-9 (summarizing Natural Representations on Products' labels); **Ex. 9-15** (compiling all non-duplicative labels). Indeed, Plaintiff has testified under oath that she not only bought several of the Products, but she did so because she read and relied on the Natural Representations contained on the front label, believing them to mean that the Products did not contain any artificial ingredients. **Ex. 7** [Moore ROG Resp.] at ROG No. 1 (identifying purchases of TH-Orig and TH-EO, approximately every-other-month for several years); Moore Decl. ¶ 5; **Ex. 8** [Moore Dep.] at 83:13-16, 170:7-22 (purchases), 77:14-17, 84:25-85:6, 86:7-25, 87:13-19, 88:2-5, 90:23-91:5, 92:7-15, 93:25-94:23, 105:10-14, 105:24-106:3, 109:1-110:2, 112:22-24, 194:10-195:2, 197:9-20 (reliance on labels), 195:11-196:20, 197:9-198:7 (Natural Representations all mean Products are "natural"), 179:13-17, 193:22-194:6, 204:12-205:24 (understanding of "natural"), Ex. 5 at 2, 4 (TH-Orig Labels), Ex. 6 at 5 (TH-EO Labels).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   The Natural Representations were important to Plaintiff in deciding to buy the Products.

2   Moore Decl. ¶ 5; **Ex. 8** [Moore Dep.] at 74:17-21, 75:22-76:15, 86:7-25, 92:7-15, 93:25-94:23,

3   105:10-14, 173:3-175:4. Further, had Plaintiff known the truth, she would not have purchased the

4   Products. **Ex. 8** [Moore Dep.] at 101:11-102:5, 173:3-175:4; Moore Decl. ¶ 5. No more is required.

5   *Young*, 2020 WL 11762212, at *5 ("Although Plaintiffs may not have purchased all the challenged

6   Products, they allege the same harm as absent class members based on Defendants' labeling of the

7   Products as having "natural flavors" and "no artificial colors or flavors" when the Products in fact

8   contained the allegedly artificial flavor, malic acid. This is sufficient for typicality."); *see also Johns*

9   *v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Plaintiffs and class members thus were all

10  exposed to the same alleged misrepresentations on the packages and advertisements. The Court

11  therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements.").[14]

12  Accordingly, typicality is satisfied.

13          *4.      Adequacy*

14          Adequacy requires that "the representative parties will fairly and adequately protect the

15  interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for

16  determining legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts

17  of interest with other class members; and (2) whether the named plaintiffs and their counsel will

18  prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Ellis v. Costco*

19  *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In answering the second question of adequacy,

20

21  [14] *See also Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167, at *4,
    2017 U.S. Dist. LEXIS 135351ha (C.D. Cal. Mar. 24, 2017) ("The Court concludes that Plaintiff's
22  claims are sufficiently typical of the class claims. In this case, Plaintiff alleges that she and all class
    members were exposed to the same statement, i.e., "Makes Up to ___ Gallons", and that they were
23  all injured in the same manner, i.e., the Roundup Concentrates provided less spray solution than
    promised when diluted in accordance with the instructions on the back label."); *Lilly*, 308 F.R.D. at
24  240 ("Plaintiffs . . . clearly have a similar alleged injury as the rest of the proposed class, since they
    purchased products that are the same as, or very similar to, the products challenged by the rest of
25  the proposed class."); *Bruno v. Quten Rsch. Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011)
    (finding typicality based on the purchase of a misrepresented product and that "a plaintiffs'
26  individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL,
    and CLRA is established by an objective test."); *Testone*, 2021 WL 4438391, at *9 (same); *Hilsley*,
27  2018 WL 6300479, at *6 ("Here, Plaintiff has demonstrated that her claims are typical as the
    Complaint alleges that she and all class members purchased the Products, were deceived by the false
28  and deceptive labeling and lost money as a result.") (citations omitted); *Fitzhenry-Russell*, 326
    F.R.D. at 609 (same).

PLAINTIFF'S MPA ISO MOTION FOR CLASS CERTIFICATION

"[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Both of these criteria favor certification in this case.

