UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M. MOORE individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC and PFIZER INC.,<br><br>Defendants. | Case No: 4:20-cv-09077-JSW<br><br>**ORDER GRANTING MOTION TO CERTIFY CLASS AND GRANTING AND DENYING MOTIONS TO EXCLUDE**<br><br>Re: Dkt. Nos. 63, 81, 82, 94 |

Now before the Court for consideration are Plaintiff's motion for class certification; Plaintiff's motions to exclude the expert testimony of Dr. Steven Dentali; and Defendants' motions to exclude the expert testimony of Dr. Michael Dennis, Mr. Colin B. Weir, and Dr. Anton Toutov. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court finds the motions suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court **HEREBY GRANTS IN PART AND DENIES IN PART** Plaintiff's class certification motion insofar as the motion to certify under Rule 23(b)(2) is **GRANTED**, while the motion to certify under Rule 23(b)(3) is **DENIED**. The Court also **GRANTS** Plaintiff's motion to exclude the expert testimony of Dr. Steven Dentali and Defendants' motion to exclude the expert testimony of Dr. Anton Toutov, and **DENIES** Defendants' motions to exclude the expert testimony of Dr. Michael Dennis and Mr. Colin B. Weir.

## BACKGROUND

Plaintiff Lisa Moore ("Plaintiff") brings this putative consumer class action on behalf of herself and all residents of California who purchased certain ChapStick products within four years of filing this action. Plaintiff alleges that Defendants Pfizer Inc. and GlaxoSmithKline Consumer

1    Healthcare Holdings (US) LLC falsely label certain of their ChapStick products with the claims
2    "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced
3    Ingredients" (collectively, the "Challenged Statements").  (Dkt. No. 63-1 at 1–2 ("MPA").)
4    Plaintiff alleges these representations are false because the challenged ChapStick products contain
5    non-natural, synthetic, artificial, and/or highly processed ingredients.  (*Id*.)

6          Plaintiff challenges six ChapStick products: (1) ChapStick 100% Natural Lip Butter, which
7    comes in four scents; (2) ChapStick Total Hydration 100% Natural Lip Balm, which comes in four
8    scents; (3) ChapStick Total Hydration Essential Oils Lip Balm, which comes in five scented-
9    variations; (4) ChapStick Total Hydration Moisture + Tint Lip Balm, which comes in eight shades;
10   (5) Total Hydration Moisture + Tint SPF 15 Lip Balm, which comes in three scents; and (6)
11   ChapStick Total Hydration Natural Lip Scrub, which comes in two scents (collectively, the
12   "Products").  (Dkt. No. 22 ¶ 2 (FAC).)  Plaintiff alleges that the Products contain ingredients that
13   are non-natural, synthetic, artificial, and/or highly processed, and she identifies eight such
14   ingredients that are allegedly present in the Products:  (1) caprylic/capric triglycerides, (2)
15   capryloyl glycerin/sebacic acid copolymer; (3) carmine, (4) hydrogenated soybean oil, (5)
16   octyldodecanol, (6) tocopherol acetate, (7) polyhydroxystearic acid, (8) jojoba esters.  (MPA 8.)

17         Plaintiff, a resident of California, alleges that she routinely purchased two scent variations
18   of ChapStick Total Hydration 100% Natural Lip Balm and one scent variation of the ChapStick
19   Total Hydration Essential Oils Lip Balm at CVS and Walgreens stores in or around San Francisco.
20   (FAC ¶ 6.)  Plaintiff alleges that she relied on the Challenged Statements on those labels and
21   would not have purchased the products if she knew that they contained non-natural ingredients.
22   (*Id*.)  Plaintiff further alleges that she continues to desire to purchase the Products if they did not
23   contain any non-natural ingredients but is unable to rely on the truth of the Challenged Statements
24   and does not know the meaning of the Products' ingredients.  (*Id.* ¶¶ 6–7.)  Based on these
25   allegations, Plaintiff brings causes of action for violations of: (1) California's Unfair Competition
26   Law, Business and Professions Code sections 17200, *et seq.* ("UCL"); (2) California's False
27   Advertising Law, Business and Professions Code sections 17500, *et seq.* ("FAL"); and (3)
28   California's Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq.*

("CLRA"). Plaintiff also brings causes of action for breach of express warranty and unjust enrichment.

