# Exhibit A

*Plaintiff's Motion for Final Approval of Rule 23(b)(2) Class Action Settlement, Service Award, and Attorneys' Fees and Costs*

Class Action Settlement Agreement and Release

## CLASS SETTLEMENT AGREEMENT AND RELEASE

This Class Settlement Agreement and Release is made and entered into by and between Plaintiff Lisa M. Moore, individually and on behalf of all members of the Class, and Defendant Haleon US Holdings LLC f/k/a GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, pursuant to Federal Rule of Civil Procedure 23 and subject to Court approval in the action entitled *Lisa M. Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Pfizer Inc.*, Case No. 4:20-cv-09077-JSW, pending in the United States District Court for the Northern District of California. The Settlement Agreement sets forth the terms and conditions of the settlement of this Action and the release of all Injunctive Relief Claims and the Individual Claims as defined herein.

## 1.    RECITALS

1.1    WHEREAS, on December 16, 2020, Plaintiff filed a putative class action against GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("GSK") and Pfizer, Inc. ("Pfizer") in the United States District Court for the Northern District of California in *Lisa M. Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Pfizer Inc.*, Case No. 4:20-cv-09077-JSW.

1.2    WHEREAS, on January 26, 2021, Plaintiff filed the operative First Amended Complaint against GSK and Pfizer for alleged violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), the California False Advertising Law (Cal. Bus. & Prof Code §§ 17500), the Consumers Legal Remedies Act (Cal. Civil Code §§ 1750 *et seq.*), and for common law claims of breach of warranty and unjust enrichment, with respect to certain of GSK and Pfizer's ChapStick brand lip care products identified in the FAC and Order Granting Motion to Certify Class and Granting and Denying Motions to Exclude filed on January 30, 2024: (1) ChapStick 100% Natural Lip Butter, (2) ChapStick Total Hydration 100% Natural Lip Balm; (3)

ChapStick Total Hydration Essential Oils Lip Balm; (4) ChapStick Total Hydration Moisture +
Tint Lip Balm; (5) ChapStick Total Hydration Moisture + Tint SPF 15 Lip Balm; and (6) ChapStick
Total Hydration Natural Lip Scrub, in all scent and flavor variations. *See* FAC at ¶ 2, ECF 22;
MCC Notice at 2-3, ECF 63; MCC Order at 2, ECF 108. Plaintiff based each cause of action on
allegations that GSK and Pfizer misleadingly packaged and labeled the Products with the following
statements "Natural," "100% Natural," "Naturally Sourced Ingredients," and/or "100% Naturally
Sourced Ingredients," as depicted on the images of the Products' labels and packaging submitted
with the FAC and in support of Plaintiff's Motion for Class Certification, Appointment of Class
Representative, and Appoint of Class Counsel filed on December 7, 2022. *See* FAC at Ex. 1-6,
ECF 22-1 − 22-6; Plaintiff's MCC at Ex 9-15, ECF 88. Plaintiff alleged that the Products' Natural
Representations are false and deceptive because the Products contain non-natural, synthetic,
artificial, and/or highly processed ingredients, which do not exist in nature or naturally occur.

  1.3  WHEREAS, GSK and Pfizer deny all liability for each and every cause of action
asserted in the FAC and further deny that the Products' Natural Representations are false,
misleading, or deceptive in any way, that GSK and Pfizer made or breached any alleged warranty,
and that GSK and Pfizer were unjustly enriched in any manner.

  1.4  WHEREAS, the Parties have engaged in extensive discovery and investigation,
including exchanging information and documents, subpoenaing records, taking the depositions of
Plaintiff, GSK and Pfizer, and their experts, and producing expert reports based on their analysis
of the allegations in the FAC. As a result, the Claims have been substantially investigated and are
substantially understood so that the Parties are in a reasonable position to assess the merits and
weaknesses of the Claims and the defenses thereto.