First, Plaintiff's "interests in proving [Defendants'] alleged misrepresentation[s] align with those of other class members." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Each potential class member has the same issue: an allegedly false representation on CATBC packaging and damages in the form of the purchase price or consequent property damage."); *Astiana*, 291 F.R.D. at 503 ("Plaintiff Larsen and the class were exposed to the same alleged misrepresentation on [the] product labels, and she testified that she would have either paid less or purchased other products had she not been deceived. Plaintiff Larsen's interests are therefore coextensive with the proposed class."). Here, Plaintiff's interests clearly align with the Class. She bought several of the Products in reliance on the Naturals Representations to her detriment. **Ex. 7** [Moore ROG Resp.] at ROG No. 1 (identifying purchases of TH-Orig and TH-EO, approximately every-other-month for several years); Moore Decl. ¶¶ 2, 3 5; **Ex. 8** [Moore Dep.] at 83:13-16, 170:7-22 (purchases), 77:14-17, 84:25-85:6, 86:7-25, 87:13-19, 88:2-5, 90:23-91:5, 92:7-15, 93:25-94:23, 105:10-14, 105:24-106:3, 109:1-110:2, 112:22-24, 194:10-195:2, 197:9-20 (reliance on labels). Further, Plaintiff has no interest that conflicts with the Class's interest in honest and transparent Product labels. Bruce Decl. ¶ 13; Moore Decl. ¶ 4; **Ex. 8** [Moore Dep.] at 81:5-11, 82:12-83:8, 137:6-138:12.

Second, Plaintiff and her counsel have advocated vigorously on behalf of the Class and will continue to do so. Bruce Decl. ¶ 12-13; Moore Decl. ¶¶ 3, 7. Plaintiff has stepped forward to challenge Defendants' conduct and has participated in this litigation. Bruce Decl. ¶ 13; Moore Decl. ¶¶ 3, 7. She has expended considerable time supervising this litigation and participating in its investigation, exposed herself to the risks of litigation, and has done so without any guarantee of compensation. Bruce Decl. ¶ 13; Moore Decl. ¶ 3. In addition, Plaintiff has retained counsel who are experienced in prosecuting consumer class actions, including class actions based on mislabeled products. The resumes of Plaintiff's counsel set forth a representative sampling of appointments and complex prosecutions over many years. Bruce Decl. ¶ 2a-b; **Ex. 1** [Clarkson Resume]; **Ex. 2** [Moon

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Resume]. They have vigorously protected the interests of the Class, and litigated this action efficiently and effectively, including prevailing on a motion to dismiss the operative complaint. Bruce Decl. ¶ 12. They have also efficiently and effectively gathered the class-wide proof necessary to certify this action as a class through written discovery, including reviewing Defendants' discovery responses and analyzing voluminous documentation produced by Defendants, deposing Defendants' Fed. R. Civ. P. 30(b)(6) corporate designees, subpoenaing records from Defendants' third-party suppliers, and retaining and consulting with esteemed experts, among other things. *Id.*

## V.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

### A.   Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) (quoting *Amchem*, 521 U.S. at 623). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). Evaluating predominance "begins . . . with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "[C]ourts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, No. 1:18-cv-00755-AWI-JLT, 2020 WL 406768, at *7, 2018 U.S. Dist. LEXIS 13314 (E.D. Cal. Jan. 24, 2020) (citation omitted). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *10, 2020 U.S. Dist. LEXIS 73765 (E.D. Cal. Apr. 24, 2020) (citing cases) (citations omitted). Thus, "[i]n cases alleging misrepresentation, common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 539-40 (N.D. Cal. 2018) (citations and quotations omitted).

/ / /

/ / /

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

       1.     **The Class's Claims Will Be Resolved Through Objective Standards and Common Evidence that Apply Class-wide**

2

       a)  <u>California's Consumer Protection Laws</u>

3

    "[T]he false advertising standard under the UCL, FAL and CLRA is the same." *Lovette v.*

4

*Zale Del., Inc.*, No. 3:18-cv-0727-L-RBB, 2019 WL 2492503, at *2, 2019 U.S. Dist. LEXIS 100305

5

(S.D. Cal. June 13, 2019); *see also Forcellati*, 2014 WL 1410264, at *9 ("For purposes of class

6

certification, the UCL, FAL, and CLRA are materially indistinguishable."). "[T]hese laws prohibit

7

'not only advertising which is false, but also advertising which[,] although true, is either actually

8

misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'"

9

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). "This is judged

10

by the effect it would have on the reasonable consumer." *Martin*, 2017 WL 1115167, at *6; *see also*

11

*Hawkins v. Kroger Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("California consumer protection

12

laws take an objective approach of the reasonable consumer, not the particular consumer.") (citation

13

omitted).