I.  **MOTIONS TO EXCLUDE**

    A.  **Applicable Legal Standard**

Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the expert is qualified and his or her opinion is relevant and reliable. An expert witness may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[I]n evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth" in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (citation omitted). A court may exclude expert testimony submitted in support of class certification if it does not comply with the standards set forth in *Daubert*. *See id.*

"Under *Daubert*, 'the district court judge must ensure that all admitted expert testimony is both relevant and reliable.'" *Id.* (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)). "Scientific evidence is reliable if the principles and methodology used by an expert are grounded in the methods of science." *Wendell*, 858 F.3d at 1232 (citation and internal quotation marks omitted). "The focus of the district court's analysis must be solely on principles and methodology, not on the conclusions that they generate," and "the court's task is to analyze not what the experts say, but what basis they have for saying it." *Id.* (citations, alteration, and internal quotation marks omitted). In conducting this analysis, the district court may consider "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Id.* (citation omitted).

    B.  **Defendants' Motion to Exclude the Expert Report of Dr. Michael Dennis**

Plaintiff offers the expert testimony of Dr. Michael Dennis, Ph.D., a survey researcher, for a proposed consumer perception survey and proposed conjoint analysis. For the consumer perception survey, Dr. Dennis proposes a method for conducting a market research study that can measure consumers' perceptions of the Challenged Statements with respect to whether class

3

1   members were misled as alleged by the Plaintiff.  (Dkt. No. 63-3 ¶ 21 ("Dennis Report").)  For the

2   conjoint analysis, Dr. Dennis provides a proposed method for conducting a market research study

3   that can measure the market price premium attributable to the Challenged Statements.  *Id.*

4         Defendants argue that Dr. Dennis's survey deviates from accepted principles of survey

5   design for a variety of reasons, including its lack of sufficient controls and reliance on improper

6   closed-ended and leading questions.  Defendants argue that Dr. Dennis's conjoint analysis suffers

7   from the decision to combine various product lines into just four surveys, including language that

8   is not challenged in the survey, and failing to account for supply-side factors.  Plaintiff disputes

9   these points and argues that any concerns regarding the survey go to weight, not admissibility.

10        The Court agrees with Plaintiff that these objections as to the survey's design,

11  methodologies, and reliability go to the weight to be given to Dr. Dennis's opinions, and not their

12  admissibility.  "[A]s long as [the survey] is conducted according to accepted principles and is

13  relevant," the "technical inadequacies in a survey, including the format of the questions or the

14  manner in which it was taken, bear on the weight of the evidence, not its admissibility."  *Montera*

15  *v. Premier Nutrition Corp.*, No. 16-CV-06980-RS, 2022 WL 1225031, at *4 (N.D. Cal. Apr. 26,

16  2022) (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025,

17  1036 (9th Cir. 2010).  Accordingly, the Court concludes that Defendants have not shown that Dr.

18  Dennis's opinions are subject to exclusion at this stage of the litigation, and the Court

19  **DENIES** Defendants' motion to exclude the testimony of Dr. Dennis.

20        **C.**     **Defendants' Motion to Exclude the Expert Report of Mr. Colin B. Weir**

21        Plaintiff offers the testimony of Mr. Colin B. Weir, an economic consultant, to ascertain

22  whether Plaintiff can determine damages on a class-wide basis using common evidence.  Mr. Weir

23  provides a framework for the calculation of damages suffered by the proposed class of consumers

24  as a result of the allegedly false and misleading Challenged Statements.  (Dkt. No. 63-4 ¶ 6 ("Weir

25  Report)).

26        Defendants argue that Mr. Weir's testimony should be excluded because it is needlessly

27  cumulative and unhelpful.  The Court disagrees.  Mr. Weir provides new information about

28  conjoint analysis not found in Dr. Dennis's report.  Specifically, Mr. Weir explains how sellers use

4

1   product attributes to differentiate products to increase sales and charge a price premium.  (*Id.* ¶¶

2   11–20.)  Mr. Weir then applies those principles to Defendants' documentary and testimonial

3   evidence to support the existence of a price premium associated with the Challenged Statements.

4   (*Id.*)  Mr. Weir also explains the propriety of Dr. Dennis's price attributes to ensure that they

5   adequately account for supply-side factors from an economics standpoint.  (*Id.* ¶¶ 45–61).

6   Contrary to Defendants' contentions, this analysis goes far beyond the "grade-school arithmetic"

7   of simply multiplying the price-premium percentage from Dr. Dennis's conjoint study with the

8   dollar amounts reflected in Defendants' sales data spreadsheet.

9   The Court also rejects Defendants' contention that Mr. Weir lacks expertise to opine on

10  market research, as numerous courts have found Mr. Weir qualified to provide similar opinions.

11  See *id.*, Ex. A.

12  Accordingly, the Court **DENIES** the motion to exclude the testimony of Mr. Weir.

**D.     Defendants' Motion to Exclude the Expert Report of Dr. Anton Toutov; Plaintiff's Motion to Exclude the Expert Report of Dr. Steven Denali**

Plaintiff provides the testimony of Dr. Anton Toutov, Ph.D., a chemist, to determine whether the Products contain artificial ingredients.  (Dkt. No. 63-5.)  Defendants provide the testimony of Dr. Steven Dentali, Ph.D., another chemist, to rebut Dr. Toutov's testimony.  (Dkt. No. 80-19.)