1.5    WHEREAS, on December 7, 2022, Plaintiff moved to certify a class of all persons or entities who purchased one or more Products in California, between December 16, 2016 through present, for purposes other than resale. *See* Notice of Plaintiff's MCC at 2, ECF 63. On January 30, 2024, the Court granted class certification of an injunctive relief class with respect to all asserted causes of action under Federal Rule of Civil Procedure 23(b)(2), and appointed Plaintiff and Plaintiff's counsel of record as a representative and counsel for the certified class. *See* MCC Order at 20, ECF 108. The Court denied Plaintiff's motion to certify a damages class under Federal Rule of Civil Procedure 23(b)(3) without prejudice. *See id.*

1.6    WHEREAS, on March 25, 2024 and May 9, 2024, the Parties mediated with a third-party neutral at Judicate West, mediator Jill R. Sperber, Esq., who has extensive experience mediating class actions, including class actions that involve false advertising and breach of warranty claims. After arm's length negotiations supervised by and conducted through Ms. Sperber, the Parties agreed to resolve the Action, subject to the Court's approval, as set forth herein.

1.7    WHEREAS, as a result of the litigation to date, including their investigation and discovery, the Parties entered into settlement negotiations and attended mediations to further their settlement efforts, taking into account the following considerations: (a) the merits or lack thereof of the Claims; (b) the relative strengths and weaknesses of the Claims; (c) the time, expense, and effort that would be required to continue to litigate the Action through summary judgment, trial, and/or appeal; (d) the possibilities of success weighed against the possibilities of failure with respect to their respective positions in the litigation; (e) the range of possible outcomes, including outcomes as a result of the Court's Class Certification Order, which only certified a Rule 23(b)(2) injunctive relief class; (f) the complexities of the contested issues regarding the Claims; (g) the risks inherent in protracted litigation; (h) the magnitude of benefits to be gained from immediate

settlement in light of both the maximum potential of a favorable outcome with the attendant expense and likelihood of an unfavorable outcome; and (i) the benefits resulting from an immediate settlement in light of all of the foregoing considerations. Based on the foregoing considerations, the Parties desire to enter into this Settlement Agreement subject to the Court's approval to resolve their dispute on a class-wide basis and to avoid the need to further expend valuable resources and mitigate the attendant risks of litigation.

1.8    WHEREAS, Plaintiff and Class Counsel neither admit nor concede any lack of merit in this Action, but have agreed to settle this matter in order to avoid the expense, inconvenience, burden, and uncertainty of further litigation. Additionally, Defendant and its counsel neither admit nor concede fault or liability in this Action, but have agreed to settle this matter only to avoid the expense, inconvenience, and uncertainty of further litigation. Substantial time and effort have been expended by the Parties and their counsel in drafting and negotiating the terms and conditions of this Settlement Agreement.

1.9    WHEREAS, this Settlement Agreement is contingent upon the issuance by the Court of the Final Judgment and Order approving the terms of this Settlement Agreement. Should the Court not issue the Final Judgment and Order, the Parties do not waive, and instead expressly reserve, all rights to prosecute and defend this Action.

1.10    WHEREAS, in consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims described below, the Parties agree to this Settlement Agreement, subject to Court approval, under the following terms and conditions.

## 2.    **DEFINITIONS**

Unless otherwise expressly stated herein, the following capitalized terms in this Settlement Agreement shall have the following meanings and definitions:

2.1    "Plaintiff" means Lisa M. Moore.

2.2    "GSK" means Haleon US Holdings LLC f/k/a GlaxoSmithKline Consumer Healthcare Holdings (US) LLC.

2.3    "Pfizer" means Pfizer Inc.

2.4    "Defendant" means GSK.

2.5    "Defendant-Releasees" mean GSK and Pfizer and their predecessors, successors, assignors, assignees, subsidiaries, parents, acquired entities, officers, insurers, reinsurers, directors, employees, agents, legal representatives, partnerships, joint ventures, attorneys, affiliates, owners, members, and/or shareholders.

2.6    "Action" means the class action litigation filed by Plaintiff on December 16, 2020, in the United States District Court for the Northern District of California entitled *Lisa M. Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Pfizer Inc.*, Case No. 4:20-cv-09077-JSW.

2.7    "Attorneys' Fees and Cost Award" means any and all attorneys' fees, costs, and expenses, including any fees and costs for experts and consultants, for Class Counsel or other counsel in this Action.