14

    Therefore, under both the UCL and FAL, relief is available without individualized proof of

15

deception, reliance, and injury. *See In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009). "Although

16

Plaintiff must prove actual reliance as an element of the CLRA claim, reliance may be presumed as

17

to the entire Class if [Defendant's] misrepresentations were material." *Martin*, 2017 WL 1115167,

18

at *6; *see also In re Tobacco II*, 46 Cal. 4th at 327. ("[A] presumption, or at least an inference, of

19

reliance arises wherever there is a showing that a misrepresentation was material."). As noted above,

20

Plaintiff read and relied on the Natural Representations, believing that the Products did not contain

21

any artificial ingredients. *See*, *supra*, § IV., B., 3. Moreover, the Natural Representations were

22

important to Plaintiff in deciding to buy the Products, and had she known the truth, she would not

23

have purchased the Products. *Id.*

24

    "Materiality is part of the 'reasonable consumer' standard applied under the California unfair

25

competition and false advertising statutes." *Park v. Cytodyne Techs., Inc.*, 2003 WL 21283814, at

26

*2 (Cal. Super. Ct. May 30, 2003). "A representation is material . . . if a reasonable consumer would

27

attach importance to it *or* if the maker of the representation knows or has reason to know that its

28

recipient regards or is likely to regard the matter as important in determining his choice of action."

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citation and quotations omitted); *see also Mullins v. Premier Nutrition*, No. 13-cv-01271-RS, 2016 WL 1535057, at *5, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016) ("[M]ateriality may be established by common proof '[b]ecause materiality is judged according to an objective standard,' and so '[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all [consumers] composing the class.'") (quoting *Amgen*, 568 U.S. at 459). Therefore, "[t]his objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citation omitted).[15]

While Plaintiff does not need to prove materiality at certification,[16] it is clear the Natural Representations are material—a fact that Defendants not only agree with but one that Defendants counted on in marketing the Products.  *See*, *supra*, § II., C. (summarizing Defendants' admissions based on their studious pursuit of market trends); *see also* Weir Decl. ¶¶ 11, 12 (explaining how product attributes, such as the Natural Representations, allow consumers to differentiate between otherwise similar products, with the goal of increasing sales and profits).

Because each member of the Class was exposed to the Natural Representations (*see*, *supra*, § II., B.), "the predominating common issues include whether [Defendants] misrepresented" that the Products are natural, "and whether the misrepresentations were likely to deceive a reasonable consumer." *Johns*, 280 F.R.D. at 557. The answer to these objective questions will apply to the entire Class equally, such that their claims will rise or fall together. *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *9, 2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 9, 2014) ("The scope and proper interpretation of the objective words of the parties' agreement is a common

---

[15] *See also Bradach v. Pharmavite, LLC*, 735 F. App'x. 251, 254-55 (9th Cir. 2018) ("CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.") (citation and quotations omitted); *Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794, at *16, 2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1, 2015) ("Since materiality, like the reasonable consumer test, concerns objective features of allegedly fraudulent representations and omissions, not subjective questions of how those representations and omissions were perceived by each individual consumer, materiality presents common questions of fact suitable for class litigation.").

[16] *See Hadley*, 324 F. Supp. 3d at 1115; *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 599 (N.D. Cal. 2021) ("Questions of materiality and reliance also do not defeat predominance.").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

question that applies commonly to all members of the class, is an issue whose resolution will drive resolution of the litigation, and will predominate over any individualized issues."). And whether the Natural Representations are likely to mislead a reasonable consumer can be proven with common evidence, as described in detail above. *See*, *supra*, § II., D-E. (summarizing common evidence of Defendants' strategy to foster and exploit consumers' understanding of the Natural Representations as containing no artificial ingredients, and how—based even on Defendants' own definition of these terms—the Products fail to conform).

In addition, the UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Plaintiff alleged predicate violations, including whether the Products violate the CLRA and FAL (prohibiting deceptive and material marketing claims). *See* FAC, ¶¶ 89-99. Whether Defendants are liable for these predicate violations is a predominating common question, and a determination of Defendants' liability will apply equally to the Class. That is because "t]he label is either illegal or it is not." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *8, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014); *see also Lilly*, 308 F.R.D. at 242 (proving the unlawful prong of the UCL does "not depend upon any issues specific to individual consumers."). Therefore, predominance has been satisfied.

b) Breach of Warranty

Plaintiff seeks certification of her warranty claims, which require showing that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation omitted); *see also* Cal. Comm. Code § 2313(1)(a)-(b). Because each Class Member was exposed to the misleading message that the Products are natural, "[w]hether such [] statement[s] constitute[] an express warranty, [and] whether that warranty was breached. . . are issues subject to common and generalized proof." *Martin*, 2017 WL 1115167, at *7. And "[b]ecause reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate." *In re*

*Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (citations omitted); *see also Hadley*, 324 F. Supp. 3d at 1117-18.