Here, the only relevant understanding of the Challenged Statements is that of the reasonable consumer.  *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012).  Neither party demonstrates how the perception of chemists would have any bearing on how reasonable consumers understand the Challenged Statements.  *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 293 (S.D.N.Y. 2022) (excluding testimony of Dr. Toutov because it did not speak to the understanding of the reasonable consumer).  Accordingly, the Court **GRANTS** Plaintiff's motion to exclude the testimony of Dr. Dentali and **GRANTS** Defendants' motion to exclude the testimony of Dr. Toutov.

**II.    MOTION FOR CLASS CERTIFICATION**

**A.     Applicable Legal standard**

1      Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), a court may certify a class only if (i) the class is so numerous that joinder of all members is impracticable, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class.

Under Rule 23(b), a class action may be maintained if Rule 23(a) is satisfied *and* if: (i) separate actions by or against individual class members would risk: (a) inconsistent results with respect to individual class members that would impose inconsistent requirements on the defendant, or (b) results for individual class members dispositive of other members' interests or which would substantially impair or impede class members' ability to protect their interests; (ii) the party opposing the class has acted on grounds that apply generally to the class, so that declaratory relief is appropriate; or (iii) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

A party seeking to certify a class must "affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A court must conduct a "rigorous analysis" of the Rule 23 factors, which necessarily entails "some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. However, a court may consider merits questions only to the extent such questions are relevant to determining whether the moving party has met its burden to satisfy the Rule 23 prerequisites. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The decision to grant or deny class certification is within the trial court's discretion. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). As the moving party, plaintiffs bear the burden to show they meet each of Rule 23(a)'s requirements. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

**B.     The Requirements Under Rule 23(a) Are Satisfied**

Defendants do not dispute that the Rule 23 numerosity, adequacy, and superiority requirements have been met. Accordingly, the Court analyzes only the commonality and typicality requirements.

### 1. Commonality

Commonality requires that there be "questions of fact and law common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has construed Rule 23(a)'s commonality factor permissively. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. To satisfy this factor, Plaintiffs must do more than show they and the putative class members "suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541 (internal quotations and citations omitted). Rather, the "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution," *i.e.*, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification" is whether a class-wide proceeding has "the capacity . . . to generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis, internal quotation and citation omitted). A "single common question" can satisfy this factor. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 359).

Plaintiff identifies several common questions. These include, for example, whether Defendants' conduct constitutes an unfair method of competition, and whether Defendants used deceptive representations in connection with the sale of the Products, in violation of Civil Code section 1750, et seq. Plaintiff argues that commonality is satisfied because an answer to these questions could resolve "in one stroke" whether the Products were falsely and unlawfully labeled under California's consumer protection laws. Plaintiff further argues that these questions "are capable of class-wide resolution" through common evidence. The Court analyzes commonality across the various causes of action.

#### a) CLRA and Breach of Warranty

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The requirements for stating a claim under the CLRA differ from those for a claim under the UCL and FAL because a CLRA plaintiff can obtain damages, as well as equitable relief and other remedies. Cal. Civ. Code § 1780(a). A CLRA plaintiff must "show not only that a defendant's conduct was deceptive but that the deception caused them

7

1    harm." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (citing *In re Vioxx*

2    *Class Cases*, 180 Cal. App. 4th 116, 129 (2009)). In other words, "[a] CLRA claim warrants an

3    analysis different from a UCL [and FAL] claim because the CLRA requires each class member to

4    have an actual injury caused by the unlawful practice." *Id.* (citation omitted). That said,

5    "[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that

6    material misrepresentations have been made *to the entire class*, an inference of reliance arises as to

7    the class." *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th at 129) (emphasis added). "A

8    misrepresentation is judged to be 'material' if a reasonable [person] would attach importance to its

9    existence or nonexistence in determining his choice of action in the transaction in

10   question." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011) (citation omitted). "Whether

11   a misrepresentation is sufficiently material to allow for an inference of reliance is generally a

12   question of fact[.]" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (citation

13   omitted). "If the misrepresentation or omission is not material as to all class members, the issue of

14   reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*,

15   655 F.3d at 1022–23 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th at 129).

16       As for breach of warranty, courts have found that such claims are appropriate for class

17   treatment where the question of whether defendant misrepresented its product and whether such

18   misrepresentation breached warranties are issues common to members of the putative class. *In re*

19   *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015). Class treatment of breach of

20   express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged

21   misrepresentation would have been material to a reasonable consumer. *Id.*

22       Plaintiff argues that materiality is capable of being proved through common evidence,

23   including the Defendants' internal documents and deposition testimony and a consumer perception

24   survey from Dr. Dennis.[1]

25       **(1)    Internal Documents and Deposition Testimony**

26       The Court first turns to the documents and testimony Plaintiff provides. *See Kumar v.*

---

[1] Plaintiff also points to Dr. Dennis's conjoint analysis and the testimony of Dr. Toutov. The court rejects the validity of the conjoint analysis and has excluded the testimony of Dr. Toutov.