2.8    "Claims" mean all causes of action set forth in the Complaint filed in the Action and any claim that the Natural Representations on the Products' labels are misleading because the Products contain non-natural, synthetic, artificial, and/or highly processed ingredients, which do not exist in nature or naturally occur.

2.9    "Class" means the persons and entities included in the Class Definition.

5

2.10     "Class Certification Order" or "MCC Order" means the Court's January 30, 2024 Order Granting Motion to Certify Class and Granting and Denying Motions to Exclude, Docket No. 108, filed in the Action.

2.11     "Class Counsel" means the following attorneys that the Court appointed to represent the Class in the Class Certification Order: Ryan J. Clarkson of Clarkson Law Firm, P.C. and Christopher D. Moon and Kevin O. Moon of Moon Law APC.

2.12     "Class Definition" means: All persons or entities who, between December 16, 2016 and January 30, 2024, purchased one or more of the Products in California for purposes other than resale, with the following exceptions: (i) each Defendant, its assigns, successors, and legal representatives; (ii) any entities in which any Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer. *See* MCC Notice at 2-3, ECF 63; MCC Order at 20, ECF 108. In the event the Court should alter or modify the Class Definition, and such amended Class Definition is accepted in writing by the Parties, such amended Class Definition shall be considered the "Class Definition" under this Settlement Agreement and all references to Class Definition in this Settlement Agreement shall mean and refer to the amended Class Definition.

2.13     "Class Members" means those persons and/or entities included within the Class Definition.

2.14     "Complaint" or "FAC" means the First Amended Class Action Complaint filed against GSK and Pfizer in the Action on January 26, 2021. *See* ECF 22.

2.15    "Court" means the United States District Court for the Northern District of California, the Honorable Jeffrey S. White, or any other court of law or judge to which the Action may be reassigned.

2.16    "Final Judgment and Order" means the final order and judgment to be entered by the Court in the Action approving this Settlement Agreement.

2.17    "Individual Claims" mean any claims against GSK and Pfizer brought by Plaintiff, or that could have been brought by Plaintiff, in the Action, on her own behalf in her individual capacity, including the Claims and any claims resulting from the purchase or use of the Products as alleged in the Complaint. *See* FAC at ¶ 6, ECF 22 (identifying Plaintiff's purchases between December 2019 and February 2020).

2.18    "Injunctive Relief Claims" mean any claims for injunctive relief that were certified for class treatment in the Class Certification Order—specifically, all claims seeking to enjoin GSK and Pfizer from marketing, advertising, and labeling the Products with the Natural Representations because the Products allegedly contain non-natural, synthetic, artificial, and/or highly processed ingredients, which do not exist in nature or naturally occur.

2.19    "Natural Representations" means and refers to the statements "Natural," "100% Natural," "Naturally Sourced Ingredients," and "100% Naturally Sourced Ingredients."

2.20    "Parties" and "Party" mean and refer to Plaintiff, the Class, and/or Defendant, individually or collectively as specified.

2.21    "Products" means the products at issue in the Action—specifically, the following ChapStick brand lip care products identified in the FAC and Class Certification Order, in all scents or flavor variations, as formulated at the time the FAC was filed: (1) ChapStick 100% Natural Lip Butter, (2) ChapStick Total Hydration 100% Natural Lip Balm; (3) ChapStick Total Hydration

Essential Oils Lip Balm; (4) ChapStick Total Hydration Moisture + Tint Lip Balm; (5) ChapStick Total Hydration Moisture + Tint SPF 15 Lip Balm; and (6) ChapStick Total Hydration Natural Lip Scrub. *See* FAC at ¶ 2, ECF 22; MCC Notice at 2-3, ECF 63; MCC Order at 2, ECF 108.

2.22    "Service Award" means any payment to Plaintiff that may be awarded by the Court in recognition of the risks that they have undertaken and their time, cost, and effort in the Action on behalf of the Class.

2.23    "Settlement Agreement" means this Class Settlement Agreement and Release and all exhibits and amendments thereto.