### c) Unjust Enrichment

Like the warranty claims, Plaintiff's unjust enrichment claim satisfies predominance. That is because unjust enrichment (or quasi contract) claims "require common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana*, 291 F.R.D. at 505 (citing cases); *see also Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG, 2020 WL 5630051, at *5, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) ("[T]he Court finds the inquiry presented here—whether Keurig was unjustly enriched by the proposed class members' purchase of the Products given its allegedly false representations regarding recyclability—raises the same legal issues as to all class members. Accordingly, predominance is also met for the unjust enrichment claim."). Thus, the Court should find predominance satisfied.

### 2. *The Class's Damages Model Is Capable of Measuring Class-wide Damages and Is Consistent with the Class's Theories of Liability*

The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 694 (2006); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (citation omitted) (reversed on other grounds).

"It is well-established that the price premium attributable to an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case." *Hadley*, 324 F. Supp. 3d at 1104 (quotations and citations omitted); *accord Prescott*, 2022 WL 3018145, at *10. Conjoint analysis is widely accepted as a reliable economic tool for isolating price premia. *Hadley*, 324 F. Supp. 3d at 1107 (citing cases).[17] The Ninth Circuit confirmed that "plaintiffs can measure

---

[17] *See also Lytle*, 2022 WL 1600047, at *17 ("Conjoint surveys, like the one proposed by plaintiffs' expert, are a well-established method for measuring class-wide damages in CLRA mislabeling cases.") (citing cases); *Milan*, 340 F.R.D. at 601; *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately," so long as those methods "reflect supply-side considerations and marketplace realities that would affect product pricing." *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 624 (9th Cir. 2018). In mislabeling cases, like this, courts have:

> found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*See Hadley*, 324 F. Supp. 3d at 1105; *see also Fitzhenry-Russell*, 326 F.R.D. at 606 (proposed conjoint analysis "calculated the price premium consumers paid for the [challenged] claim," because the conjoint survey (1) "used actual market-clearing prices"; and "(2) took into account the fixed quantity of supply of [the product]").

Here, Plaintiff's survey expert, Dr. Dennis, has designed and will conduct a conjoint analysis to isolate and quantify the market price premium associated with the Natural Representations, which then can be used to calculate the amount of restitution and damages owed to the Class. *See* Dennis Decl. ¶¶ 59-66, 71-78, 80-82, 86-92 (explaining nature of conjoint surveys, summarizing the steps he will follow to implement the conjoint survey and analysis, and obtaining an appropriate sample of respondents). Dr. Dennis also identifies the product attributes that will be included in the survey (brand, label claims, and price), and the reasons for selecting these attributes. *Id.* ¶¶ 65-68, 81, 82, 85, 92. In addition to following accepted conjoint survey design principles (*id.* ¶¶ 59, 61-63), Dr. Dennis will account for supply-side factors both in the survey and in his market simulation (*id.* ¶¶ 69, 74, 86, 95).

Because Dr. Dennis's survey incorporates real market prices and uses the same quantity of products in his market simulation as were sold in the real world (i.e., holding quantity fixed), his survey properly accounts for supply-side factors. *See Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-DB, 2019 WL 1429653, at *4, 2019 U.S. Dist. LEXIS 54601 (E.D. Cal. Mar. 28,

859137, at *14 (S.D. Cal. Mar. 8, 2021); *Testone*, 2021 WL 4438391, at *16; *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 411 (N.D. Cal. 2021); *Krommenhock v. Post Foods, LLC.*, 334 F.R.D. 552, 576 (N.D. Cal. 2020).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2019) (declining to strike testimony of Dr. Dennis and Colin B. Weir where "the conjoint analysis . . . factored supply-side data into its design"). Once the conjoint analysis reveals the price premia attributable to the Natural Representations, those premia "can then be multiplied by the number of units purchased by each class member to determine both total and individual damages." *Zakaria*, 2016 WL 6662723, at *16; *see also* Weir Decl. ¶¶ 22, 23, 42, 43. Accordingly, Plaintiff has provided a model consistent with her theory of liability and that is capable of measuring class-wide damages.