United States District Court
Northern District of California

*Salov N. Am. Corp.* 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers."); *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271 RS, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) (defendant's own "[m]arketing research suggests the overwhelming majority of Joint Juice users purchased the product to obtain these benefits, and thus there is a reason to believe the represented health benefits were material.").

Plaintiff points to documents in which Defendants acknowledge that there is a "strong consumer desire for 'natural' products and ingredients" in the lip balm market generally. (*E.g.*, Dkt. No 64-49 at 16.) Plaintiff also points to Rule 30(b)(6) testimony that establishes the same. (*See, e.g.*, Dkt. No. 64-7 at 81:19-82:5 (Deposition of Amy Reibrich) ("'Natural' was a trend in the marketplace of competitive products . . . [for] beauty products in general. . . . And [they] knew there was a consumer who was looking for that."').) Plaintiff further alleges that Defendants' internal marketing research reflected the importance of natural products. According to these documents, Defendants concluded that the "100% Naturals" ChapStick products "[t]ap[] into consumer desire for [a] natural option," finding "79% of lip balm users 18-34 [are] interested in [the] natural option." (Dkt. No. 64-8 at 34; *see also* Weir Report ¶¶ 11-20 (detailing Defendants' own marketing research that demonstrated the price premia commanded by the Products).) Defendants found that "[t]op purchase drivers for natural lip balm are . . . ingredients." (*Id.* at 3.) Specifically, 79% of consumers identified ingredients as an "important" product-attribute. (*Id.* at 6.) In addition, 59% of consumers also identified how ingredients are sourced, and 57% identified that where ingredients are sourced is "important." *Id.* Defendants' other surveys rendered similar results. (*See* Dkt. No. 64-9 at 33 (in 2015 survey regarding lip products, Defendants found "'Natural' is important in a product that promises more than color"); Dkt. 64-50 at 53 (in 2019 survey, Defendants found 65% of consumers place "importance" on "[a]ll-natural ingredients.").)

Defendants challenge the persuasive weight of only some of this documentary and testimonial evidence. In all, their arguments do not undermine Plaintiff's showing of common evidence of materiality. The documents and testimony presented allows the court to determine that common evidence demonstrates that the Challenged Statements are material to a reasonable

9

consumer. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) (holding that, among other evidence, survey finding that 78.5% of respondents believed "Made From Real Ginger" meant "made from ginger root" helped demonstrate materiality.)

### (2) Consumer Perception Survey

Plaintiff also provides a consumer perception survey proposed by Dr. Dennis. Defendants criticize the methodology of this survey for several reasons. The Court analyzes each critique in turn, finding that the survey as proposed does not separately establish common proof of materiality.

#### (a) Failure to Isolate the Challenged Statements

Defendants argue that the survey fails to sufficiently isolate the Challenged Statements by including certain language surrounding certain Challenged Statements. Dr. Dennis testifies that he sufficiently isolated the Challenged Statements by "asking respondents to consider" only the descriptor at issue and "control[ing] for those respondents that are not basing their answers on the stimulus" through control questions. (Deposition of Dr. Dennis at 134:24-135:6.) As noted, the Challenged Statements include "100% Natural," "Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients." Here, Dr. Dennis included label claims with extraneous words such as "Lip Butter" and "Natural with Argan Oil." (*See* Dkt. No 92-1 ¶ 19 (Reply Declaration and Expert Report of Dr. Dennis) (citing questions including the following labels: "100% Natural Lip Butter," "100% Natural with Argan Oil," "Natural Age Defying," "100% Naturally Sourced Oils and Butters," "Natural Sunscreen," "Natural Lip Scrub," and "100% Natural Lip Care.").)

Defendants point to the reasoning in *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 554 (N.D. Cal. 2021) as persuasive on this issue. In that case, the court found that Dr. Dennis's survey showed images of the "entire package of ice cream at issue . . . includ[ing] statements and elements not challenged," which undermined the ability of the survey to speak to the challenged representations specifically. *Id.* at 541. Defendants argue that as in *Vizcarra*, the presence of extraneous words in these labels makes it impossible to know what language a survey respondent is reacting to when answering. The Court agrees.