2.24    "Settlement Payment" means the total monetary relief of not more than five hundred thousand dollars ($500,000.00) to be paid by Defendant pursuant to Section 4 below and used to satisfy any and all Attorneys' Fees and Cost Award and Service Award.

2.25    "Settlement Effective Date" means the day after the occurrence of both of the following: (1) the Settlement Agreement is executed and delivered by all Parties and approved by the Court, and (2) entry of the Final Judgment and Order approving the settlement.

**3.**    **INJUNCTIVE RELIEF—CHANGE IN BUSINESS PRACTICES**

3.1    **Injunctive Relief.** No later than six (6) months following the Settlement Effective Date: (i) Defendant will cause the manufacturing of the Products with labels and packaging bearing the statements "100% Natural" and "100% Naturally Sourced Ingredients" to cease, and (ii) Defendant will cause said statements to be excluded from any future marketing or advertisements for the Products created by the Products' manufacturer or at its direction. Defendant shall not be required to change or replace the labels on any Products manufactured and packaged prior to the Settlement Effective Date or to recall Products, advertisements, or any marketing materials distributed by or at the direction of GSK or Pfizer prior to the Settlement Effective Date.

3.2     **Changes in Law**. The terms of the injunctive relief set forth herein shall not operate to preclude and/or deprive Defendant of the benefit of changes in applicable statutes, regulations, and binding standards. To the extent that any state and/or federal statute, regulation, policy, and/or code may at any future time impose other, further, different, and/or conflicting obligations or duties on Defendant with respect to the Products, this Settlement Agreement and any Final Judgment and Order which may be entered pursuant thereto, as well as the Court's continuing jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, shall be subject to such statute, regulation, and/or code as of the effective date of such statute, regulation, and/or code. Nothing in this Agreement will prohibit the Released Parties from making any representation in the labeling, advertising, or marketing of the Products that is permitted by applicable law, regulations, or policies promulgated by state or federal agencies.

3.3     **Permitted Changes.** Nothing in this Settlement Agreement shall prevent Defendant from retaining current representations, including that the ingredients are naturally sourced, or making any other changes to the Products' labels, packaging, advertisements, or other marketing materials provided those representations are not inconsistent with the provisions of this Section.

3.4     **Court Approval.** Defendant's obligation to provide the injunctive relief described in this Section is expressly conditioned on, and shall not arise unless and until, the Court approves this Settlement Agreement in a Final Judgment and Order.

4.     **<u>MONETARY CONSIDERATION</u>**

4.1     **Settlement Payment.** Subject to the conditions set forth in this Section and solely to the extent the Settlement Agreement is approved by the Court, Defendant shall cause to be paid to Plaintiff and Class Counsel not more than five hundred thousand dollars ($500,000.00) for

payment of Court-approved Attorneys' Fees and Costs and Service Awards by wire transfer to the following account:

| | |
|---|---|
| Account Name: | Clarkson Law Firm IOLTA |
| Account Number: | ████████ |
| Routing Number: | ████████ |
| Bank: | JP Morgan Chase Bank, N.A., |
| | 1050 S Grand Ave, Ste 3, Los Angeles, CA, 90015 |

4.2    **Service Award.** Plaintiff shall seek Court approval of a Service Award to Plaintiff in an amount that shall not exceed five thousand dollars ($5,000.00) in recognition of the risks that Plaintiff has undertaken and Plaintiff's time, cost, and effort in the Action on behalf of the Class. Defendant shall be obligated under this Settlement Agreement to pay a Service Award only in the amount approved by the Court, even if said amount is less than the maximum amount permitted herein or zero, within thirty (30) days of the Settlement Effective Date or the Court's approval of the Service Award, whichever is later. Defendant's obligation to pay the Service Award is conditioned on, and shall not arise unless and until, the Court approves this Settlement Agreement and the Service Award. However, the release and injunction, described below in Section 5 and above in Section 3, are not conditioned on Plaintiff's receipt of a Service Award. In the event the Court denies approval of the Service Award, in whole or in part, or the Court reduces the Service Award to less than the maximum amount allowed herein, said denial or reduction shall not provide a basis for any Party to terminate or withdraw from the Settlement Agreement.