### 3.    Superiority

Whether "a class action is superior . . . for fairly and efficiently adjudicating the controversy" depends on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, because the products at issue are relatively inexpensive, members of the Class have no interest in controlling individual actions, which is often sufficient to satisfy superiority. *See Tait*, 289 F.R.D. at 486 (Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quotation omitted). In addition, Plaintiff is only aware of one other case involving the Products that is pending against Defendants. However, that case was filed in June 2022 and involves a putative New York-only class. *See Jolly, et al. v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, et al.*, Case No. 7:22-cv-05555 (S.D.N.Y., filed June 29, 2022). Further, Defendants purposely availed themselves of the benefits of conducting business in this district, making it a preferable location. *See* **Ex. 22** [Defs. Sales Data]. Finally, this case focuses on Defendants' labeling practices, minimizing manageability concerns, which, in any event, cannot scuttle class certification "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Thus, superiority is satisfied.

# VI.    THE PROPOSED CLASS SATISFIES RULE 23(B)(2)

Under Fed. R. Civ. P. 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." This standard is easily satisfied.

First, Plaintiff has standing to pursue injunctive relief. *See* Order Deny MTD, ECF 42, at 5 ("The Court finds Plaintiff's allegations of future harm sufficient to establish standing for injunctive relief . . . ."); *see* FAC, ECF 22, at ¶¶ 7, 48. As Plaintiff explained in her deposition, she wants to buy natural lip-care products. **Ex. 8** [Moore Dep.] at 74:17-21; 75:22-76:15. And Plaintiff testified that she relied on the labels of the natural lip-care Products in deciding to buy them. *Id.* at 86:7-25; 92:7-15; 93:25-94:23; 105:10-14. When asked if she would purchase the Products again in the future, she answered, "I would like to buy them again[.]" *Id.* at 114:14-22. However, Plaintiff does not know whether they are, in fact, natural, and she does not have the expertise to discern from their ingredient disclosures whether the Natural Representations are true. *Id.* at 112:12-24; 113:11-114:10; *see also* Moore Decl. ¶¶ 5, 6. Thus, even though Plaintiff would like to purchase ChapStick "natural" lip-care Products, she is unable to rely on the Products' representations. **Ex. 8** [Moore Dep.] at 112:12-24; 173:3-175:4.; *see also* Moore Decl. ¶ 7; *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) ("Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly–Clark's wipes despite her desire to purchase truly flushable wipes. . . . As necessary where standing for prospective injunctive relief is premised entirely on the threat of repeated injury, Davidson has also shown 'a sufficient likelihood that [s]he will again be wronged in a similar way.'") (footnote and citation omitted).

Second, Plaintiff and Class members complain of standard and uniform practices in the form of unfair, unlawful, and deceptive conduct by Defendants that is generally applicable to the Class as a whole. *See* Fed. R. Civ. Proc. 23(b)(2) (certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."); *see Mueller v.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Puritan's Pride, Inc.*, No. 3:16-cv-06717-JD, 2021 WL 5494254, at *8, 2021 U.S. Dist. LEXIS 226103 (N.D. Cal. Nov. 23, 2021).

Third, Plaintiff seeks injunctive relief prohibiting Defendants from continuing to engage in deceptive, misleading, unlawful, unfair practices, by removing or modify the Natural Representations from the Products. Such equitable relief will benefit every member of the Class by preventing future consumer deception. *See Smith*, 2020 WL 5630051, at *11 ("The proposed injunctive relief—an order to enjoin Keurig from advertising their products as recyclable—may be granted and provide relief for all proposed class members. Plaintiff thus satisfies the requirements of Rule 23(b)(2)."); *see also Young*, 2020 WL 11762212, at *7 (finding declaratory and injunctive relief under Rule 23(b)(2) appropriate to stop Defendant's uniform practice of misrepresenting on its packaging the existence of artificial flavors in the products). Accordingly, injunctive relief is necessary to prevent future harm to consumers who purchase the Products and to prevent Defendants from deceiving consumers with impunity.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should certify this action as a class, appoint Plaintiff as the Class Representative, and appoint Plaintiff's counsel as Class Counsel.

Dated: December 7, 2022                    **CLARKSON LAW FIRM, P.C.**

By: */s/ Katherine A. Bruce*
    Ryan J. Clarkson
    Katherine A. Bruce
    Kelsey J. Elling

**MOON LAW APC**

By: */s/ Kevin O. Moon*
    Christopher D. Moon
    Kevin O. Moon

    *Attorneys for Plaintiffs*