10

1       Plaintiff's responses to this flaw in the survey are unavailing. Plaintiff notes that unlike in
2  *Vizcarra*, here Dr. Dennis "adamantly testified" that his proposed survey isolates the effect of the
3  Challenged Statements. (Dkt. No 93-7 at 6 n.4 (MTE Opp.)) (citing Deposition of Dr. Dennis at
4  134:24-135:6). Yet the survey on its face does not isolate the challenged language. Plaintiff also
5  contends that Dr. Dennis can strike these extraneous words without changing the methodology of
6  the survey. But Plaintiff fails to provide authority for the proposition that such proposed changes
7  to the survey are viable to consider at this juncture. As such, the Court finds that the consumer
8  perception survey cannot demonstrate materiality through common evidence.

9                         **(b)     Testing Multiple Claims in a Single Question**

10      Defendants argue that the survey does not account for differences between each of the four
11 Challenged Statements, and that by testing multiple claims in a single question, Dr. Dennis cannot
12 accurately measure a consumer's perception as to each of the four Challenged Statements.
13      Plaintiff argues that Defendants' internal documents and deposition testimony admit and
14 demonstrate that the Challenged Statements functionally mean the same thing. (*See* Deposition of
15 Amy Reibrich at 32:24-33:10, 39:20-41:1, 46:19-25 (claims mean the same thing from a
16 marketing perspective); Dkt. No. 71-6 at 52:15-17 (Deposition of Angela Eppler) (natural means
17 no artificial ingredients from a formulation perspective); Dkt. 64-55, at 2 (purportedly
18 substantiating the Challenged Statements to mean "no artificial ingredients"); Dkt. 92-1 ¶ 20
19 (Dennis Rebut Rept.) ("it serves no purpose to measure . . . each statement, separately, when they
20 each individually and in combination are alleged to have the same effects").) Here, Defendants'
21 criticisms "boil down to a disagreement as to Dr. Dennis's survey design choices, which go to the
22 weight to be accorded to Dr. Dennis's survey results and opinions when determining the merits of
23 [Plaintiff's] claims at trial. That merits determination is not one for this Court at the class
24 certification stage." *Vizcarra v. Unilever United States, Inc.*, 2023 WL 2364736, at *19 (N.D.
25 Cal. Feb. 24, 2023); *see also In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 328
26 (S.D. Cal. 2019) *aff'd sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
27 31 F.4th 651, 664 (9th Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery*
28 *Coop., Inc.*, 143 S. Ct. 424, 214 L. Ed. 2d 233 (2022) ("In essence, the defendants are asking the

1  court to determine which multiple regression model is most accurate, which is ultimately a merits
2  decision."). To the extent that some questions test multiple representations, the Court does not
3  find this specific issue with the survey fatal at this stage. Defendants can cross examine Dr.
4  Dennis on this approach at trial.

### (c)  Failure to Include All Product Variations

Dr. Dennis proposes testing labels for six of the twenty-six products. Defendants challenge that this methodology ignores consumer perceptions as to the dozens of other labels used during the relevant period. Yet Defendants fail to adequately explain how these variations to the label necessarily affect the validity of these results. Dr. Dennis used his expertise to combine these labels in a way he believed would be representative. (Dennis Rebut Rept. ¶¶ 21–22 ("I could have selected the packaging for any one of the . . . variations . . . and it would have been representative of the rest of the Products within that Product Line").) To the extent that this methodology weakens the survey, Defendants can raise the issue at trial.

### (d)  Survey Structure Leading to Bias

Defendants argue that the survey is biased because it contains leading questions and does not employ open-ended questions. The Court notes that Dr. Dennis's direct question methodology is well accepted by courts around the country. (*See* Dennis Report ¶ 44 n.9.) Moreover, the key questions at issue do not appear to be leading or to present a risk of bias. For example, Dr. Dennis asks respondents "whether or not they understand the specified statements on the product packaging to be communicating certain meanings." (*Id.* ¶ 45.) This is far from leading. The Court does not find Dr. Dennis's methodology to be unduly leading or to present bias.

### (e)  Failure to Complete the Survey

Defendants argue that Plaintiff's failure to conduct the consumer perception survey negates its usefulness at this stage. The Court disagrees. Courts in this District routinely grant class certification in cases where plaintiffs have relied on proposed survey evidence. *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 596 (N.D. Cal. 2021); *see also Vizcarra*, 2023 WL 2364736, at *19 (granting certification, in part, based on a proposed survey designed by Dr. Dennis)

### b) UCL and FAL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Stearns*, 655 F.3d at 1020. This standard is governed by whether a "reasonable consumer" is likely to be deceived. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.") (citation omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003).

Plaintiff points to the same evidence described above to demonstrate that whether the Challenged Statements were likely to deceive a reasonable consumer can be resolved with common proof. As noted, the documentary and testimonial evidence is sufficient to demonstrate materiality. For the same reasons, this evidence is sufficient to demonstrate that a reasonable consumer is likely to be deceived by the alleged misrepresentations for the purposes of commonality.