4.3    **Attorneys' Fees and Costs Award.** Class Counsel shall seek Court approval of an Attorneys' Fees and Costs Award in an amount that shall not exceed four hundred ninety-five thousand dollars ($495,000.00) for all attorneys' fees, costs, and expenses incurred in the

prosecution of this Action. Defendant shall be obligated under this Settlement Agreement to pay an Attorneys' Fees and Costs Award only in the amount approved by the Court, even if said amount is less than the maximum amount permitted herein or zero, within thirty (30) days of the Settlement Effective Date or the Court's approval of the Attorneys' Fees and Costs Award, whichever is later. Defendant's obligation to pay the Attorneys' Fees and Costs Award is conditioned on, and shall not arise unless and until, the Court approves this Settlement Agreement and the Attorneys' Fees and Costs Award. However, the release and injunction, described below in Section 5 and above in Section 3, are not conditioned on Class Counsel's receipt of an Attorneys' Fees and Costs Award. In the event the Court denies approval of the Attorneys' Fees and Costs Award, in whole or in part, with prejudice or the Court reduces the Attorneys' Fees and Costs Award to less than the maximum amount allowed herein, said denial or reduction shall not provide a basis for any Party to terminate or withdraw from the Settlement Agreement.

4.4    **Total Monetary Payment.** The Settlement Payment of not more than five hundred thousand dollars ($500,000.00) is the total amount of monetary relief to be paid by Defendant under the terms of this Settlement Agreement, including all attorneys' fees, costs, and expenses Plaintiff and/or Class Counsel have incurred in this Action. The Parties shall bear their own fees and costs for all other fees and costs they incurred in relation to this Action, or the drafting, approval, and implementation of the Settlement Agreement.

5.    **CLASS RELEASE—INJUNCTIVE RELIEF CLAIMS**

5.1    **Class Release of Injunctive Relief Claims.** Upon the Settlement Effective Date, Plaintiff and the Class shall fully, completely, finally, and conclusively resolve, compromise, release, and discharge Defendant-Releasees from liability solely for the Injunctive Relief Claims, which include all claims seeking to enjoin GSK and Pfizer from marketing, advertising, and

labeling the Products with the Natural Representations because the Products contain non-natural, synthetic, artificial, and/or highly processed ingredients that do not exist in nature or naturally occur.

6.      **MUTUAL RELEASE—INDIVIDUAL CLAIMS**

6.1    **Mutual Individual Release.** Upon the Settlement Effective Date, Plaintiff and Defendant, and each of them, on behalf of themselves and their representatives, agents, successors, predecessors, heirs, and assigns do hereby release and forever discharge each other Party and each of their past, present and future predecessors, successors, assignors, assignees, subsidiaries, parents, acquired entities, officers, insurers, reinsurers, directors, employees, agents, legal representatives, partnerships, joint ventures, attorneys, affiliates, owners, members, and/or shareholders from any and all causes of action, suits, claims, liens, demands, judgments, indebtedness, costs, damages, obligations, attorneys' fees (except as provided for in this Settlement Agreement), losses, claims, controversies, liabilities, demands and all other legal responsibilities in any form or nature, whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation, common law or equity, which have been brought or could have been brought in this Action, are currently pending or were pending, or are ever brought in the future, that directly relate or arise from this Action, the Claims, the Individual Claims, or Plaintiff's purchase or use of any Products prior to the Settlement Effective Date. Nothing in this provision will be considered a waiver of any claims that arise entirely after the Settlement Effective Date or any claims of Class Members other than Plaintiff.

6.2    **Cal. Civ. Code § 1542.** Upon the Settlement Effective Date, Plaintiff and Defendant, and each of their respective representatives, agents, successors, predecessors, heirs, and assigns, expressly waive and relinquish, to the fullest extent permitted by law, the provisions,

rights and benefits of section 1542 of the California Civil Code, and any other similar provision

under federal or state law. Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff and Defendant, having been advised by their respective counsel, fully understand that

they are relinquishing their rights to future claims based on facts that are not currently known to

them. Plaintiff and Defendant agree that, should the facts on which this Settlement Agreement is

based turn out to be different than facts subsequently learned by the Parties or their counsel, this

Settlement Agreement shall remain effective notwithstanding any such difference in facts. Nothing

in this provision, including the waiver of rights under California Civil Code Section 1542, shall

apply to the claims of Class Members other than Plaintiff.