### c) Unjust Enrichment

Unjust enrichment claims "require common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (citing cases). The question of whether Defendants were unjustly enriched by the proposed class members' purchase of the Products given the allegedly false representations raises the same legal issues as to all class members. Accordingly, commonality is also met for the unjust enrichment claim. *See Smith v. Keurig Green Mountain, Inc.*, 2020 WL 5630051, at *5 (N.D. Cal.

13

Sept. 21, 2020).

### 1. Typicality

Typicality requires showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement tests whether other members have an injury similar to that of the named plaintiffs and whether other class members "have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The purpose of this requirement is to assure that the named plaintiffs' interests align with the interests of the putative class members. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Under this "permissive" standard, representative claims are "typical" if they are "reasonably coextensive with those of absent class members." *Sandoval v. M1 Auto Collisions Cntrs.*, 309 F.R.D. 549, 568–69 (N.D. Cal. 2015) (citation omitted). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff." *Astiana*, 291 F.R.D. at 502 (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

Defendants argue that Plaintiff cannot establish typicality because she did not purchase all the Products. Defendants also point out that different arguments apply to the different ingredients at issue. The Court nevertheless finds that Plaintiff's claims are "reasonably co-extensive" with the claims of absent class members. *Young*, 2020 WL 11762212, at *5. Plaintiff may not have purchased all the challenged Products, but she alleges the same harm as absent class members based on Defendants' labeling of the Products as containing all natural ingredients. Although the Court recognizes certain differences across the twenty-six products, these products and claims from which they arise do not appear to be so different as to defeat typicality. *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014) (typicality satisfied even where named plaintiff purchased different varieties of the product than class members, where

14

1  all varieties at issue contained the same misleading label and were alleged to be misleading for the
2  same reason); *Testone*, 2021 WL 4438391, at *9 (typicality established even though plaintiffs did
3  not purchase "every size and type" of challenged products); *de Lacour v. Colgate-Palmolive Co.*,
4  338 F.R.D. 324, 346 (S.D.N.Y. 2021), *leave to appeal denied*, No. 21-1234, 2021 WL 5443265
5  (2d Cir. Sept. 16, 2021) (typicality established even though unpurchased products "contain
6  different ingredients, bear different packaging, and have different functions"); *Young*, 2020 WL
7  11762212, at *5 ("Although Plaintiffs may not have purchased all the challenged Products, they
8  allege the same harm as absent class members based on Defendants' labeling of the Products as
9  having "natural flavors" and "no artificial colors or flavors" when the Products in fact contained
10 the allegedly artificial flavor, malic acid. This is sufficient for typicality."). The Court therefore
11 concludes Plaintiff has satisfied the typicality requirement.

**B.      Plaintiff Fails to Satisfy the Requirements Under Rule 23(b)(3)**

Under the Rule 23(b)(3) predominance inquiry, a court has a duty to take a close look at whether common questions predominate over individual ones and ensure that individual questions do not overwhelm questions common to the class. *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 691 (9th Cir. 2018) (internal quotation marks, citations, and alterations omitted) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). *Id.* In short, the main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues. *Id.* In determining if common questions predominate, the Court identifies the substantive issues related to plaintiff's claims and then considers the proof necessary to establish each element of the claim, and then considers how these issues would be tried. *See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10 § 10:412 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).

Plaintiff argues that the predominance requirement is met because the questions that she contends are capable of class-wide resolution with common proof, namely likelihood of deception and materiality, predominate over individual questions. As discussed above, the questions of likelihood of deception and materiality address the most critical elements of claims under the UCL, FAL, CLRA, breach of warranty, and unjust enrichment and can be resolved with common

15

proof. In such circumstances, courts routinely find that common questions predominate over individual ones. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (holding that predominance requirement was met as to claims under the FAL, CLRA, and UCL in part because the plaintiff had shown that likelihood of deception and materiality could be resolved on a class-wide basis based on expert testimony and defendant's own internal documents); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (same based on expert testimony and defendants' admissions); *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (same based on the defendants' own marketing research and surveys).

However, a plaintiff seeking certification under Rule 23(b)(3) must show that damages are capable of measurement on a classwide basis. Plaintiff seeks certification under Rule 23(b)(3) because she seeks damages pursuant to the CLRA and restitution pursuant to her other claims on behalf of the proposed class. The damages and restitution owed to a plaintiff under each of these claims is based on the difference between the price the consumer paid and the price a consumer would have been willing to pay for the product had it been labeled accurately. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988–89 (9th Cir. 2015). In other words, "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* (citing *Kwikset*, 51 Cal. App. 4th at 329).