**7.    COURT APPROVAL OF THE SETTLEMENT AGREEMENT**

7.1    **Court Approval.** It is the Parties' intent, and a condition of this Settlement

Agreement, that the Final Judgment and Order be entered and be final and binding on all Parties

and Class Members as set forth herein. Plaintiff shall seek Court approval of the Settlement

Agreement, Attorneys' Fees and Costs Award, and Service Award within fifteen (15) days of the

full execution of this Settlement Agreement, by filing a duly noticed motion for approval, including

supporting memoranda of points and authorities, this Settlement Agreement, and any declarations

or additional evidence necessary for the Court to grant approval. Plaintiff and Defendant will take

all reasonable and lawful actions necessary, as promptly as is practical, to obtain the Court's

approval of the Settlement Agreement, including the further exchange of information or provision

of affidavits.

7.2 **CAFA Notice**. Within ten days after the filing of the motion for approval, Defendant shall notify the appropriate state and federal officials of the proposed Settlement Agreement in accordance with 28 U.S.C. § 1715. Within two days of serving the CAFA notice, Defendant shall file a declaration establishing that CAFA notice was timely provided.

## 8. <u>CLASS NOTICE</u>

8.1 **Notice Not Required.** Because the Class Certification Order in the Action certified only a Class for injunctive relief pursuant to Rule 23(b)(2), and this Settlement Agreement seeks to resolve Class Members' claims solely to the extent they are Injunctive Relief Claims, the Parties agree that the Class Members do not possess any right to opt-out of the receipt of benefits under this Settlement Agreement, making the provision of notice to Class Members unnecessary. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also*, *e.g.*, *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) ("a class action for injunctive relief certified under Fed. R. Civ. P. 23(b)(2) . . . does not require notice or permit members to opt out"); *Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 U.S. Dist. LEXIS 142774, 2016 WL 6-26330, \*6 (S.D. Cal. Oct. 13, 2016) ("When a class is certified under Rule 23(b)(2) and only provides for injunctive relief, no notice of class certification is required"); *Jeanne Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 U.S. Dist. LEXIS 17138, 2018 WL 582564, at \*3 (N.D. Cal. Jan. 25, 2018) (listing cases and concluding that "notice to the Rule 23(b)(2) class is not required" where "the terms of the Agreement provide for injunctive relief only and further expressly preserve the rights of the class to bring claims for monetary relief"); *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at \*8 (N.D. Cal. Mar. 18, 2015) (approving injunctive relief only class action settlement, reasoning that "even if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not

release the monetary claims of class members"). The Parties further agree that notice in this case would be cost prohibitive. Accordingly, the Parties have agreed that notice to all Class Members and an opportunity to opt-out of the settlement is not required under this Settlement Agreement.

      8.2   **Court-Required Notice.** In the event that the Court determines that any type of notice to the Class Members is necessary, the Parties will negotiate in good faith in an attempt to agree on a reasonable notice procedure for approval by the Court. In the event that the Court determines that any type of notice to the Class Members is necessary, should good faith negotiations regarding a reasonable notice procedure be unsuccessful, each Party shall have the unilateral right to withdraw from this Settlement Agreement, without prejudice, and the Settlement Agreement will have no force or effect and will be treated as if it never existed.

## 9.    <u>TERMINATION OF AGREEMENT</u>

      9.1   **Termination.** If the Court does not approve the Settlement Agreement, or if the Final Judgment and Order is reversed or rendered void as a result of an appeal: (i) any portion of the Settlement Payment paid to Plaintiff and Class Counsel shall be returned to Defendant, less any cost of Court-ordered notice; (ii) the Settlement Agreement and any obligations thereunder shall be rendered null and void; and (iii) the Parties shall revert to their pre-settlement litigation positions. In the event that the Court does not approve the Settlement Agreement, the Parties have reserved all rights regarding class certification and the merits, including but not limited to the Parties' right to engage in discovery and Defendant's right to oppose any renewed motion for class certification on any and all factual and legal grounds in this or any other action.  In the event that the Court does not approve the Settlement Agreement, the Parties agree to meet and confer on an appropriate case management schedule to be approved by the Court.