Under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), plaintiffs bear the burden of providing a damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." The damages model "must measure only those damages attributable to" the plaintiffs' theory of liability and must reasonably reflect the claims and evidence in the case. *Id.* To demonstrate that damages can be measured classwide, Plaintiff has proffered a conjoint analysis through the testimony of Dr. Dennis, with analytical assistance from Mr. Weir. Defendants argue that this analysis is unreliable for three reasons.

First, Defendants argue that Dr. Dennis failed to adequately account for supply-side factors. Conjoint analyses can adequately account for supply-side factors "when (1) the prices

16

1  used in the surveys underlying the analyses reflect the actual market prices that prevailed during
2  the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the
3  actual quantities of products sold during the class period." *Hadley v. Kellogg Sales Co.*, 324 F.
4  Supp. 3d 1084, 1105 (N.D. Cal. 2018).  Dr. Dennis and Mr. Weir use real world historical data to
5  account for supply-side factors to measure a reliable price premium for the Challenged Statements,
6  which is sufficient at this stage.  *See Maldonado v. Apple, Inc.*, 2021 WL 1947512 at *22 (N.D.
7  Cal. May 14, 2021) ("Real-world price and quantity data is reliable for these purposes because, put
8  simply, it is what the supplier firm actually did. The new price that emerges—and the resulting
9  price premium—reliably captures what it set out to capture: a change in price as a result of a
10 change in consumer behavior.").

11       Second, Defendants argue that Dr. Dennis's four surveys cannot account for the twenty-six
12 product lines and fault his plan to combine four of the product lines into just two surveys.
13 Defendants argue that by combining product lines, the survey ignores key features that distinguish
14 the Products, such as certain flavors or the presence of essential oils that some consumers may
15 value highly.  This "inappropriate conflation of product lines," as Defendants' expert Dr. Toubia
16 explains, "renders the proposed conjoint survey unreliable."  (Dkt. No. 80-18 ¶ 66 ("Toubia
17 Report").)  Plaintiff responds that conducting twenty-six conjoint surveys would be unduly
18 burdensome and that Dr. Dennis based his design choice to combine certain Products is based on
19 his expertise and analysis of the packaging.  (*See* Dkt. No. 80-7 at 177:13-178:18 (Deposition of
20 Dr. Dennis).)  The Court agrees with Plaintiff.  Defendants fail to establish with sufficient
21 specificity how or why Dr. Dennis's design choice represents a "conflation" of product lines as it
22 relates to differences such as flavors or scents.  To the extent that this "conflation" weakens the
23 persuasiveness of the conjoint analysis, Defendants can challenge this portion of the survey at
24 trial.

25       Third, Defendants argue that Dr. Dennis improperly includes in his conjoint study certain
26 words and phrases that Plaintiff does not challenge.  As he does for the consumer perception
27 survey, Dr. Dennis plans to test language that Plaintiff does not challenge, such as "with argan
28 oil," "age defying" and "with . . . oils and butters for softer, healthier looking lips."  (Dennis

17

1    Report ¶ 97; Deposition of Dr. Dennis at 70:4-17 (measured "the entire label claim, not just the
2    challenged representation").) Just as this failure to isolate the Challenged Statements fatally
3    flawed the consumer perception survey, this failure to isolate the key challenged statements
4    renders the conjoint survey incapable of calculating a reliable price premium. Plaintiff again
5    argues that Dr. Dennis can change the survey to isolate these representations, but cites no authority
6    that would allow the Court to approve the survey in its current state. Indeed, courts facing similar
7    issues with Dr. Dennis's conjoint surveys have required Dr. Dennis to isolate the challenged
8    statements in the conjoint survey on a renewed motion. For example, in *McMorrow v. Mondelez*
9    *Int'l, Inc*, instead of specifically testing the effect of the challenged word "nutritious," Dr.
10   Dennis's proposed to test entire phrases that contained other non-challenged words, including
11   "nutritious sustained energy," "nutritious steady energy all morning," and "4 hours of nutritious
12   steady energy." 2020 WL 1157191, at *5–9 (S.D. Cal. March 9, 2020). The court in *McMorrow*
13   reasoned that because the proposed study would not isolate the price premium resulting from the
14   challenged word "nutritious," the proposed study was inconsistent with the plaintiff's theory of
15   liability and thus failed to satisfy *Comcast*. *See id.* at *19-20. After the court denied the motion
16   for certification on this basis, the plaintiff filed a renewed motion for class certification that relied
17   upon a revised proposed conjoint study by Dr. Dennis, and the court granted certification. *See*
18   *McMorrow v. Mondelez Int'l, Inc*, 2021 WL 859137, at *7 (S.D. Cal. Mar. 8, 2021). Similarly, in
19   *Vizcarra*, the court found that the methodology for calculating damages did not isolate the
20   challenged statements and was therefore incapable of calculating the price premium. *Vizcarra*,
21   339 F.R.D. at 554. On a renewed motion in which Dr. Dennis made greater efforts to isolate the
22   representations in the survey, the court approved certification. *Vizcarra v. Unilever United States,*
23   *Inc.* 2023 WL 2364736. (N.D. Cal. Feb. 24, 2023).
24           Accordingly, the Court **DENIES** the motion to certify a class under Rule 23(b)(3).
25           **C.      The Requirements Under Rule 23(b)(2) Are Satisfied**
26           Plaintiff also seeks certification under Rule 23(b)(2), which provides that a class action is
27   appropriate if "the party opposing the class has acted or refused to act on grounds generally
28   applicable to the class, thereby making appropriate final injunctive relief or corresponding