10.    **ADDITIONAL PROVISIONS**

10.1    **Best Efforts.** The Parties agree that, to the best of their knowledge, information and belief, this Settlement Agreement is made in good faith and in accordance with the laws of the United States of America and the State of California. Subject to the limitations expressed herein, the Parties and their counsel shall use their best efforts to cause the Court to grant approval of this Settlement Agreement as promptly as practicable; to take all steps contemplated by this Settlement Agreement to effectuate the settlement on the stated terms and conditions; to cooperate in addressing any objections; and to obtain the Final Judgment and Order approving this Agreement. The Parties and their counsel shall not encourage anyone directly or indirectly to object. If the Court requires changes to the Settlement Agreement as a prerequisite to approval, the Parties shall negotiate in good faith regarding such changes.

10.2    **Non-Disparagement.** Except as may be contrary to Rule 5.6 of the California Rules of Professional Conduct in the event that it impinges on the ability of the Parties' respective counsel to practice law and to fully and vigorously represent any present or future clients, Plaintiff, Defendant, and their counsel shall make no statements, including statements to the press or any other public statements, that disparage Plaintiff, Defendant, or any of the Products, or accuse any Party of any wrongdoing regarding this Settlement Agreement or Action.

10.3    **Changes of Time Periods.** The time periods and/or dates described in this Settlement Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendant's Counsel, without notice to Class Members unless so ordered by the Court.

10.4    **Termination Rights.** Except for changes to the time periods as set forth in the prior paragraph, and except as set forth in Section 9, all other terms and limitations set forth in this Settlement Agreement shall be deemed material to the Parties' agreement, and in the event any such other term is altered or amended by the Court, or any other court, or if any federal or state authority requires modifications to the Settlement Agreement, any Party whose rights or obligations are affected by the alteration or amendment may terminate this Settlement Agreement, consistent with applicable law, upon written notice to the other Party. The contractual right to terminate this Agreement pursuant to this provision expires as of the Settlement Effective Date. Any Party that unilaterally terminates this Settlement Agreement, pursuant to this Section, shall have the sole responsibility to pay any costs of any court-ordered notice of settlement incurred through the date that such termination right is exercised.

10.5    **Time for Compliance.** All time periods set forth herein shall be computed in calendar days unless otherwise specified. If the date for performance of any act required by or under this Settlement Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Settlement Agreement.

10.6    **Governing Law.** This Settlement Agreement is intended to and shall be governed by the laws of the State of California, without regard to conflicts of law principles.

10.7    **Entire Agreement.** Each Party hereto represents and warrants that he, she, or it is not relying on any representation that is not specifically included in this Settlement Agreement. The terms and conditions set forth in this Settlement Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be

contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this Settlement Agreement. Any amendment or modification of the Settlement Agreement must be in writing signed by each of the Parties and their counsel.

10.8    **Mutual Drafting.** The determination of the terms of, and the drafting of, this Settlement Agreement have been by mutual agreement after an arm's length negotiation, with consideration by and participation of all Parties hereto and their counsel. The presumption found in California Civil Code section 1654 that uncertainties in a contract are interpreted against the party causing an uncertainty to exist is hereby waived by all Parties.

10.9    **Binding Agreement.** This Agreement shall be binding upon and inure to the benefit of the respective heirs, predecessors in interest, successors in interest, and assigns of the Parties hereto.

10.10    **No Waiver.** Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Settlement Agreement. Additionally, the waiver or breach by any Party of any provision in this Settlement Agreement shall not be deemed a waiver or breach of any other provision in this Settlement Agreement.

10.11    **Execution in Counterparts.** This Settlement Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Settlement Agreement in counterparts and/or by fax or electronic mail, including by way of encrypted signature software

such as DocuSign, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

10.12 **Captions.** Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this Settlement Agreement.