18

1    declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Class

2    certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory

3    or injunctive.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001).  "[A]

4    previously deceived consumer may have standing to seek an injunction against false advertising or

5    labeling," if (1) "she will be unable to rely on the product's advertising or labeling in the future,

6    and so will not purchase the product although she would like to" or (2) "she might purchase the

7    product in the future, despite the fact it was once marred by false advertising or labeling, as she

8    may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark*

9    *Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018).

10        Plaintiff contends that certification of an injunctive relief class is appropriate because

11   Defendants engaged in a uniform practice of misrepresenting on its packaging the existence of

12   natural ingredients in the Products.  As noted, Plaintiff explained that she would like to purchase

13   the Products but will not do so because she is unable to rely on the Products' representations.

14   Plaintiff argues that an injunction requiring Defendants to cease making these alleged

15   misrepresentations would provide relief to the class as a whole, which is limited to consumers who

16   purchased Defendants' Products that contain the Challenged Statements.

17        Defendants argue that Plaintiff lacks Article III standing, as Plaintiff admitted in a

18   deposition that "if the 'natural' statements were taken off the label," she would "probably"

19   consider purchasing the products again, and that she is concerned with "being lied to" if the

20   Challenged Statements remain on the label.  (Dkt. No. 63-17 at 114:24-115:22 (Deposition of Lisa

21   M. Moore).)   In support of this contention, Defendants point to Ninth Circuit precedent

22   establishing that the desire for a product to be "properly labeled" is merely "an abstract interest in

23   compliance with labeling requirements" that is "insufficient, standing alone, to establish Article III

24   standing."  *In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2

25   (9th Cir. Aug. 31, 2021).

26        Despite her admission of an arguably abstract interest, Plaintiff has otherwise adequately

27   alleged standing for an injunctive class.  *See id.* ("[S]uch an abstract interest in compliance with

28   labeling requirements is insufficient, *standing alone*, to establish Article III standing.") (emphasis

1  added) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016)).[2]  As Plaintiff explained in

2  her deposition, she desires to buy natural lip-care products and she relied on the labels of the

3  natural lip-care Products in deciding to buy them.  (Deposition of Lisa M. Moore at 74:17-21;

4  75:22-76:15; 86:7-25; 92:7-15; 93:25-94:23; 105:10-14.)  When asked if she would purchase the

5  Products again in the future, she answered, "I would like to buy them again[.]"  (*Id.* at 114:14-22.)

6  However, Plaintiff does not know whether they are, in fact, natural, and she does not have the

7  expertise to discern from their ingredient disclosures whether the Challenged Statements are true.

8  (*Id.* at 112:12-24; 113:11-114:10; *see also* Dkt. No. 63-2 ¶¶ 5, 6 (Moore Decl.).)  This evidence

9  establishes standing under Article III.

10  Accordingly, the Court holds that a single injunction barring Defendant from making the

11  alleged misrepresentations would benefit the whole proposed class.  The Court **GRANTS** the

12  motion to certify under Rule 23(b)(2).

### CONCLUSION

14  For the reasons explained above, the Court **HEREBY GRANTS IN PART AND**

15  **DENIES IN PART** Plaintiff's motion to certify a class.  The motion to certify a class under Rule

16  23(b)(2) is **GRANTED**, and the motion to certify a class under Rule 23(b)(3) is **DENIED**

17  **WITHOUT PREJUDICE**.  The Court also **GRANTS** Plaintiff's motion to exclude the expert

18  testimony of Dr. Steven Dentali and Defendants' motion to exclude the expert testimony of Dr.

19  Anton Toutov, and **DENIES** Defendants' motions to exclude the expert testimony of Dr. Michael

20  Dennis and Mr. Colin B. Weir.

21  **IT IS SO ORDERED.**

22  Dated: January 30, 2024

       _____
       JEFFREY S. WHITE
       United States District Judge

---

[2] To the extent the admission undermines the testimony in the declaration, the inconsistency identified does is not so "clear and ambiguous" to find the declaration is a sham.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009).