10.13 **Extensions of Time.** The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement.

10.14 **Enforcement of this Agreement.** The Court shall retain jurisdiction to enforce, interpret, and implement this Settlement Agreement. All Parties hereto submit to the jurisdiction of the Court for these purposes.

10.15 **Representation by Class Counsel.** Class Counsel represent that they have not been retained to file a lawsuit, nor have they agreed to serve as co-counsel in a lawsuit, against GSK or Pfizer based on the advertising, marketing, or sale of the Products, with the exception of this Action and the lawsuit entitled *Jolly, et al. v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, et al.*, S.D.N.Y. Case No. 7:22-cv-05555-NSR.

10.16 **Notices.** All notices to the Parties or counsel for the Parties required by this Settlement Agreement shall be made in writing and communicated by mail and email to the following addresses:

To Defendant:

Christina G. Sarchio
christina.sarchio@dechert.com
DECHERT LLP
1900 K St. NW

Washington DC 20006

Matthew F. Williams
matthew.williams@dechert.com
DECHERT LLP
45 Fremont Street, Suite 2600
San Francisco, CA 94105

<u>To Class Counsel, the Class, or Plaintiff:</u>

Ryan J. Clarkson
rclarkson@clarksonlawfirm.com
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Christopher D. Moon
chris@moonlawapc.com
Kevin O. Moon
kevin@moonlawapc.com
MOON LAW APC
228 Hamilton Ave., 3rd Floor
Palo Alto, CA 94301

The Parties may change their respective recipients and addresses for notice by giving written notice of such change to the other Parties pursuant to this Section.

    10.17  **Protective Orders.** All orders and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties remain bound to comply with the Protective Orders, including any provision to certify the destruction of "Confidential" documents.

    10.18  **Severance.** In the event that one or more of the provisions of this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of the Settlement Agreement, but only if the Parties mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Settlement Agreement.

    10.19  **Independent Judgment & Advice of Counsel.** By entering into this Settlement Agreement, each Party represents and warrants that he, she, or it has relied on his, her, or its own knowledge and judgment and the advice of counsel. It is expressly understood, agreed, and warranted that, in entering into this Settlement Agreement, no Party has relied on any representation, warranty, advice, or action by any other Party except as specifically set forth herein.

10.20   **Authority.** Each signatory represents and warrants that they have the authority to bind their respective Party or Parties to the obligations set forth in this Settlement Agreement.

## ACCEPTED AND AGREED

**For Haleon US Holdings LLC f/k/a GlaxoSmithKline Consumer Healthcare Holdings (US) LLC:**

_____

Printed Name & Title:

_____

Date

**For Plaintiff and the Class:**

_____

Plaintiff Lisa M. Moore

7/23/2024

_____

Date

**Counsel for Plaintiff and the Class:**

_____

Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

7/23/2024

_____

Date

_____

Christopher D. Moon (SBN 246622)
chris@moonlawapc.com
MOON LAW APC
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432

7/24/2024

_____

Date

10.20   **Authority.** Each signatory represents and warrants that they have the authority to bind their respective Party or Parties to the obligations set forth in this Settlement Agreement.

## ACCEPTED AND AGREED

**For Haleon US Holdings LLC f/k/a GlaxoSmithKline Consumer Healthcare Holdings (US) LLC:**

*Sarah Jane Petersen*

Senior Litigation Counsel

_____          July 24, 2024
Printed Name & Title:                     _____
                                          Date

**For Plaintiff and the Class:**

_____          _____
Plaintiff Lisa M. Moore                   Date

**Counsel for Plaintiff and the Class:**

_____          _____
Ryan J. Clarkson (SBN 257074)             Date
rclarkson@clarksonlawfirm.com
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

_____          _____
Christopher D. Moon (SBN 246622)          Date
chris@moonlawapc.com
MOON LAW APC
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432

21

Fax: (650) 618-0478

**Counsel for Defendant:**

_[signature: Christina Sarchio]_

7/24/2024

_____        _____
Christina G. Sarchio (*pro hac vice*)          Date
christina.sarchio@dechert.com
DECHERT LLP
1900 K St. NW
Washington DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333